IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

ERNEST F. HEFFNER, HARRY C. NEEL, :
BART H. CAVANAGH, SR., JOHN :
KATORA, BRIAN LEFFLER, :
REBECCA ANN WESSEL, MARK :
PATRICK DOUGHERTY, CYNTHIA :
LEE FINNEY, NATHAN RAY, TODD :
ECKERT, BEN BLASCOVICH, :
MATTHEW MORRIS, :
GREG ACHENBACH, KAREN EROH, :
WILLIAM PUGH, WILLIAM :
SUCHARSKI, JOHN McGEE, AMBER M. :
SCOTT, ERIKA HAAS, NICOLAS :
WACHTER, DAVID HALPATE, :
PATRICK CONNELL, EUGENE :
CONNELL, MATTHEW CONNELL, :
JAMES J. CONNELL, JR., JEFFERSON :
MEMORIAL PARK, INC., JEFFERSON :
MEMORIAL FUNERAL HOME, INC., :
WELLMAN FUNERAL ASSOCIATES, :
INC., d/b/a FOREST PARK FUNERAL :
HOME, EAST HARRISBURG :
CEMETERY COMPANY d/b/a EAST :
HARRISBURG CEMETERY & :
CREMATORY, ROBERT LOMISON, :
CRAIG SCHWALM, GREGORY J. :
HAVRILLA, and BETTY FREY, :
                                Plaintiffs :

|                                              |   |                     |
|----------------------------------------------|---|---------------------|
|                                              | : | CIVIL ACTION LAW    |
| v.                                           | : |                     |
|                                              | : | Docket No.          |
| DONALD J. MURPHY, JOSEPH A.                   | : |                     |
| FLUEHR, III, MICHAEL J. YEOSOCK,              | : | JURY TRIAL DEMANDED |
| BENNETT GOLDSTEIN, JAMES O.                   | : |                     |
| PINKERTON, ANTHONY                           | : |                     |
| SCARANTINO, BASIL MERENDA,                    | : |                     |
| MICHAEL GERDES, PETER                        | : |                     |
| MARKS and C.A.L. SHIELDS,                    | : |                     |
| Defendants                                   | : |                     |

## **COMPLAINT**

## I.   **INTRODUCTION**

This action is commenced pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §2201 through which Plaintiffs seek recourse for a violation of their Constitutional rights, under both the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania.  Plaintiffs' claims arise out of a series of issues associated with the constitutionality of several provisions of the Pennsylvania Funeral Director Law, Act of January 14, 1952, P.L. (1951) 1898, as amended, 63 P.S. § 479.1 et seq. (the "Law" or "Funeral Director Law"), as well as certain regulations promulgated by Defendants (defined herein) or their predecessors. Plaintiffs also seek recourse from the Defendants' arbitrary enforcement and interpretation of the Funeral Director Law, the enforcement and interpretation of which is frequently contingent upon the desires of the Pennsylvania Funeral

Directors Association ("PFDA"), to whom Defendants have become a captured agency. Indeed, as more fully set forth below, the Defendants' relationship with PFDA has become so intertwined that the Defendants have, effectively, impermissibly delegated certain critical functions of the State Board (defined herein) to PFDA, a violation of law.

Critically, the Defendants' interpretation of certain provisions of the Funeral Director Law has already been determined by this Court to be unconstitutional. See Walker v. Flitton, 364 F. Supp.2d 503 (M.D. Pa. 2005). The several provisions of the Funeral Director Law and Regulations (defined herein) challenged herein impose, both facially and as applied and interpreted by Defendants, arbitrary, burdensome and unreasonable restrictions on the practice of funeral directing, generally. These restrictions are not rationally related to any legitimate governmental interest. In some instances, the provisions of the Funeral Director Law and Regulations at issue disparately impact similarly situated individuals without rational basis, hence violating the right to equal protection of the law of those adversely impacted. In all instances, the restrictions are arbitrary, capricious and violative of Plaintiffs' right to due process of law. The restrictions also violate Plaintiffs' rights as guaranteed under the commerce clause, and in some instances, as guaranteed under the First Amendment's right to commercial free speech of the United States Constitution. Finally, certain provisions of the

Funeral Director Law permit Defendants' inspectors to engage in a warrantless inspection or search of Plaintiffs' premises without probable cause, without reasonable suspicion of any wrongdoing and, most importantly, without any limitation whatsoever on the time, place, scope or discretion of the Inspector (defined herein) performing that inspection.  In short, the Funeral Director Law and the Defendants' application of that Law through the promulgation of Regulations, through the issuance of resolutions and through the "development" of law via the commencement of quasi-penal "test case" prosecutions - all of which is allegedly premised upon an antiquated piece of legislation which has had very few substantive modifications - create continuous violations of Plaintiffs' clearly established Constitutional rights.  When one couples those provisions with the arbitrary enforcement of the same by the Defendants, the result has been to create an atmosphere in the industry of uncertainty and fear of improper and arbitrary prosecution.  In fact, over a decade ago, members of the State Board of Funeral Directors admitted and conceded that the Funeral Director Law was flawed; that many of the provisions about which Plaintiffs herein now complain should be eliminated; and that the Funeral Director Law needs to be overhauled to correct its deficiencies.

In order to seek redress for a violation of their constitutional rights, Plaintiffs have filed this action pursuant to 42 U.S.C. § 1983 to enjoin the continued

violation of their constitutional rights, under both the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania.  The Plaintiffs also seek a declaration that the provisions of the Funeral Director Law and Regulations at issue are unconstitutional, either on their face or as interpreted and applied by Defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.  This action is filed against:  (a) the members of the State Board of Funeral Directors (the "State Board" or "Defendants"), the entity charged with the enforcement of the Funeral Director Law and Regulations, in their official and individual capacities; (b) the Executive Deputy Chief Counsel, in his official capacity; and (c) the Director of the Bureau of Enforcement and Investigation ("BEI"), in his official capacity.

## II.    STATEMENT OF JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343(a) (3) because Plaintiffs seek to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred, among other places, in Harrisburg, Dauphin County, Pennsylvania.

## III.   PARTIES

3.     Plaintiff Ernest F. Heffner is an adult individual with a principal place of business at 1551 Kenneth Road, York, PA  17408; Plaintiff Heffner is a licensed funeral director.

4.     Plaintiff Harry C. Neel is an adult individual with a principal place of business at 401 Curry Hollow Road, Pittsburgh, PA  15236; Plaintiff Neel is the President of Plaintiff Jefferson Memorial Funeral Home, Inc. and Plaintiff Jefferson Memorial Park, Inc.

5.     Plaintiff Bart H. Cavanagh, Sr. is an adult individual with a principal place of business at 301 Chester Pike, Norwood, PA  19074; Plaintiff Cavanagh is a licensed funeral director.

6.     Plaintiff John Katora is an adult individual with a principal place of business at Box 322, 305 West Front Street, Lewisberry, PA  17339; Plaintiff Katora is a licensed funeral director.

7.     Plaintiff Brian Leffler is an adult individual with a principal place of business at 728 Main Street, Avoca, PA  18641; Plaintiff Leffler is a licensed funeral director.

8.     Plaintiff Rebecca Ann Wessel is an adult individual with a principal place of business at 301 Curry Hollow Road, Pittsburgh, PA  15236; Plaintiff Wessel is a licensed funeral director.

9.      Plaintiff Mark Patrick Dougherty is an adult individual with a principal place of business at 301 Curry Hollow Road, Pittsburgh, PA  15236; Plaintiff Dougherty is a licensed funeral director.

10.     Plaintiff Cynthia Lee Finney is an adult individual with a principal place of business at 301 Curry Hollow Road, Pittsburgh, PA  15236; Plaintiff Finney is a licensed funeral director.

11.     Plaintiff Nathan Ray is an adult individual with a principal place of business at 1551 Kenneth Road, York, PA  17408; Plaintiff Ray is a licensed funeral director.

12.     Plaintiff Todd Eckert is an adult individual with a principal place of business at 35 Gotham Place, Red Lion, PA  17356; Plaintiff Eckert is a licensed funeral director.

13.     Plaintiff Ben Blascovich is an adult individual with a principal place of business at 232 Hogan Blvd., Mill Hall, PA  17751; Plaintiff Blascovich is a licensed funeral director.

14.     Plaintiff Matthew Morris is an adult individual with a principal place of business at 35 Gotham Place, Red Lion, PA  17356; Plaintiff Morris is a licensed funeral director.

15.    Plaintiff Greg Achenbach is an adult individual with a principal place of business at 6th & West Market Streets, Pottsville, PA  17901; Plaintiff Achenbach is a licensed funeral director.

16.    Plaintiff Karen Eroh is an adult individual with a principal place of business at 465 South Main Street, Wilkes-Barre, PA  18701; Plaintiff Eroh is a licensed funeral director.

17.    Plaintiff William Pugh is an adult individual with a principal place of business at 6th & West Market Streets, Pottsville, PA  17901; Plaintiff Pugh is a licensed funeral director.

18.    Plaintiff William Sucharski is an adult individual with a principal place of business at 7350 State Road, Philadelphia, PA  19136; Plaintiff Sucharski is a licensed funeral director.  He is also the owner of a duly approved crematory.

19.    Plaintiff John McGee is an adult individual with a principal place of business at 7350 State Road, Philadelphia, PA  19136; Plaintiff McGee is a licensed funeral director.

20.    Plaintiff Amber M. Scott is an adult individual with a principal place of business at 301 Curry Hollow Road, Pittsburgh, PA  15236; Plaintiff Scott is a licensed funeral director.

21.    Plaintiff Erika Haas is an adult individual with a principal place of business at 125 North Front Street, Milton, PA  17847; Plaintiff Haas is a licensed funeral director.

22.    Plaintiff Nicolas Wachter is an adult individual with a principal place of business at 125 North Front Street, Milton, PA  17847; Plaintiff Wachter is a licensed funeral director.

23.    Plaintiff David Halpate is an adult individual with a principal place of business at 205 Fifth Street, Renovo, PA  17764; Plaintiff Halpate is a licensed funeral director.

24.    Plaintiff Patrick Connell is an adult individual with a principal place of business at 245 East Broad Street, Bethlehem, PA  18018; Plaintiff Patrick Connell is a licensed funeral director.

25.    Plaintiff Eugene Connell is an adult individual with a principal place of business at 245 East Broad Street, Bethlehem, PA  18018; Plaintiff Eugene Connell is a licensed funeral director.

26.    Plaintiff Matthew Connell is an adult individual with a principal place of business at 245 East Broad Street, Bethlehem, PA  18018; Plaintiff Matthew Connell is a licensed funeral director.

27.     Plaintiff James J. Connell, Jr. is an adult individual with a principal place of business at 245 East Broad Street, Bethlehem, PA  18018; Plaintiff James Connell is a licensed funeral director.

28.     Plaintiff Jefferson Memorial Park, Inc. is a Pennsylvania corporation with a principal place of business located at 401 Curry Hollow Road, Pittsburgh, PA  15236; Plaintiff Jefferson Memorial Park, Inc. is a licensed cemetery and is the sole shareholder of Plaintiff Jefferson Memorial Funeral Home, Inc.

29.     Plaintiff Jefferson Memorial Funeral Home, Inc. is a Pennsylvania corporation with a principal place of business located at 301 Curry Hollow Road, Pittsburgh, PA  15236; Plaintiff Jefferson Memorial Funeral Home, Inc. is a "Pre-1935" corporation under the Funeral Director Law such that its stock can be owned by any person regardless of whether the person is a licensed funeral director, or by any entity.

30.     Plaintiff Wellman Funeral Associates, Inc., d/b/a Forest Park Funeral Home ("Wellman") is a Louisiana corporation with a principal place of business located at 1201 Louisiana Avenue, Shreveport, LA  71101; Plaintiff Wellman is owned by an individual who is not a licensed funeral director in any state and who owns cemeteries and a crematory in Pennsylvania.  Plaintiff Wellman, however, is precluded under the Funeral Director Law from owning a funeral home in Pennsylvania.

- 10 -

31.     Plaintiff East Harrisburg Cemetery Company, d/b/a East Harrisburg Cemetery & Crematory ("East Harrisburg Cemetery") is a Pennsylvania corporation with a principal place of business located at 2260 Herr Street, Harrisburg, PA  17103; Plaintiff East Harrisburg Cemetery is a properly licensed cemetery and crematorium, but as a result of Defendants' interpretation and enforcement of the Funeral Director Law, is being precluded from marketing and selling cremation packages to the public.

32.     Plaintiff Robert Lomison is an adult individual with a principal place of business at 801 Lincoln Street, P. O. Box 7276, Steelton, PA  17113-0276; Plaintiff Lomison owns and operates the William Howard Day Cemetery, Plaintiff East Harrisburg Cemetery and Plaintiff Wellman.

33.     Plaintiff Craig Schwalm is an adult individual with a principal place of business at 2260 Herr Street, Harrisburg, PA  17103; Plaintiff Schwalm operates a crematory and cemetery and is the Vice President and General Manager of Plaintiff East Harrisburg Cemetery.

34.     Plaintiff Gregory J. Havrilla is an adult individual with a principal place of business at 301 Curry Hollow Road, Pittsburgh, PA  15236; Plaintiff Havrilla, who is not a licensed funeral director, is the General Manager of Plaintiff Jefferson Memorial Funeral Home, Inc.

35.     Plaintiff Betty Frey is an adult individual with a principal place of business at 1551 Kenneth Road, York, PA  17408; Plaintiff Frey is an associate of Plaintiff Heffner and is not a licensed funeral director.

36.     Defendant Donald J. Murphy, Esquire is an appointed consumer member of the Pennsylvania State Board of Funeral Directors with his resident address at 348 North 24th Street, Camp Hill, PA  17011.

37.     Defendant, Mike Gerdes, Esquire, is a member of the Pennsylvania State Board of Funeral Directors with his principal place of business at 14th Floor, Strawberry Square, Harrisburg, PA  17120.

38.     Defendant Joseph A. Fluehr, III, is a member of the Pennsylvania State Board of Funeral Directors with his principal place of business at 800 Newtown-Richboro Road, Richboro, PA  18954.

39.     Defendant Michael J. Yeosock is a member of the Pennsylvania State Board of Funeral Directors with his principal place of business at 40 South Main Street, Plains, PA  18705.

40.     Defendant Bennett Goldstein is a member of the Pennsylvania State Board of Funeral Directors with his principal place of business at 6410 North Broad Street, Philadelphia, PA  19126.

41.    Defendant James O. Pinkerton is a member of the Pennsylvania State Board of Funeral Directors with his principal place of business at 1014 California Avenue, Pittsburgh, PA  15202.

42.    Defendant Anthony Scarantino is a member of the Pennsylvania State Board of Funeral Directors with a Board address at 2601 North Third Street, Harrisburg, PA  17110.

43.    Defendant Basil Merenda is the Commissioner of the Bureau of Professional and Occupational Affairs is a member of the Pennsylvania State Board of Funeral Directors; Defendant Merenda's principal place of business is 2601 North Third Street, Harrisburg, PA.

44.    Although Gregory T. Burrell is a member of the Pennsylvania State Board of Funeral Directors with his principal place of business at 4203 Haverford Avenue, Philadelphia, PA  19104, Mr. Burrell has not yet engaged in the conduct complained of herein and thus has not been joined as a named Defendant.

45.    The Defendants set forth above are sued in their official and individual capacities.

46.    Defendant Peter Marks is the Executive Deputy Chief Counsel of the Bureau of Professional and Occupational Affairs with a place of business at 2601 North Third Street, Harrisburg, PA  17110; Defendant Marks oversees a unit that makes prosecutorial decisions, and oversees investigations and prosecutions of

individuals subject to various licensing laws, including the Funeral Director Law. Defendant Marks is sued in his official capacity, as he has the legal and ostensible authority to stop the unconstitutional conduct complained of herein.

47.    Defendant C.A.L. Shields is the Director of BEI with a principal place of business at 2601 North Third Street, Harrisburg, PA  17110; Defendant Shields, as Director of BEI, oversees all investigations and investigators.    Defendant Shields is sued in his official capacity, as he has the legal and ostensible authority to stop his staff of agents from continuing to engage in the complained of conduct herein.

## IV.   FACTUAL BACKGROUND

48.    The Funeral Director Law was enacted in 1952 to, purportedly, "provide for the better protection of life and health of the citizens of this Commonwealth by requiring and regulating the examination, licensure and registration of persons and registration of corporations engaging in the care, preparation and disposition of the bodies of deceased persons…"  See Funeral Director Law, Title.

49.    Section 19 of the Funeral Director Law established the State Board as a departmental administrative board in the Department of State.    63 P.S. § 479.19(a).

50.     Section 19 of the Funeral Director Law provides that the State Board "shall consist of the Commissioner of Professional and Occupational Affairs, the Director of the Bureau of Consumer Protection in the Office of Attorney General, or his designee, two members appointed by the Governor, who shall be persons representing the public at large, and five members appointed by the Governor who shall be licensed funeral directors of good moral character and who shall also have been actively engaged in the practice of funeral directing for at least ten years immediately preceding their appointment."  63 P.S. § 479.19(a).

51.     As Section 19(a) of the Funeral Director Law reflects, five (5) out of the nine (9) members of the State Board consist of licensed funeral directors.

52.     Pursuant to the Law, the State Board is charged with the enforcement of the Law.  63 P.S. § 479.16(a).

53.     The Funeral Director Law further provides that the State Board "… shall be empowered to formulate necessary rules and regulations not inconsistent with this act for the proper conduct of the business or profession of funeral directing and as may be deemed necessary or proper to safeguard the interests of the public and the standards of the profession."  Id.

54.     Although the Funeral Director Law was enacted in 1952 and has been amended on limited occasions, there have been no significant, substantive

amendments to the Funeral Director Law so as to address changes in law, generally, and changes in the death care industry, specifically.

55.     To place into perspective the antiquated nature of the Funeral Director Law, it was enacted prior to the United States Supreme Court's decisions in: Brown v. Board of Education, 347 U.S. 483 (1954); Mapp v. Ohio, 367 U.S. 643 (1961); and Miranda v. Arizona, 384 U.S. 436 (1966).  Thus, at the time that the Funeral Director Law was enacted, Plessy v. Ferguson, 163 U.S. 537 (1896) was the law of this land, and segregation based on race was sanctioned.

56.     In fact, in response to two sunset bills scheduling the termination of the Board in 1994 and/or 1995, our General Assembly's Legislative Budget and Finance Committee (the "Audit Committee") undertook a performance audit to assess the operations of the Board and whether termination of the Board was appropriate (the "Audit Report").  A true and correct copy of pertinent excerpts Volumes 1 and 2 of the Audit Report are attached hereto as Exhibit "1" And additional reference to these excerpts are discussed further, infra.

57.     After conducting a thorough investigation and evaluation of the pertinent issues, the Audit Committee noted that the Board operates pursuant to an "outdated law."  See Audit Report at Exhibit "1," p. 7.

58.     Insofar as many of the Audit Committee's conclusions are pertinent to specific counts of the Complaint, those pertinent findings and recommendations of

the Audit Committee, as well as certain Board concessions, will be discussed in each applicable count of the Complaint.  In short, however, the Audit Committee concluded that many provisions of the Funeral Director Law are outdated; not needed; and that the Funeral Director Law needs to be overhauled.  As more fully set forth below, the members of the Board in office at that time conceded to many of the Audit Committee's findings and recommendations, yet the law remains outdated and unconstitutional.

59.     Significantly, the Audit Committee opined that "… the Funeral Director Law needs to be rewritten."  Id., p. 25.   According to the Audit Committee:

> The current Board's regulation of the funeral directing profession, including adjudication of complaints, is complicated by a statute that is outdated and in need of comprehensive revision.

Id.

60.     Critically, with respect to the antiquated nature of the Funeral Director Law, the Audit Committee recommended:

> The General Assembly should consider carrying out a comprehensive update and revision of the Funeral Director Law….

Id., p. 30.

61.     In fact, in 2002, House Bill 2872 was introduced, which Bill addressed many of the issues raised in the Audit Report and which would have resolved many of the issues raised in this Complaint.  A true and correct copy of the bill's heading, preamble and table of contents is attached hereto as Exhibit "2."

62.     House Bill 2872, however, was never enacted**; accordingly, the evils remain as of today.**

63.     In accordance with the Funeral Director Law, the State Board has promulgated regulations purportedly to implement the provisions of the Funeral Director Law.  Those regulations are found at 49 Pa. Code § 13.1 et seq. (the "Regulations" or "Funeral Regulations").

64.     Similar to the Funeral Director Law, there have been few modifications to the Funeral Regulations, and there have been no significant modifications to the same.  Many of these State Board initiated regulations were adopted as long ago as 1966.  Moreover, the Regulations have not been modified by Defendants to conform to clear and obvious changes in federal and state law.  To the contrary, utilizing their authority to create law by the fiat of a "Resolution", Defendants tried to stymy competition and deny access by the consumer to meaningful information relating to pre-need opportunities by outlawing anyone except funeral directors to communicate honest information to consumers – a Resolution which the United States District Court for the Middle District of

Pennsylvania declared unconstitutional in <u>Walker v. Flitton</u>, 364 F. Supp. 2d 503 (M.D. Pa. 2005).

65.    Although there have been few amendments to the Funeral Director Law and the Funeral Regulations, the practice of funeral directing has changed with the times and, in most instances, the changes have been to the benefit of consumers.  For example, "pre-need agreements," which allow consumers to plan for funerals prior to death so that decisions concerning funeral arrangements can be made when individuals are not grieving and dealing with the emotions associated with death, have been introduced into, and become commonplace in, the funeral industry.

66.    Indeed, pre-need funeral agreements, as they exist today with prepaid prices guaranteed, were unheard of when the Funeral Director Law was enacted. At the time the Funeral Law was enacted, it was only on rare occasions that consumers wanted to make a prepayment on a funeral.  The funeral director would go with the family to the local bank and open a savings account, known as a "burial account," in the name of the individual and the funeral director.  As the only known type of prearrangement existing at that time, these "burial accounts" are referenced in the Funeral Director Law.  <u>See</u> 63 P.S. § 479.13(c).

67. Pre-need agreements can be funded with life insurance or the consumer can pay cash for the pre-need agreement, with the money being placed in trust.

68. If a pre-need agreement is irrevocable and properly funded, the monies tied to that pre-need agreement are not counted as a resource for determining a person's eligibility for supplemental security income ("SSI") or Medical Assistance, both extraordinary benefits to elderly consumers who may be eligible for these Government benefits.

69. Additionally, cremations have become more prevalent in today's society and cost significantly less than an average, traditional funeral.

70. Many of the changes that have occurred over the course of years in the death care industry have resulted in increased competition among those in the death industry, all of which is a benefit to consumers.

71. The increase in competition in the funeral industry includes not only licensed funeral directors, but also licensed insurance agents (who may be selling life insurance to fund pre-need policies), insurance companies, crematoriums and cemeterians.

72. Additionally, under the Future Interment Law, Act of August 14, 1963, P.L. 1059, 63 P.S. §§ 480.1-480.11 (the "Future Interment Law"), an individual or entity need not be a licensed funeral director in order to sell funeral

merchandise.  Hence, one may be able to purchase a casket from Costco or some other entity without ever needing the involvement of a funeral director.  Again, not only has this resulted in increased competition in the funeral industry, but it has been a benefit to consumers.

73.     The increased competition in the funeral industry has not necessarily been met with a warm reception by all those involved in the funeral industry.

74.     PFDA is a large Pennsylvania trade association comprised of licensed funeral directors; however, it is not the only trade organization seeking to advance the death care industry.

75.     Over the past several years, and in response to changes in the funeral industry, PFDA has published monthly newsletters, solicitations for money and "urgent memoranda" in which PFDA advises its members that their licenses are "under attack;" PFDA will advocate positions which, according to PFDA, seek to "preserve the value" of the funeral director's license – the consumer is seldom, if ever, considered.  See e.g. Exhibit "3" hereto.

76.     Over the past two decades, or so, PFDA has taken legal and regulatory positions which seek to stifle competition and create a monopoly in the funeral industry such that one must have a funeral director's license to be involved in any aspect of the death care industry.  Indeed, today the State Board takes the position that a Pennsylvania resident may not die and have his/her remains disposed of

unless a funeral director has involved himself and, in doing so, extracts some pecuniary benefit from that consumer who wanted no part of a funeral director contract or obligation.

77.     Regrettably, over, approximately, the past two (2) to three (3) decades, or so, the State Board has developed an incestuous relationship with PFDA.

78.     The relationship between the State Board and PFDA has developed to such an extent that the relationship is the quintessential example of a trade association's "regulatory capture" of its state regulatory entity.

79.     The Audit Committee, in assessing the Board, noted that "[r]egulatory bodies, whether state or federal, are sometimes 'captured' by the industry they are intended to regulate."  Exhibit "1," p. 37.  According to the Audit Committee, "[t]here are indications that this may be the case with the Funeral Directors Board."  [Id.].

80.     Indeed, the Audit Committee apparently found sufficient evidence of the same so as to warrant the following recommendation:

> The General Assembly should consider amending the Funeral Director Law to:
>
> - require that public members constitute a majority on the State Board of Funeral Directors (or a renamed state board responsible for overall regulation of the funeral industry) …

Id., p. 38.  Again, however, the recommendation went nowhere.

81.     Significantly, over this period, many of the professional members of the State Board have been high ranking officers of, or otherwise active in, PFDA.

82.     It is well known in the funeral industry that, unless you are "annointed" by PFDA to serve on the State Board, you will not be appointed to serve on the State Board.  Indeed, Plaintiffs are aware of no Board member who has been confirmed to serve (within at least the last decade) over the objection of PFDA.

83.     No member can be appointed unless the Senate confirms the Governor's appointment by a majority vote.

84.     Most recently, the Chairman of the Senate Professional Licensure Committee held hostage an appointment by the Governor to the Funeral Board until the Governor also agreed to reappoint a supposed consumer member who was already serving on the Board.  This "consumer" member had served as PFDA's outside legal counsel, hardly a legitimate "consumer" as intended by law.

85.     Indeed, PFDA will actively lobby against a proposed appointment to the State Board if PFDA views that individual as a threat to PFDA's agenda.

86.     Significantly, this same Chairman of the Senate Professional Licensure Committee, who is the "gatekeeper" to appointments to the State Board, is a funeral director and member of PFDA.  He also receives significant Political

Action Committee monies from PFDA and has been an invited guest to speak at PFDA's Legislative Committee meetings.   He has also contributed to PFDA's legal defense fund in the past.

87.    Additionally, it has become widely known in the funeral industry that the State Board's interpretation of the Funeral Director Law is directly and frequently related to PFDA's legal position on the issue at hand, a legal position repeatedly driven by greed and quest for an ever larger market share, if not monopoly.

88.    For example, PFDA advocated, at one time, the legal position that a funeral director can establish a separate corporation to sell merchandise (as opposed to services) and that, accordingly, pursuant to the Future Interment Law, that company would only be required to trust seventy percent (70%) of pre-need monies obtained for merchandise, in contrast to the one hundred percent (100%) trusting mandated under Section 13(c) of the Funeral Director Law.

89.    PFDA's then-proffered position was consistent with the Future Interment Law.  63 P.S. § 480.2(a).

90.    PFDA even provided to its members a "model incorporation kit" in the 1990's which instructed members on how to establish a separate corporation for the purpose of selling merchandise.

91.    As one PFDA-sponsored circular in 1999 suggested:

> Today's preneed market is more challenging than ever. Everyone selling merchandise needs financial resources UPFRONT, in order to compete.
>
> That's why PFDA created the Pennsylvania Funeral Merchandise Trust.   After careful legal research, a method has been established that allows a separate merchandising corporation to put 70 percent of the retail price of merchandise in trust under the terms of the Pennsylvania Future Interment Act – and makes 30 percent available to MEET THE COMPETITION with other merchandising companies.
>
> * * * *
>
> Don't cut back on the preneed operations that are the future of your business.
>
> Protect the margins on merchandise that make up the largest part of a funeral transaction.

See PFDA Notice, dated March 23, 1999 attached hereto as Exhibit "4" (emphasis added).

92.    PFDA has now flip-flopped its position and today asserts that any time a licensed funeral director is affiliated with a corporation that sells funeral merchandise, that company must trust 100% of pre-need monies obtained.

93.    Not surprisingly, the State Board now agrees with PFDA's new legal stance and has tried to promulgate regulations as recently as this year outlawing the very procedure it acquiesced in just a couple of years earlier.

94.    Indeed, with PFDA advocating this new interpretation of law, the Board has begun to target and prosecute funeral directors, including several

Plaintiffs, who, in reliance on PFDA's guidance and State Board acquiescence, had established separate merchandise corporations (as previously advocated by PFDA) and which corporations are and have been trusting seventy percent (70%) of pre-need funds for the merchandise, in accordance with the Future Interment Law.

95.     By way of further example, the State Board previously took the position that "cremations" were not subject to the jurisdiction of the State Board – as late as 1998, Funeral Board Minutes confirmed this position.  See Exhibit "5," p. 15.

96.     But, in the face of increased competition and data showing a significant increase in the percentage of cremations per total annual deaths, PFDA began to advocate that cremations are, in fact, subject to the jurisdiction of the State Board.  PFDA thus filed a complaint asking the Board to prosecute those who had operated crematories for decades because those crematories interacted directly with the consumer – something those crematories had been doing since inception.

97.     Instead of seeking declaratory relief or clarifying its position on this issue, the State Board commenced prosecutions of several cemeterians, crematories and others for, allegedly, engaging in the practice of "funeral directing" without a license and, of course, concluded that cremations were subject to the jurisdiction of the Board, a position inconsistent with its previously stated position.

98.    Through prosecution, as opposed to obtaining declaratory relief or promulgating regulations, the cemeterians, crematories and others, were fined, barred from future interaction with customers, and subjected to the stigma associated with being sanctioned by a state licensing board.

99.    Additionally, PFDA previously advocated that a funeral director can enter into an irrevocable, pre-need contract with a consumer. Indeed, PFDA has had pre-need contracts approved by the State Board which clearly reflect that the pre-need contracts may be irrevocable.

100.    The benefits of this arrangement to the consumer are significant. By paying up front and locking-in guaranteed services and merchandise, the consumer: has "capped" his cost for burial or cremation of his remains at the time of death; has alleviated some of the emotional difficulties that next-of-kin suffer when making arrangements for loved ones at the time of death; and has purchased his benefits at a cost significantly lower than the inevitably higher costs that will be in place sometime in the future at the time of actual delivery. This ability to freeze the consumer costs is because the funeral director can take the monies paid by the consumer and invest those funds, understanding that the funeral director must commit to provide the agreed-upon merchandise and services at the agreed-upon price when the customer ultimately dies.

101.   Peace of mind and consumer-oriented payment options are significant benefits to the irrevocable pre-need arrangement, as data suggests that the consumer who has contracted for his own services, generally years in advance of his death, paid an average of several thousand dollars less than had his survivors purchased the same services at the time of his death.

102.   However, in the face of increased competition in the pre-need industry, PFDA flip-flopped on this issue and then began to activate "their" State Board to "rule" that irrevocable, pre-need contracts are unlawful.

103.   Outrageously, the position advocated by PFDA was that a pre-need agreement was revocable at the whim of the consumer, thus implying a consumer benefit: however, the contract which PFDA submitted for approval to the State Board actually provided that the agreement was revocable at the whim of the consumer or the funeral director and that only the fair market value of those funds held in trust for the consumer need to be returned to the consumer, even if it is the funeral director who terminates the agreement.

104.   In other words, despite guaranteeing to provide a funeral with services and merchandise at the price contracted, if the consumer or the funeral director chose to terminate the pre-need agreement, the contracting funeral director need only return the then-market value of the pre-need funds in the consumer's account,

and if the fund lost money such that the amount in the account was not equal to the principal paid, then only the lesser sum needed to be returned.

105.   Consistent with its acquiescence to PFDA's stated positions, the State Board, despite having approved irrevocable pre-need agreements for years, began to advise that <u>all</u> pre-need agreements were revocable and therefore, no irrevocable pre-need agreement could exist.

106.   Significantly, consistent with its past practices, the State Board did not attempt to promulgate regulations to address and clarify this issue.

107.   Consistent with its past practices, the State Board took no action to attempt to obtain legislative clarification on the issue.

108.   Instead, the State Board simply advised of its position and waited for the opportunity to prosecute a funeral director which it believed was taking action inconsistent with PFDA's and its newly stated position; a position irreconcilably in conflict with previously submitted pre-need agreements which the Board had reviewed and <u>approved for use</u>.

109.   In order to avoid prosecution, a funeral director, Mr. Kevin Bean, commenced an action against the State Board in Commonwealth Court through which he sought declaratory relief concerning whether the Funeral Board could legally preclude irrevocable pre-need agreements.   <u>See</u> <u>Bean v. State Board of Funeral Directors</u>, 855 A.2d 148 (Pa. Commw. 2004), appeal denied, 2005 Pa.

LEXIS 1677 (Pa. 2005).  The Court sent the issue to the State Board under the Primary Jurisdiction doctrine and the State Board held a hearing in order to establish a record and interpretation capable of meaningful appellate review.

110.   Not surprisingly, PFDA intervened in the <u>Bean</u> litigation at the State Board level and advocated a legal position which its State Board adopted, lock, stock and barrel.

111.   Outrageously, this funeral director (Mr. Bean) was using irrevocable pre-need contracts which had been <u>formally</u> approved by the State Board, yet he was now being told that the "governmental approval" was a nullity.

112.   Adopting PFDA's <u>new</u> legal position, the Defendants ignored their prior approval of Mr. Bean's agreements and concluded that, despite the express language of the approved contract forms, those contracts allowed customers to rescind <u>at anytime</u>, thus, coincidentally, allowing PFDA-oriented funeral directors to telemarket and otherwise steal pre-need business from the Mr. Beans of the world, who were astute enough to have carved a niche into the pre-need market – a well-designed plan.  <u>See</u>, Exhibit "6", consisting of newspaper advertisements by funeral directors in Mr. Bean's area urging <u>existing</u> pre-need customers to void these agreements and come see them. The Board's decision was all the more disturbing because several of the Board members who voted on this adjudication - where PFDA was an intervenor whose attorneys were being paid out of the PFDA

"legal fund" – had contributed to that very legal fund, yet never disclosed same to Mr. Bean or his counsel.  Furthermore, several voting Board members held large financial interests (in excess of a million dollars) in PFDA's for-profit pre-need company, yet again, that fact was not disclosed.

113.   In other words, through Defendants' effort, PFDA achieved through executive branch fiat a whole new market to target; i.e., pre-need customers who were previously committed to another funeral home.

114.   On appeal from the State Board's inevitable ruling siding with PFDA, Commonwealth Court reversed.

115.   Significantly, in discussing the Funeral Director Law, the Commonwealth Court observed that the only section in the Funeral Director Law which pertains to pre-need agreements is § 13(c), which contains no reference to prohibiting irrevocable pre-need agreements.  Bean, 855 A.2d at 154.

116.   Indeed, if its rescission were at one's whim, the contract would, as a matter of law, be illusory and thus meaningless and unenforceable.

117.   The Court also observed that the Funeral Regulations contain no direction or comment on pre-need agreements regarding rescission.  Id.

118.   Nevertheless, despite the absence of any language in either the Funeral Director Law or the Funeral Regulations precluding the irrevocability of a

pre-need agreement, the State Board continued to advocate that irrevocable pre-need agreements were actually revocable, the position espoused by PFDA.

119.   The Commonwealth Court ultimately concluded that "… the [State Board] erred in determining that the Funeral Director Law and its regulations allow customers to rescind irrevocable pre-need agreements." Bean, 855 A.2d at 156.

120.   Defendants, undaunted by Commonwealth Court's ruling, are now trying to forge regulatory changes which will, in fact, eliminate irrevocable pre-need agreements.

121.   Moreover, the Pennsylvania Independent Regulatory Review Commission ("IRRC") recently sent these draft regulations back to the State Board with comments that reflect frustration and dissatisfaction. See, Exhibit "7", which comprises IRRC's comments.

122.   In addition to the foregoing, PFDA previously took the position that a licensed insurance agent may go into the home of a consumer and sell life insurance for the purpose of funding a pre-need contract.

123.   In fact, as late as the 1990's, PFDA affiliates were employing unlicensed telemarketers to assist in selling pre-need contracts for one of its programs, wherein pre-need contracts could be funded by insurance.

124.   Indeed, a for-profit affiliate of PFDA, the Pennsylvania Funeral Service Corporation, operated a pre-need program known as the "Pennsylvania

Funeral Plan" through which licensed insurance agents would sell an insurance product to consumers to fund pre-need contracts.  The licensed insurance agents would go into the home of the consumer.

125.  Throughout this lengthy period of time, Defendants (or their predecessors) never so much as issued regulations or even a formal statement of policy which would suggest that practice to be illegal.

126.  However, in the face of increased competition, PFDA flip-flopped again and asserted its new position that it is unlawful for an individual who is not a licensed funeral director to be involved in <u>any</u> aspect of a pre-need discussion or contract, including a discussion of prices and a discussion of merchandise that the consumer may desire – a legal position which effectively eliminates:   (a) competition; (b) interferes with lower prices for the customer; and (c) inhibits the flow of meaningful information to the consumer.

127.  In order to promote its <u>new</u> self-serving position, PFDA drafted a "Resolution" in the fall of 1999 for its captive State Board to adopt.   That Resolution provided, in relevant part:

> The State Board of Funeral Directors believes that the showing, distribution or summarization of any price list of a specific funeral home or any explanation of the funeral services or merchandise available from any specific funeral home for any commercial purpose whatsoever, except as may be specifically necessary to comply with Regulations of the Federal Trade

> Commission, for funeral services needed for a person then living, constitutes the practice of funeral directing by engaging in pre-need sales.   Section 13(a) of the [Funeral Director] Law limits this practice to licensed funeral directors.   The Board may consider it to be unprofessional conduct for any funeral director to authorize or permit any such activity constituting the practice of funeral directing.

Walker, 364 F. Supp.2d at 507.

128.   The State Board did not draft the above Resolution; instead, it was drafted by PFDA's Executive Director and outside legal counsel and handed off to the Board's Chairman for "governmental adoption," consistent with the regulatory capture situation as it then and now exists.

129.   Predictably, the State Board, prior to entering into an executive session, physically received the Resolution and, after an executive session, adopted the same, thus giving PFDA its next desired result, complete with state regulatory imprimatur.

130.   The State Board subsequently adjudicated a licensed funeral director and a licensed insurance agent as being in violation of the Funeral Director Law as a result of the licensed insurance agent's involvement, in 1996, with the sale of life insurance policies to fund the funeral director's pre-need contracts; the foregoing Resolution was at the heart of that prosecution.   See e.g. Ferguson v. Pennsylvania State Board of Funeral Directors, 768 A.2d 393 (Pa. Commw. 2001).

131.   Unfortunately for Plaintiffs, as well as those similarly situated, it was not until 2005 that the federal court in <u>Walker v. Flitton</u> made clear that the Funeral Director Law could <u>not</u> be interpreted as sanctioning the Resolution, as it clearly violated the commercial speech clause of the United States Constitution.

132.   Until very recently, the State Board has shirked its responsibility to promulgate and/or amend regulations to provide guidance to the funeral industry as to those issues impacting and regulating the funeral industry.

133.   Of course, through the regulatory process, proposed regulations or amendments to regulations would be subject to public comment and regulatory review; however, this <u>democratic</u> process is an impediment to the State Board's efforts to promote the agenda of PFDA.

134.   Hence, in lieu of providing the death care industry with notice of its intention, input into proposed regulations, and knowledge as to those standards with which those involved in the industry must comply (whether those individuals or entities are licensed funeral directors, licensed insurance agents, cemeterians, crematoriums or insurance companies), the State Board has improperly "legislated" through the quasi-penal process of adjudicating individuals and entities as being in violation of the Funeral Director Law.

135.   Although the adjudications are subject to subsequent judicial review, the standard of review of an administrative agency decision in Pennsylvania is

narrow and circumscribed.   See e.g. Nicoletti v. State Board of Vehicle Manufacturers, Dealers and Salespersons, 706 A.2d 891, 893, fn 4 (Pa. Commw. 1998)("Our review is limited to determining whether the Board violated Nicoletti's constitutional rights, committed an error of law, or based its conclusion on a material finding of fact that is not supported by substantial evidence.").

136.   As a matter of law, reviewing courts must afford significant deference to the decisions of the State Board and the State Board's interpretation of the Funeral Director Law.  See e.g., Ferguson, 768 A.2d at 398.

137.   In the case of the State Board, however, that Board has become the puppet of PFDA.  Given the same, a substantial question exists as to whether any deference should be given to its decisions.

138.   Ultimately, several individuals within the death care industry challenged the constitutionality of the Board's 1999 Resolution in Walker, and they prevailed.

139.   Discussing the "governmental interests" at issue, the federal court stated that it fails to see "… what substantial governmental interest exists relating to allowing only licensed funeral directors, rather than non-licensed insurance salespeople who are employed by, or agents of those funeral directors, to interact with customers and disseminate price and other information regarding preneed services."  Walker, 364 F. Supp.2d at 520.

140.   The Court also observed that the defendants, in <u>Walker</u>, did not "… put forth any evidence that consumers had been harmed by the unlicensed solicitation of preneed funeral services." <u>Id</u>. at 523.

141.   The Court ultimately held that "… an individual who is a licensed insurance agent but not a licensed funeral director, and who also is an employee or agent of a particular funeral director may interact with consumers, disseminate accurate price information, and solicit those individuals for the purpose of having their employer sell preneed funeral services and plans on behalf of a licensed funeral director." <u>Id</u>., at 526-527.

142.   Elaborating, the Court stated that its holding "… is intended to permit unlicensed individuals to discuss preneed plans with consumers so long as these communications occur under the auspices, employment, direction, and control of a licensed funeral director." <u>Id</u>., at 527.

143.   In ostensible response to the Court's decision in <u>Walker</u>, the State Board, on or about November 3, 2005, circulated draft regulations pertaining to the sale of pre-need services and merchandise.

144.   Despite the clear direction given in the Federal Court's opinion, the draft regulations were unduly restrictive and, effectively, precluded employees or agents of a licensed funeral director from engaging in the very conduct which the <u>Walker</u> Court opined was lawful.

145.   In response to those draft regulations, overwhelmingly adverse comments were submitted, showing widespread and vehement opposition to the restrictive nature of the scheme.  See, e.g., Exhibit "8."

146.   A public work session was held on December 12, 2005, at which the State Board indicated a facial willingness to receive draft regulations different from those which it had proposed; proposed regulations were, in fact, submitted to the State Board by different groups.

147.   On March 21, 2006, the State Board held a "regulations committee meeting" to purportedly discuss in a reasonable and fair manner a set of regulations to deal with the interaction of insurance agents and employees of funeral directors involved in pre-need sales.

148.   Regrettably, and reflecting the State Board's unfettered loyalty to PFDA, certain Board members publicly chastised the Walker decision, generally, and  federal court  Judge Jones, specifically.

149.   For example, Defendant Murphy (PFDA's former outside legal counsel) stated, "I don't think the judge really understood...."  See Exhibit "9" hereto at p. 168.

150.   At a prior meeting, former Board member Jodi Zucco, Esquire, the Attorney General's then designee, in addressing her dissatisfaction with Walker, cavalierly noted:  "[w]ho cares what the Judge said?" and further stated "[w]ho

cares what the Judge wants." <u>See</u> minutes of meeting of August 3, 2005 State Board meeting, relevant portions of which are attached hereto at Exhibit "10," at pp. 147 and 158.

151.   In fact, in comparing the verbiage set forth in the Court's Order with the language in the Court's detailed and well-reasoned opinion, Attorney Zucco commented, "[s]o why don't we just blow off the Opinion and go with the Order." <u>Id</u>. at p. 154.   Prior to commenting on whether the Board should "blow off" the Court's opinion, no analysis or discussion occurred as to whether the opinion is non-controlling dicta (as, quite frankly, it is the Court's binding analysis which serves as the basis for the Order).

152.   Subsequent to the March 21, 2006 meeting, the <u>Walker</u> decision and Defendants' draft regulations purportedly in response to the same were discussed at the highest levels in Pennsylvania Government.

153.   In fact, on October 25, 2006, the Governor's Policy Office advised that its office, along with the General Counsel's Office <u>and</u> Defendants' own assigned Board counsel, "…are all of one mind and agree that the Board cannot adopt and promulgate any regulations [precluding interaction with customers through agents of funeral directors] under Section 13(a) of the Funeral Director Law in light of the rulings in the <u>Ferguson</u> and <u>Walker</u> cases." <u>See</u> Exhibit "11" hereto.

154.   The e-mail containing that information reflects that a legal opinion encapsulating the same would be drafted.  Id.

155.   This e-mail was in response to the regulations originally drafted by the State Board which were wholly inconsistent with the Court's decision in Walker, and which ignored the State Board's own facial pretext willingness to seriously consider the widespread opposition to its initially circulated PFDA-sponsored regulations.

156.   The Defendants, apparently directed by the Governor's Office to re-craft their regulatory draft to more fully comport with Walker, ultimately drafted a revised set of regulations which, although containing certain questionable provisions, were a substantial improvement towards legality compared to the prior draft.

157.   These new draft regulations were presented to "interested parties" on February 6, 2007.  See, e.g., Exhibit "12."

158.   Most interested parties commended the Board, yet noted some areas in this revised draft that continued to be anti-consumer and anti-competitive.  See, e.g., Exhibit "13."

159.   PFDA, for its part, vehemently opposed these more consumer-friendly proposals, as they provided for greater competition and the potential for lower costs to the consumer.

160. PFDA then undertook a letter-writing campaign targeted at individuals from the Governor to the legislature, urging that this more moderate scheme be rejected.

161. Then, somewhere between the time that the Governor's Office, General Counsel to the Governor and Board Counsel all concluded that the Board's originally drafted regulations were illegal (October 26, 2006) and September 29, 2007, PFDA and its alter ego Board convinced these arms of government to remove the earlier-implemented roadblock to the promulgation of the first set of regulations which Defendants drafted as a surrogate for PFDA.

162. Indeed, despite presenting a palpable set of draft regulations to the industry on February 6, 2007, the State Board published, on September 29, 2007, in the Pennsylvania Bulletin, draft regulations that were virtually identical to the highly objectionable regulations presented on or about November 3, 2005. In fact, the regulations published on September 29, 2007 were actually more restrictive, as those draft regulations now omit any reference to "agents" as having any permissible involvement in the pre-need process. See, Regulations published on September 29, 2007 at Exhibit "14."

163. In short, PFDA successfully secured publication of draft regulations through its captive alter ego which, if finally adopted, will gut the value achieved (by the plaintiffs and consumers alike) in Walker v. Flitton.

164.   These draft regulations which have been proposed in the Pennsylvania Bulletin are violative of <u>Walker</u> and are violative of the Constitution of the United States, as well as the Constitution of the Commonwealth of Pennsylvania.

165.   Importantly, the Pennsylvania Independent Regulatory Review Commission ("IRRC") has now provided yet a second set of extensive, critical comments to the State Board on the draft regulations.   <u>See</u> Exhibits "15".   The House Professional Licensure Committee similarly submitted critical comments.

166.   In addition, Defendants have received numerous comments vehemently opposing the proposed regulations.   <u>See</u>, <u>e.g.</u>, Exhibits "16," and "17."

167.   Not surprisingly, PFDA supports most of the proposed regulations and, actually, wants to make the regulations even more restrictive by abolishing certain existing statutory and regulatory provisions which permit tentative funeral arrangements to be made "at need" by unlicensed individuals, with those arrangements being ratified by a funeral director within forty-eight (48) hours.   <u>See</u> 63 P.S. § 479.13(d) and 49 Pa. Code § 13.205 – a procedure which has worked for decades without <u>any</u> indication of consumer harm.

168.   The publication of these proposed regulations on September 29, 2007 does nothing other than confirm the fact that the Defendants, although presenting a facial appearance of reasonableness, never intended to propose anything other than

the PFDA-approved regulations for publication, despite even the criticism and concerns of those in the Governor's Office.

169.   This State Board's conduct over the last several years establishes that it is nothing but the alter ego of PFDA and that no meaningful and objective relief and guidance can be obtained from the State Board through the regulatory process.

170.   Critically, a host of provisions of the Funeral Director Law and the Regulations which Defendants have promulgated or are now enforcing are unduly restrictive, overly broad, anti-competitive, discriminatory and constitutionally infirm; Plaintiffs have no option but to seek recourse from the Courts to address the same.

171.   Additionally, given the fact that the State Board has, effectively, and *de facto* delegated its enforcement and rulemaking authority to PFDA, Plaintiffs herein believe that the only recourse that it has from these constitutionally infirm provisions is through the courts.   Furthermore, the only recourse that Plaintiffs have from the State Board's overreach, unlawful prosecutions and improper delegation is through the judicial process.   Plaintiffs should not be required to subject themselves to a multiplicity of varying quasi-penal test cases, the gimmick which this Board and its Prosecutors prefer, thus ensuing a favorable interpretation for PFDA and a limited appellate court scope of review.

172. The federal court system is necessary to put an end to this unconstitutional and self-serving course of conduct which necessitates declaratory and monetary relief, supervisory jurisdiction, and injunctive-related action against these PFDA missionaries.

### COUNT I
### Plaintiffs, Heffner, Cavanagh, Patrick Connell, Eugene Connell, Matthew Connell, James Connell, Katora, Leffler, Wessel, Dougherty, Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter, Halpate, and Jefferson Memorial Funeral Home, Inc. v. All Defendants
### (Warrantless, Limitless Inspections)

173. Paragraphs 1 through 172 hereof are incorporated herein by reference as if set forth in full.

174. Section 16 of the Funeral Director Law, which sets forth the duties of the State Board, requires the State Board to appoint "… an inspector or inspectors whose title shall be 'Inspector, State Board of Funeral Directors, Commonwealth of Pennsylvania.'"  63 P.S. § 479.16(b).

175. Pursuant to § 16 of the Funeral Director Law:

> "… Inspectors shall be empowered to serve all processes and papers of the board, and shall have the right of entry into any place, where the business or profession of funeral directing is carried on or advertised as being carried on, for the purpose of inspection and for the investigation of complaints coming before the board and for such other matters as the board may direct."

63 P.S. § 479.16(b).

176. This provision of law was enacted several years before <u>Miranda</u> warnings were a Constitutional requirement and two years before school desegregation was constitutionally mandated. <u>See</u>, <u>Brown v. Bd. of Education</u>, 347 U.S. 483 (1954).

177. Section 16(b) of the Funeral Director Law permits the warrantless entry into a funeral establishment for the purpose of inspection and for investigating complaints.

178. Although Defendants and their predecessors have promulgated, or attempted to promulgate, a host of very restrictive regulations over the years, they have chosen <u>not</u> to promulgate any regulatory guidance relating to these unannounced and unrestricted warrantless entries into the homes and records of their licensees.

179. The funeral establishments of Plaintiffs Heffner, Cavanagh, Patrick Connell, Eugene Connell, Matthew Connell, James Connell, Katora, Leffler, Wessel, Dougherty, Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter, Halpate, and Jefferson Memorial Funeral Home, Inc. have been subject to inspection, on a multitude of occasions, over the past several years by a State Board Inspector.

180. Plaintiffs Heffner, Cavanagh, Patrick Connell, Eugene Connell, Matthew Connell, James Connell, Katora, Leffler Wessel, Dougherty, Finney, Ray,

Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter, Halpate, and Jefferson Memorial Funeral Home, Inc. have been compelled by State Board Inspectors to permit entry into their funeral establishments for the purpose of an Inspector investigating a complaint or making an alleged routine inspection.

181.   Plaintiff Halpate was formally charged by the Board and disciplined because he asked an unannounced inspector to wait until proper management could be present for the inspection.

182.   Section 479.16(b) does not require an Inspector to obtain a warrant before commencing any inspection for any purpose.

183.   Section 479.16(b) contains no limitations as to the time, place and scope of the inspection to be performed by the Inspector.

184.   Section 479.16(b) contains no notification requirement through which the Inspector must give some reasonable notice of an intent to inspect the licensee's premises.

185.   Section 479.16(b) contains no provisions whatsoever limiting, in any way, the discretion of the Inspectors with respect to the inspections and investigations performed.

186.   The Audit Committee, in its 1994 investigation and subsequent findings, observed that "[t]here are no written procedure manuals or guidelines for the mortuary inspectors to follow."  Exhibit "1," p. 123.

187.   The Audit Committee, obviously concerned with now well-established constitutional protections, fundamental fairness, and potential for abuse and/or selective enforcement, ultimately recommended that the General Assembly should consider amending the Funeral Director Law to, among other things, specifically define the purpose and scope of the funeral home inspection program, to specify the frequency of inspections and to clarify the authority of the inspectors to examine business records; the Audit Committee also recommended that the Board should promulgate regulations for the inspection program.

188.   There is no exigent circumstance present to justify the unfettered intrusion and authority currently set forth in § 479.16(b) of the Funeral Director Law.

189.   Compounding the unreasonableness of this intrusion is the fact that Defendants have frequently utilized non-licensed individuals who have

no funeral training to perform these burdensome inspections even though the Funeral Director Law mandates the use of licensed directors.

190. Section 479.16(b) violates the Fourth and Fourteenth Amendments to the United States Constitution, as well as Article I, §§ 1 and 8 of the Constitution of the Commonwealth of Pennsylvania.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order as follows:

(a) Declare that the provision of the Funeral Director Law which gives to State Inspectors the unbridled and limitless authority to enter the premises of a funeral establishment or corporation and subject that establishment to inspection and/or search is unconstitutional;

(b) Enjoin the State Board from enforcing that provision of the Funeral Director Law which gives to State Inspectors the unbridled and limitless authority to enter the premises of a funeral establishment or corporation and subject that establishment to inspection and/or search;

(c) Award to Plaintiffs their costs;

(d) Award to Plaintiffs their reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

(e) Enter such other relief as this Court deems just and reasonable.[1]

---

[1] Because different Plaintiffs and different requested relief appear in the several Counts which follow, separate Wherefore clauses appear in this Complaint.

<u>**COUNT II**</u>
**Plaintiffs, Heffner, Cavanagh, Patrick Connell, Eugene Connell, Sucharski, Leffler, Jefferson Memorial Park, Inc., Jefferson Memorial Funeral Home, Inc., Robert Lomison, and Wellman Funeral Associates, Inc., d/b/a Forest Park Funeral Home v. Defendants**
<u>**(Undue Restriction on Ownership)**</u>

191.    Paragraphs 1 through 190 hereof are incorporated herein by reference as if set forth in full.

192.    Section 8 of the Funeral Director Law provides, in relevant part, as follows:

> **(a)    Individuals and Partnerships.**    Except as provided for in subsection (e) hereof, <u>only one license</u> shall be granted to or held by an individual, but two or more licensed funeral directors may operate a joint or partnership business at one place only…
>
> **(b)    Restricted Corporate License.**   A corporate license may be issued to a Pennsylvania corporation which is incorporated pursuant to the provisions of the act of May 5, 1933 (P.L. 364, No. 106), known as the "Business Corporation Law," by one or more licensed funeral directors specifically for the purpose of conducting a funeral directing practice…. <u>No licensed funeral director shall be eligible to apply for more than one restricted corporate license or own shares in more than one restricted corporation.  Nor shall any licensed funeral director who obtains a restricted corporate license or holds shares in a restricted corporation have any stock or proprietary interest in any other funeral establishment,</u> except a branch place of practice as authorized by subsection (e).  Such license shall be valid only if the following conditions exist at the time of issuance of the license and continue in effect for the license period:
>
> * * *

(2)  It holds no shares of stock or any property interest in any other funeral establishment.

(3)  One or more of its principal corporate officers is a person licensed as a funeral director who shall also be a member of the board of directors of the corporation and shall not conduct any other funeral business.

(4)  All of its shareholders are licensed funeral directors or the members of the immediate family of a licensed funeral director or a deceased licensed funeral director who was a shareholder in the corporation at death.  For the purposes of this paragraph "members of the immediate family" shall mean (i) spouse, (ii) children, (iii) grandchildren, (iv) a trustee or custodian who holds shares for the benefit of such spouse, children or grandchildren.

* * *

(6)  The corporation has, for each place of business operated by it, registered with the board the name of a licensed funeral director who will serve as a full-time supervisor of such place of business.

* * *

**(d)  Professional Corporation License.**  A corporate license may be issued to a Pennsylvania corporation which is incorporated pursuant to the provisions of the act of July 9, 1970 (P.L. 461, No. 160), known as the "Professional Corporation Law," by one or more licensed funeral directors specifically for the purpose of conducting a funeral directing practice.  No professional corporation may render funeral services unless it holds a professional corporation license issued pursuant to this subsection.…   No professional corporation shall own

shares of stock or any property interest in any other funeral establishment.…  Nor shall any licensed funeral director who obtains a professional corporation license or holds shares in a professional corporation have any stock or proprietary interest in any other funeral establishment, except a branch place of practice as authorized by subsection (e):  Provided, however, That any licensed funeral director who owned shares of more than one professional corporation prior to February 1, 1977, may maintain ownership of such shares and such corporations may be licensed.

   **(e)  Branch Place of Practice.**  Licensees authorized to conduct a funeral directing practice whether as an individual, partnership, professional corporation or restricted business corporation may practice at one principal place and no more than one branch place of business provided that a licensed funeral director is assigned as a full-time supervisor to such branch location, and provided that the facilities furnished at such branch location fully comply with all the provisions of this act and the rules and regulations promulgated by the board as amended from time to time.  The board shall issue a separate license and require payment of a separate license fee for such branch location.

63 P.S. §479.8(a), (b), (d), and (e)(emphasis added).

193.   Defendants, and their predecessors, have promulgated regulations further prohibiting ownership;  those regulations appear at 49 Pa. Code §13.111, et seq.

194.   As the above sections reflect, with the exception of one branch place of business, the Funeral Director Law precludes a licensed funeral director from having any ownership interest in more than one establishment or corporation that is

involved in the practice of funeral directing and Defendants would, today, discipline a licensed funeral director if he or she acquired such an additional ownership interest.

195.   As the above sections reflect, a restricted or professional corporation cannot have any interest in any other funeral establishment.

196.   Plaintiffs Heffner, Cavanagh, Patrick Connell, Eugene Connell, Sucharski and Jefferson Memorial Park, Inc. own funeral establishments.

197.   Plaintiffs Heffner, Cavanagh, Patrick Connell, Eugene Connell, Sucharski, Leffler, Jefferson Memorial Park, Inc., Jefferson Memorial Funeral Home, Inc., Robert Lomison, and Wellman Funeral Associates, Inc., d/b/a Forest Park Funeral Home desire to acquire or establish other funeral establishments or corporations so as to hold a legal interest in more than one funeral establishment or corporation in which the practice of funeral directing is conducted but fear prosecution if they do acquire such an additional ownership interest.

198.   In response to the Audit Report, the members of the Board identified changes needed in the Funeral Director Law.  See Exhibit "1," p. 196.  One of the "changes needed," as identified by the members of the State Board, was that "… there be no limit on funeral establishments that a person owns …"  Id., yet no change or policy has been implemented to obviate this arbitrary limitation.

199. There is no legitimate governmental interest in precluding or otherwise restricting the number of funeral homes or corporations in which the practice of funeral directing is conducted to one per licensee and one branch location.

200. The portions of the Funeral Director Law and Defendants' Regulations which preclude a licensee from holding a legal interest in more than one funeral establishment (other than a branch establishment) or corporation engaging in the practice of funeral directing is not rationally related to any legitimate governmental interest.

201. The portions of the Funeral Director Law and Defendants' Regulations which preclude a licensee from holding a legal interest in more than one funeral establishment (other than a branch establishment) or corporation engaging in the practice of funeral directing are arbitrary and capricious.

202. The portions of the Funeral Director Law and Defendants' Regulations which preclude a licensee from holding a legal interest in more than one funeral establishment (other than a branch establishment) or corporation engaging in the practice of funeral directing violate Plaintiffs' rights to due process of law, and dormant commerce clause rights as guaranteed by the Constitution of the United States.

203.  No legitimate state purpose is served by the prohibition against ownership, yet the prohibition deters out-of-state entities and individuals from acquiring an ownership interest in Pennsylvania funeral homes because of the arbitrary limitations upon expansion into Pennsylvania's funeral business market.

204.  ,By contrast, a licensed Pennsylvania funeral home owner can lawfully acquire hundreds of funeral homes in other states across the United States, but the converse is prohibited.

205.  The portions of the Funeral Director Law and Defendants' Regulations which preclude a licensee from holding a legal interest in more than one funeral establishment (other than a branch establishment) or corporation engaging in the practice of funeral directing violate Plaintiffs' rights to due process of law and those rights guaranteed by the Constitution of the Commonwealth of Pennsylvania, at Article I, § 1.

206.  The subject legislation represents both a statutory and regulatory result enacted for anti-consumer reasons and an example of protectionist legislation and regulatory restriction that advances the interests of no one other than Defendants and their aligned trade organization colleagues.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order as follows:

(a)     Declare that § 8 of the Funeral Director Law and Defendants' related Regulations, which limit the number of funeral establishments and corporations which a licensed funeral director may own and operate is unconstitutional;

(b)     Enjoin the State Board from enforcing those provisions of § 8 of the Funeral Director Law and the related Regulations which restrict the number of funeral establishments and corporations that may be owned by a licensed funeral director;

(c)     Award to Plaintiffs their costs;

(d)     Award to Plaintiffs their reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

(e)     Enter such other relief as this Court deems just and reasonable.

## COUNT III
### Plaintiffs, Neel, Havrilla, Lomison, Schwalm, Frey, Wellman, Scott, Haas and Wachter v. Defendants
### (Undue Restriction on Ownership to Licensed Funeral Directors)

207.   Paragraphs 1 through 206 hereof are incorporated herein by reference as if set forth in full.

208.   Section 8 of the Funeral Director Law provides, in relevant part, as follows:

> **(a)     Individuals and Partnerships.**   Except as provided for in subsection (e) hereof, only one license shall be granted to or held by an individual, but two or more licensed funeral directors may operate a joint or partnership business at one place only… No person not licensed under this act shall have any interest in the practice carried on by a licensed funeral director except as otherwise herein provided.   Upon the death of a licensee, the board shall issue a license and renewal thereof to his estate, only for a period not exceeding three

(3) years, or widows or widowers of deceased licensees without time limitations, <u>as long as they remain unmarried,</u> providing the widow or widower, the executor or administrator of the estate of the deceased licensee's heir or heirs, informs the board, of the intent to continue practice, within ten (10) days and applies within thirty (30) days for a certificate of licensure.  Such notice shall be in writing.   The practice carried on by a licensee's estate, widow or widower shall be under the supervision of a licensed funeral director employed on a full time basis.  A licensee's estate, widow or widower shall not be denied a license because the deceased licensee operated a business in partnership with one or more other licensed funeral directors nor shall a widow or widower be denied the right to enter into a partnership with one or more of the licensed funeral directors with whom the deceased licensee was in partnership.

**(b)   Restricted Corporate License.**   A corporate license may be issued to a Pennsylvania corporation which is incorporated pursuant to the provisions of the act of May 5, 1933 (P.L. 364, No. 106), known as the "Business Corporation Law," by one or more licensed funeral directors specifically for the purpose of conducting a funeral directing practice…Such license shall be valid only if the following conditions exist at the time of issuance of the license and continue in effect for the license period:

*  *  *

(3)   One or more of its principal corporate officers is a person licensed as a funeral director who shall also be a member of the board of directors of the corporation and shall not conduct any other funeral business.

(4)   All of its shareholders are licensed funeral directors or the members of the immediate family of a licensed funeral director or a deceased

licensed funeral director who was a shareholder in the corporation at death.  For the purposes of this paragraph "members of the immediate family" shall mean (i) spouse, (ii) children, (iii) grandchildren, (iv) a trustee or custodian who holds shares for the benefit of such spouse, children or grandchildren.

* * *

(6)   The corporation has, for each place of business operated by it, registered with the board the name of a licensed funeral director who will serve as a full-time supervisor of such place of business.

* * *

**(d)  Professional Corporation License.**  A corporate license may be issued to a Pennsylvania corporation which is incorporated pursuant to the provisions of the act of July 9, 1970 (P.L. 461, No. 160), known as the "Professional Corporation Law," <u>by one or more licensed funeral directors</u> specifically for the purpose of conducting a funeral directing practice.  No professional corporation may render funeral services unless it holds a professional corporation license issued pursuant to this subsection…

63 P.S. §479.8(a), (b) and (d)(emphasis added).

209.   As reflected above, Section 8(a) of the Funeral Director Law provides that:  [n]o person not licensed under the act shall have any interest in the practice carried on by a licensed funeral director <u>except as otherwise herein provided</u>."  63 P.S. §479.8(a)(emphasis added).

210.   Under Section 8(d), a corporate license can only be issued to a Pennsylvania corporation that is incorporated by one or more licensed funeral directors specifically for the purpose of conducting a funeral directing practice.

211.   The Funeral Director Law permits, however, the State Board to grant a license in perpetuity to widows or widowers of deceased licensees, provided that the widow or widower remains unmarried, and a licensed funeral director is the supervisor of the funeral establishment.

212.   The Defendants and their predecessors have also promulgated Regulations relating to widow and estate licenses, and Defendants continue to seek to enforce these unconstitutional regulations.  See, Pa. Code §13.151, et seq.

213.   Section 479.8(b) of the Funeral Director Law and Defendants' Regulations permit the spouse, children, grandchildren and/or a trustee or custodian who holds shares for the benefit of such spouse, children or grandchildren, to be shareholders in a corporation to which a restricted corporate license is provided under the Funeral Director Law.

214.   In other words, one must be a licensed funeral director to own a funeral establishment or a company that has been incorporated for the purpose of conducting funeral directing, unless the person is the spouse, widow, widower, child or grandchild of a licensee, or a trustee or custodian thereof.

215.   In those situations in which a spouse, widow, widower, child or grandchild of a licensee has an interest in an establishment or corporation at which funeral directing is practiced, a licensed funeral director must be the supervisor at that location.

216.   As the foregoing reflects, no legitimate governmental interest exists in precluding an individual who is not a licensed funeral director from owning an establishment or corporation at which the practice of funeral directing is conducted where a licensed funeral director is the supervisor of that establishment.

217.   The Audit Committee looked at those provisions of the Funeral Director Law pertaining to licensing and ownership in detail.   See, e.g., Exhibit "1," at pp. 156-157.   Not only did the Audit Committee recommend that the General Assembly consider amending the Funeral Director Law to simplify the licensing structure, the Audit Committee recommended:

> The General Assembly should consider amending the Funeral Director Law to authorize ownership of funeral homes by any person, association, partnership, corporation, or other organization as long as the funeral home is supervised and funeral services are provided by a licensed funeral director.

Id., p. 165, yet once again such arbitrary prohibition remains.

218.   Indeed, the widower or the grandchild could be of the most  insidious character, yet that fact is irrelevant to licensure so long as a "supervisor" is designated for that funeral home facility.

219.   As the foregoing reflects, the portion of the Funeral Director Law and Defendants' Regulations which precludes individuals who do not hold a funeral directors license from possessing any ownership interest in an establishment or corporation at which the practice of funeral directing is conducted is not rationally related to any legitimate government interest where a licensed funeral director is the supervisor of that establishment.

220.   The portion of the Funeral Director Law which permits spouses, widows, widowers, children and grandchildren to hold a legal interest in an establishment, including a partnership, or corporation at which the practice of funeral directing is conducted, but not any other unlicensed individual, is arbitrary and capricious.

221.   Under this statutory scheme, Pennsylvania excludes 99% of the population from acquiring ownership in a funeral home in favor of benefitting only heterosexual, married funeral directors and their spouse and offspring.

222.   This law blatantly discriminates against those who are homosexual, devout bachelors or bachelorettes and those who cannot bear children.

223.   Plaintiffs Neel, Havrilla, Lomison, Schwalm, Frey and Wellman are adult individuals or a Louisiana corporation who are not licensed funeral directors and who are precluded from owning a funeral establishment which will be supervised by a licensed funeral director and at which funeral services will be performed by a licensed funeral director.

224.   Plaintiffs Scott, Haas, and Wachter are funeral directors who are unmarried and/or who do not have children or grandchildren and who do not own a funeral establishment.

225.   Plaintiffs Scott, Haas, and Wachter are competitively decentivized from acquiring a funeral establishment because, based on their current status, these Plaintiffs will not have an ability to sell or bequeath such a valuable asset to a non-licensed friend, family member or life partner.

226.   The portion of the Funeral Director Law which precludes non-funeral directors from acquiring any legal interest in an establishment or corporation at which the practice of funeral directing is conducted violates the Plaintiffs' rights to due process of law and equal protection of the law, as guaranteed by the Constitution of the United Sates, as well as Plaintiffs' right to due process of law and to those rights and privileges guaranteed by the Constitution of the Commonwealth of Pennsylvania, Article I, §1.

227.   Precluding non-funeral directors, other than spouses and offspring, who may be wholly uneducated and wholly untrained in the profession of funeral directing, from owning a funeral home substantially and unreasonably interferes with interstate commerce, as the state statutory scheme essentially obliterates any opportunity for an out-of-state person to qualify as a funeral home owner even if licensed as an out-of-state funeral director.

228.   At the same time, the state's interest in the prohibition is *de minimis*, if at all, as there is no bona fide reason to conclude that some grandchild of a deceased funeral director is better qualified to own a funeral home compared to an out-of-state person or corporation, who would be far better qualified as they would have a financial interest in seeing the business succeed; in fact, the law does not require the widow or offspring to take a basic test, take continuing education, or show adequate moral character.

229.   Yet, as the "owner" of the business, these widows and offspring own and direct the investment of pre-need accounts which, in many cases, is in the millions of dollars.

230.   Commerce is further burdened in that, by reason of refusing unmarried heterosexual funeral directors without offspring or unmarried homosexual funeral directors without offspring the opportunity to "grow" a funeral home business and then convey that funeral home to a loved one, such as, to any

family member or, in the case of a homosexual, his/her life partner, these individuals have been disincentivized to incur the significant financing obligation of buying a funeral home, knowing that "going concern" value cannot be conveyed to a person or persons of his/her choosing.  In fact, this law essentially discourages unmarried citizens from ever becoming funeral directors, thus  allowing existing owners of homes to hoard available business and "keep it in the family" for decades upon decades.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order as follows:

(a)   Declare that those provisions of the Funeral Director Law which preclude individuals who are not licensed funeral directors from owning a funeral establishment or possessing an interest in a corporation at which the practice of funeral directing is conducted are unconstitutional;

(b)   Enjoin the State Board from enforcing those provisions of the Funeral Director Law and the related Regulations which preclude individuals who are not licensed funeral directors from acquiring and owning a funeral establishment or an interest in a corporation in which the practice of funeral directing is engaged;

(c)   Award to Plaintiffs their costs;

(d)   Award to Plaintiffs their reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

(e)   Enter such other relief as this Court deems just and reasonable.

**COUNT IV**
**Plaintiffs, Scott, Haas and Wachter v. Defendants**
**(Ownership Restrictions Violate Equal Protection of the Law)**

231.   Paragraphs 1 through 230 hereof are incorporated herein by reference as if set forth in full.

232.   A licensed funeral director who is not married will have no spouse, widow or widower.

233.   A licensed funeral director who is not married and who has no children will have no spouse, widow, widower, children or grandchildren.

234.   The Funeral Director Law precludes a licensed funeral director who is not married from bequeathing his or her interest in a funeral establishment, whether operated individually, as a partnership, or a corporation, to a relative or to a life partner.

235.   Plaintiffs Scott, Haas, and Wachter are funeral directors who are unmarried and/or who do not have children or grandchildren and who do not own a funeral establishment.

236.   Plaintiffs Scott, Haas, and Wachter are competitively disincentivized from acquiring a funeral establishment because, based on their current status, these Plaintiffs will not have an ability to sell or bequeath such a valuable asset to a non-licensed friend, family member or life partner.

237.   Defendants have no legitimate governmental interest in precluding unmarried individuals from bequeathing their interests in their funeral establishments to a relative or a life partner.

238.   The portion of the Law which precludes unmarried individuals from bequeathing their interests in their establishment to relatives or a life partner is not rationally related to any legitimate governmental interest.

239.   The portion of the Funeral Director Law which precludes unmarried individuals from bequeathing their interests in their funeral establishment to relatives or a life partner is arbitrary and capricious.

240.   The portion of the Funeral Director Law which precludes unmarried individuals from bequeathing their interests in their funeral establishments to relatives or a life partner violates Plaintiff's right to due process of law and equal protection of law, as guaranteed by the Constitution of the United States.

241.   Plaintiffs do not challenge "marriage" laws.   They do, however, challenge laws that permit only married/funeral directors and/or funeral directors with offspring to keep their valuable asset in the family while disincentivizing single heterosexual funeral directors without offspring or homosexual funeral directors without offspring from ever acquiring a funeral home or funeral corporation.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order as follows:

(a)     Declare that those provisions of the Funeral Director Law which preclude individuals who are not licensed funeral directors from owning a funeral establishment or possessing an interest in a corporation at which the practice of funeral directing is conducted are unconstitutional;

(b)     Enjoin the State Board from enforcing those provisions of the Funeral Director Law and the related Regulations which preclude individuals who are not licensed funeral directors from acquiring and owning a funeral establishment or an interest in a corporation in which the practice of funeral directing is engaged;

(c)     Award to Plaintiffs their costs;

(d)     Award to Plaintiffs their reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

(e)     Enter such other relief as this Court deems just and reasonable.

## COUNT V
### Plaintiffs, Heffner, Cavanagh, Katora, Leffler, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Haas, Wachter, Halpate and Wellman Funeral Associates, Inc. d/b/a Forest Park Funeral Home
### v. Defendants
### (Undue Restriction on Place of Practice)

242.   Paragraphs 1 through 241 hereof are incorporated herein by reference as if set forth in full.

243.   Section 8 of the Funeral Director Law provides, in relevant part, as follows:

> **(e)  Branch Place of Practice.**  Licensees authorized to conduct a funeral directing practice whether as an individual, partnership, professional corporation or restricted business corporation <u>may practice at one principal place and no more than one branch place of business</u> provided that a licensed funeral director is assigned as a full-time supervisor to such branch location, and provided that the facilities furnished at such branch location fully comply with all the provisions of this act and the rules and regulations promulgated by the board as amended from time to time.  The board shall issue a separate license and require payment of a separate license fee for such branch location.

63 P.S. §479.8(e)(emphasis added).

244.   As Section 8(e) of the Funeral Director Law reflects, a licensee is restricted to practice funeral directing at one principal place and at one branch place of business, provided that a "full-time supervisor" is located at that branch place.

245.   Plaintiffs Heffner, Cavanagh, Katora, Leffler, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Haas, Wachter and Halpate desire to practice at more than one principal place of business.

246.   Plaintiffs Heffner, Cavanagh, Katora, Leffler, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Haas, Wachter and Halpate desire to practice at more than one branch place of business as an extension of his practice.

247.   No legitimate governmental interest exists in restricting the number of places at which one may practice, consistent with the requirement to designate a licensed funeral director as responsible for the operations.

248.   The portion of the Funeral Director Law which restricts the number of places at which a funeral director may practice is not rationally related to any legitimate governmental interest.

249.   The portion of the Funeral Director Law which restricts the number of places at which a funeral director may practice is arbitrary and capricious.

250.   The portion of the Funeral Director Law which restricts the number of places at which a funeral director may practice violates Plaintiffs' rights to due process of law, as guaranteed by the Constitution of the United States.

251.   The portion of the Funeral Director Law which restricts the number of places at which a funeral director may practice violates Plaintiffs' rights to due process of law and to those rights and privileges guaranteed by the Constitution of the Commonwealth of Pennsylvania, Article I, § 1.

252.  This portion of the Funeral Director Law also constitutes an unreasonable burden on interstate commerce as it effectively excludes out-of-state entities, such as Wellman Funeral Associates, Inc., d/b/a Forest Park Funeral Home, from coming into this Pennsylvania market, as their profit and market share

opportunities are capped without any offsetting benefit of legitimate public concern.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order as follows:

(a)   Declare that those provisions of the Funeral Director Law and any related Regulation which restrict the number of places at which a funeral director may practice are unconstitutional;

(b)   Enjoin the State Board from enforcing those provisions of the Funeral Director Law and any related Regulation which restrict the number of places at which a funeral director may practice;

(c)   Award to Plaintiffs their costs;

(d)   Award to Plaintiffs their reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

(e)   Enter such other relief as this Court deems just and reasonable.

## COUNT VI
**Plaintiffs, Heffner, Cavanagh, Patrick Connell, Eugene Connell, Matthew Connell, James J. Connell, Jr., Katora, Leffler, Wessel, Dougherty, Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter and Halpate v. Defendants (Undue Requirement of "Full Time" Supervisor)**

253.   Paragraphs 1 through 252 hereof are incorporated herein by reference as if set forth in full.

254.   Section 8(e) of the Funeral Director Law requires that a branch location of a funeral business employ a full-time funeral supervisor.   63 P.S. §479.8(e).

255.   Defendants' Regulations reinforce this unreasonable requirement.  <u>See</u> <u>e.g.</u>, 49 Pa. Code §13.113.  Defendants will discipline an individual who violates these sections of statutory and regulatory law.

256.   The Funeral Director Law defines a "full-time supervisor" as a licensed funeral director "…who is a registered supervisor of <u>no more than one</u> funeral establishment and who is accessible to serve the public at the funeral establishment which he is supervising and is not engaged in any activity, business or profession, including assisting other funeral directors, which substantially interferes with or prevents the supervision of the practice carried on by the funeral establishment which he supervises."  63 P.S. §479.2(11)(emphasis added).

257.   The promulgated Regulations of Defendants provide a slightly different definition of "Supervisor" but reassert the same basic prohibitions.  <u>See</u>, 49 Pa. Code §13.1, 13.113.

258.   The Funeral Director Law and Regulations preclude a licensed funeral director from serving as a registered supervisor of more than one funeral establishment and preclude that individual from assisting other funeral directors, even if that registered supervisor is accessible to serve the public at the funeral establishment which he is supervising and is not engaging in any other activity which substantially interferes with or prevents the supervision of the practice carried on by the funeral establishment which he supervises.

259.   Although the Funeral Director Law and Regulations preclude a licensed funeral director from serving as a registered supervisor of more than one funeral establishment, the Funeral Director Law and Regulations, and the Board's interpretation of the same, permit that "full-time funeral supervisor" to hold other employment (e.g., a bus driver, painter, etc.), provided that such business or profession does not substantially interfere with or prevent the supervision of the practice carried on by the funeral establishment which he supervises.

260.   Plaintiffs Heffner and Cavanaugh are officers of several corporations which operate funeral establishments.

261.   Plaintiffs Heffner and Cavanagh desire to employ one licensed funeral director to serve as the registered supervisor of more than one of the funeral establishments of which Plaintiff Heffner and Cavanagh are officers.

262.   Plaintiffs Heffner, Cavanagh, Patrick Connell, Eugene Connell, Matthew Connell, James J. Connell, Jr., Katora, Leffler, Wessel, Dougherty, Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter and Halpate are precluded from employment as a supervisor of more than one location.

263.   Defendants have no legitimate governmental interest in restricting the number of locations at which a licensed funeral director can serve as a registered supervisor where that individual is accessible to serve the public at the funeral

establishment which he is supervising and when he is not engaging in any other activity which substantially interferes with or prevents the supervision of the practice carried on by the funeral establishment or establishments which he supervises.

264.   The portion of the Funeral Director Law and Regulations which restrict the number of locations at which a licensed funeral supervisor can serve as a registered supervisor is not rationally related to any legitimate governmental interest.

265.   For example, at one funeral home location there may be as many as 1500 services in a given year, but in another location there may only be fifteen services, rendering a full-time supervisor position financially impossible.   There is no legitimate reason why a funeral director could not supervise two or more low-volume homes if the owners of the business agreed.

266.   In fact, former members of the Board advised the Audit Committee, in 1994, that the Funeral Director Law should be changed to eliminate the requirement for supervisors for branches.   Exhibit "1," at p. 196; yet again the arbitrary prohibition remains.

267.   The portion of the Funeral Director Law and Regulations which restrict the number of locations at which a licensed funeral supervisor can serve as a registered supervisor is arbitrary and capricious.

268.   The portion of the Funeral Director Law and Regulations which restricts the number of locations at which a licensed funeral supervisor can serve as a registered supervisor violates Plaintiffs' right to due process of law, as guaranteed by the Constitution of the United States.

269.   The portion of the Funeral Director Law and Regulations which restricts the number of locations at which a licensed funeral supervisor can serve as a registered supervisor violates Plaintiffs' rights to due process of law and of those rights and privileges guaranteed by the Constitution of the Commonwealth of Pennsylvania, Article I, § 1.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order as follows:

(a)   Declare that those provisions of the Funeral Director Law and Regulations which restrict the number of locations at which a licensed funeral supervisor can serve as a registered supervisor are unconstitutional;

(b)   Enjoin the State Board from enforcing those provisions of the Funeral Director Law and related Regulations which restrict the number of locations at which a licensed funeral supervisor can serve as the registered supervisor;

(c)   Award to Plaintiffs their costs;

(d)   Award to Plaintiffs their reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

(e)   Enter such other relief as this Court deems just and reasonable.

## COUNT VII
### Plaintiffs, Heffner and Cavanagh v. Defendants
### (Undue Requirement that Every Establishment Include a Prep Room)

270. Paragraphs 1 through 269 hereof are incorporated herein by reference as if set forth in full.

271. Section 7 of the Funeral Director Law provides, in relevant part:

**Restrictions; preparation room**

* * *

After the thirty-first day of August, one thousand nine hundred fifty-two, every establishment in which the profession of funeral directing is carried shall include a preparation room, containing instruments and supplies necessary for the preparation and embalming of dead human bodies and be constructed in accordance with sanitary standards prescribed by the board, for the public health.

* * *

63 P.S. § 479.7.

272. Defendants' Regulations reinforce this restriction and go further in burdening the funeral home owner. See, 49 Pa. Code §13.171-176.

273. Plaintiffs Heffner and Cavanagh are officers of several corporations which operate a funeral establishment.

274. Some of Plaintiff Heffner's and Cavanagh's corporations operate funeral establishments which are in close proximity, relatively, to one another.

275.   Because of the location of some of the funeral establishments, Plaintiffs Heffner and Cavanagh are able to prepare the bodies of deceased individuals at various establishments.

276.   The funeral establishments of many of the Plaintiffs herein are also in close proximity to one another or to another funeral establishment.

277.   As a result of Section 7 of the Funeral Director Law and the Defendants' Regulations, Plaintiffs Heffner and Cavanagh  are required to spend substantial sums of money to maintain a preparation room where a preparation room in another funeral establishment is available to prepare the body of the deceased.

278.   Upon information and belief, other licensed funeral directors practicing in this Commonwealth are similarly situated to Plaintiffs in that they have other preparation rooms at which they could prepare the deceased's body, but are required to maintain a preparation room in their own funeral establishments.

279.   Defendants have no legitimate governmental interest in requiring each and every funeral establishment, without reason, to maintain a preparation room when an alternate location preparation room would be available.

280.   Indeed, the 1994 Audit Report reflects that the Audit Committee found that "[t]he requirement that every funeral home must maintain a separate preparation room appears overly restrictive."  Exhibit "1," p. 166.

281.   The Audit Report reflects that "[b]oard members, licensees <u>and</u> the PFDA told us that this requirement is burdensome and unnecessary." <u>Id</u>., p. 167 (emphasis added).

282.   The Audit Report reflects that licensees who commented on this subject pointed out that "… the requirement is not in the best interests of consumers" and that it "… creates needless expense and creates a waste of inspection resources." <u>Id</u>.

283.   The Audit Committee recommended that "[t]he General Assembly should consider amending the Funeral Director Law to eliminate the separate preparation room requirement and specifically authorize the use of centralized embalming facilities." <u>Id</u>., p. 168.

284.   The members of the Board in office at <u>that</u> time (*i.e.*, 1994) specifically recommended that the Funeral Director Law be changed to permit the use of a centralized preparation room. <u>Id</u>., p. 196.

285.   In fact, in response to the Audit Report, the Board, with respect to the issue concerning the preparation room, specifically commented:

* * *

The Board agrees with the Finding on the restrictive nature of requiring a preparation room for every funeral home.  Not every funeral home needs a preparation room as required by existing law.  A centralized embalming facility makes a lot more sense, according to the way this

business is conducted today.   This is a matter which deserves serious consideration.

* * *

Exhibit "1," p. 238.

286.   The portion of the Funeral Director Law and Defendants' Regulations which requires each and every funeral establishment, without reason, to maintain a preparation room is not rationally related to any legitimate governmental interest.

287.   The portion of the Funeral Director Law and Regulations which requires each and every funeral establishment, without reason, to maintain a preparation room is arbitrary and capricious.

288.   The portion of the Funeral Director Law and Regulations which requires each and every funeral establishment, without reason, to maintain a preparation room violates Plaintiffs' right to due process of law, as guaranteed by the Constitution of the United States.

289.   The portion of the Funeral Director Law and Regulations which requires each and every funeral establishment, without reason, to maintain a preparation room violates Plaintiffs' rights to due process of law and to those rights and privileges guaranteed by the Constitution of the Commonwealth of Pennsylvania, Article I, § 1.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order as follows:

(a)     Declare that the provision of the Funeral Director Law and related which requires every funeral establishment to include a preparation room is unconstitutional where the Plaintiff has other preparation rooms available at which the deceased body can be prepared;

(b)     Enjoin the State Board from enforcing that provision of the Funeral Director Law Regulations which requires every funeral establishment to include a preparation room where the Plaintiff has other preparation rooms available at which the deceased body can be prepared;

(c)     Award to Plaintiffs their costs;

(d)     Award to Plaintiffs their reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

(e)     Enter such other relief as this Court deems just and reasonable.

## COUNT VIII
### Plaintiffs, Heffner, Cavanagh, Patrick Connell, Eugene Connell, Matthew Connell, James J. Connell, Jr., Katora, Leffler, Wessel, Dougherty, Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter, Halpate, Havrilla, Neel and Jefferson Memorial Funeral Home, Inc. v. Defendants
### (Undue Restriction on Food)

290.    Paragraphs 1 through 289 hereof are incorporated herein by reference as if set forth in full.

291.    Section 7 of the Funeral Director Law provides, in relevant part:

**Restrictions; preparation room**

* * *

> No food or intoxicating beverages shall be served in any funeral establishment in which the profession of funeral directing is carried on. Beverages, if served, must be restricted to a separate room not used for the preparation and conduct of a funeral service. Any facility beyond the confines of such funeral establishment, but directly or indirectly operated by a funeral director for the service of refreshments or food shall be maintained in accordance with State and local health laws and regulations pertaining to public eating place for the protection of the public.

63 P.S. § 479.7.

292. Defendants' Regulations provide for a different yet still restrictive prohibition:

> A food may not be served to the public in any part of a funeral establishment. Nonalcoholic beverages may be served in an area approved by the Board. A funeral director or employe shall take the proper steps for personal sanitation before serving or dispensing a permitted beverage to the public.

49 Pa. Code § 13.183.

293. Families of deceased individuals have asked many of the Plaintiffs herein to provide food and/or beverages at his funeral establishments for members of the public who present themselves to pay their last respects to the families' deceased loved one.

294. Plaintiffs Heffner, Cavanagh, Patrick Connell, Eugene Connell, Matthew Connell, James J. Connell, Jr., Katora, Leffler, Wessel, Dougherty,

Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter, Halpate, Havrilla, Neel and Jefferson Memorial Funeral Home, Inc. desire to accommodate families who ask that food and/or beverages be provided at his funeral establishments.

295. Section 7 of the Funeral Director Law as well as Defendants' Regulations, however, prohibit food from being served in any funeral establishment.

296. The Funeral Director Law restricts beverages from being served in a room which is used to conduct a funeral service.

297. Forty-five (45) states within the United States have no restrictions on food or beverage. Seventeen (17) miles to the south of Plaintiff Heffner's main facility, in Maryland, there is no food restriction, and there is no negative health-related history or experience in that or any other state.

298. In fact, the Audit Committee, in 1994, assessed the need for the regulation of the funeral industry for purposes of protecting health and safety. See Exhibit "1," pp. 14-18.

299. In relevant part, the Audit Committee observed as follows:

- "… advances in mortuary science and health regulation have virtually eliminated the public health risks associated with preparation and disposition of the deceased";

- "[c]urrent medical opinion is that dead bodies pose little or no risk to the general public …";

- "[w]hile the dead human body poses minimal risks to the general public, there are risks for those who work in the industry."

Id., pp. 14-16 (emphasis added).

300.    The Defendants have no legitimate interest in precluding or otherwise restricting the service of food and beverages in a funeral establishment.

301.    Allowing a "beverage" in certain areas yet prohibiting "food" is a frivolous distinction.  This means a home could serve tomato juice but would be prosecuted if it offered tomato soup.

302.    The portion of the Funeral Director Law and Regulations which restricts the service of food in any funeral establishment is not rationally related to any legitimate governmental interest.

303.    The portion of the Funeral Director Law and Regulations which restricts the location where beverages may be served in a funeral establishment is not rationally related to any legitimate governmental interest.

304.    The portion of the Funeral Director Law and Regulations which precludes or otherwise restricts the service of food and beverages in a funeral establishment is arbitrary and capricious.

305.   The portion of the Funeral Director Law and Regulations which precludes or otherwise restrict the service of food and beverages in a funeral establishment violates Plaintiffs' right to due process of law, as guaranteed by the Constitution of the United States of America.

306.   The portion of the Funeral Director Law and Regulations which preclude or otherwise restricts the service of food and beverages in a funeral establishment violates Plaintiffs' rights to due process of law and to those rights and privileges as guaranteed by the Constitution of the Commonwealth of Pennsylvania, Article, I, § 1.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order as follows:

(a)   Declare that the provisions of the Funeral Director Law and Defendants' Regulations which prohibits food from being served in any funeral establishment and which restricts beverages from being served in a room which is used to conduct a funeral service is unconstitutional;

(b)   Enjoin the State Board from enforcing that provision of the Funeral Director Law and related Regulations which prohibits food from being served in any funeral establishment and which restricts beverages from being served in a room which is used to conduct a funeral service;

(c)   Award to Plaintiffs their costs;

(d)   Award to Plaintiffs their reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

(e)   Enter such other relief as this Court deems just and reasonable.

**COUNT IX**
**Plaintiffs, Heffner, Sucharski, Sucharski Cremation Service, Inc., and**
**Jefferson Memorial Park, Inc. v. Defendants**
**(Infringement on Commercial Speech)**

307. Paragraphs 1 through 306 hereof are incorporated herein by reference as if set forth in full.

308. Section 8 of the Funeral Director Law provides, in relevant part, as follows:

> **(a)   Individuals and partnerships.** … No funeral practice, whether conducted by an individual or a partnership, may be conducted under any other name than the name or last name of the individual or, if a partnership, the names or last names of all partners: Provided, however, That an individual or partnership may be conducted under the name of a predecessor funeral establishment if the name or names of the owner or partners appear as operator or operators on all signs, forms and advertising…

> **(b)   Restricted corporate license.** … The name of such corporation shall contain the name or the last name of one or more of the licensed shareholders or the name of a predecessor funeral establishment…

> * * *

> **(d)   Professional corporation license.** … The name of such professional corporation shall contain the name or the last name of one or more of the shareholders or the name of a predecessor funeral establishment….

63 P.S. § 479.8(a)(b) and (d).

309.   Defendants' Regulations carry the same prohibition.  <u>See</u>, 49 Pa. Code §13.83-84.

310.   As referenced above, Plaintiff Heffner owns Heffner Funeral Chapel & Crematory, Inc.

311.   Plaintiff Sucharski owns **a funeral home trading as Sucharski Cremation Service, Inc.**.

312.   Plaintiff Jefferson Memorial Park, Inc. is the sole shareholder of Jefferson Memorial Funeral Home, Inc., and, in order to comply with this absurd prohibition that furthers no legitimate purpose, Jefferson Memorial Park, Inc. hired a licensed funeral director who changed her surname to "Jefferson", thus underscoring the absolute irrelevance of this advertising restriction.

313.   Plaintiffs Heffner, Sucharski and Jefferson Memorial Park, Inc. desire to operate funeral establishments under names other than their own.

314.   Plaintiffs Heffner, Sucharski and Jefferson Memorial Park, Inc. desire to operate funeral establishments under names other than under the name of their predecessor or other owners of the particular funeral establishments.

315.   In other words, Plaintiffs Heffner, Sucharski and Jefferson Memorial Park, Inc. desire to operate funeral establishments under some name other than their own names, a partner's name or their predecessors' name.

316.   Section 8 of the Funeral Director Law and Defendants' Regulations preclude Plaintiffs Heffner, Sucharski and Jefferson Memorial Park, Inc., as well as others similarly situated, from using a name other than their own, a partner's or a predecessor's.

317.   Advertising the operation of their funeral establishments is speech protected by the First Amendment.

318.   Defendants' limitations on such speech serve no valid governmental interest.

319.   Defendants' limitations on such speech are not rationally related to any governmental interest.

320.   To the extent that their purpose is to prevent false and misleading speech, Defendants have failed to tailor their action to accomplish that goal.

321.   Defendants' limitations on such speech are more extensive than is necessary to serve any valid governmental interest.

322.   By prohibiting Plaintiffs Heffner, Sucharski and Jefferson Memorial Park, Inc., and others similarly situated, from practicing and advertising their funeral establishment under any name other than those specified in the Law, the Defendants, acting under color of state law, have chilled Plaintiffs Heffner, Sucharski and Jefferson Memorial Park, Inc., and others similarly situated, from exercising their right to free speech under the First Amendment of the United

States Constitution and, therefore, have violated the First Amendment and Fourteenth Amendment to the United States Constitution, as well as those rights and privileges guaranteed by the Constitution of the Commonwealth of Pennsylvania.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order as follows:

(a)   Declare that those provisions of the Funeral Director Law and related Regulations which preclude a licensed funeral director from using a name other than his own, a partner's or a predecessor's name in the advertisement and operation of the funeral establishment or corporation is unconstitutional;

(b)   Enjoin the State Board from enforcing those provisions of the Funeral Director Law and related Regulations which preclude a licensed funeral director from using a name other than his own, a partner's or a predecessor's name in the advertisement and operation of the funeral establishment or corporation;

(c)   Award to Plaintiffs their costs;

(d)   Award to Plaintiffs their reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

(e)   Enter such other relief as this Court deems just and reasonable.

## COUNT X
### All Plaintiff Funeral Directors v. Defendants
### (Arbitrary Restrictions on Continuing Education Course Availability)

323.   Paragraphs 1 through 322 hereof are incorporated herein by reference as if set forth in full.

324.   In 2000, the General Assembly amended the Funeral Director Law so as to require licensed funeral directors to attend six hours of mandatory continuing education during each two year license period.  See, 63 P.S. §479.10(b)(2).

325.   Subsection 6 of §10(b) now provides as follows:

> All courses, locations, instructors and providers shall be approved by the board.  No credit shall be given for any course in office management.

326.  Subsection 7 provides that the State Board shall initiate the promulgation of regulations to carry out the provisions of the 2000 amendments, and, effective December 3, 2005, regulations were adopted by Defendants.  See, 35 Pa. B. 6523, 49 Pa. Code §13.401, et seq.

327.   Pursuant to §13.403 of Defendants' Regulations, Defendants have unduly and unreasonably restricted the scope of available continuing education courses and Defendants, by edict (rather than regulation), have unreasonably precluded licensees from securing continuing education credits on line.

328.   Specifically, by reason of §13.403, courses may only be offered on a subject matter identified in §5 of the Funeral Director Law; Section 10 of the Funeral Director Law, however, does not contain such a restriction.

329.   A review of §5 of the Law, which relates to examinations for licensure, identifies, inter alia, basic and health sciences, but more importantly, "Funeral Service Arts and Sciences," as well as "funeral service administration

including accounting, funeral law, psychology, funeral principles, directing and management." <u>See</u>, 63 P.S. §479.5(2), (3).

330.   In addition to the foregoing, the State Board, via its "Provider Application for Continuing Education Course Approval" advises that "[n]o correspondence courses, <u>internet courses</u> or courses in office management or marketing will be approved." <u>See</u> Provider Application attached hereto as Exhibit "18," p. ii (emphasis added).

331.   Neither the Funeral Director Law nor the Regulations, however, prohibit an individual from obtaining his or her educational credits through online courses offered by applicable institutions.

332.   It is now wholly permissible for an individual to secure all educational credit necessary to sit for the funeral director licensure examination by on-line education, except for a limited two week program in lab work, which must be done on site at a mortuary school.

333.   In other words, the Defendants permit an individual to secure what amounts to his or her entire threshold education on-line, yet the State Board, in administering its continuing education program, requires the licensed funeral director to be personally present at any course of continuing education.

334.   Not surprisingly, one of the "approved providers" of continuing education by the State Board is PFDA.

335.  PFDA, unlike other eligible providers such as the Pittsburgh Institute of Mortuary Science, does not have the electronic capability to offer on-line courses.

336.  Consequently, the State Board is compelling all licensees to appear personally at continuing education courses so that its alter-ego, PFDA, can profit by charging enrollment fees for non-member funeral directors.

337.  It is arbitrary and capricious for the State Board to allow one's entire threshold education to be secured by on-line education (excepting therefrom the two week lab work), yet require individuals, once licensed, to attend six hours of continuing education by physically presenting themselves at sites which are distant from the funeral home where the licensee is working, especially under circumstances where said requirement is, by design, intended to financially benefit one trade organization.

338.  In addition, even though the State Board has identified in its Regulations the fact that continuing education courses can relate to "funeral service administration including accounting, funeral law, psychology, funeral principles, directing and management," the State Board will not approve any course that deals with marketing or service administration.

339.  This prohibition is internally inconsistent and unconstitutional.

340.   Specifically, unlike other areas of licensure, this Board has consistently concluded that funeral directing includes all aspects of business and management.

341.   It has consistently argued over the last several years that funeral directing includes making arrangements for funeral services, selling funeral merchandise, making financial arrangements for the rendering of services, etc.

342.   Defendants have prosecuted and disciplined more licensees because of their management practices and marketing practices than they have for technical violations, such as embalming irregularities or body disposition.

343.   The State Board has focused almost exclusively in the last several years on controlling the means by which funeral directors can market and manage their practices.

344.   Indeed, the State Board has specific regulations that require pre-need agreements to be approved; the State Board is currently proposing regulations that will dictate precisely who on behalf of a funeral director can say what to a prospective customer; the State Board is trying to promulgate regulations that affect how contracts may be entered into with the consumer.

345.   It is arbitrary and capricious, as well as internally inconsistent within the Regulations, to prohibit continuing education course curricula that involve, *inter alia*, marketing, funeral service administration or management.

346. In addition, even though the General Assembly indicated that continuing education was not to include courses in management, the State Board unlawfully expanded that prohibition in §13.403(b) by prohibiting "marketing."

347. Clearly, "office management" is intended to be distinct and different from "marketing," given the fact that the State Board has utilized both terms in the disjunctive in §13.403.

348. In this regard, the State Board has exceeded its authority to promulgate regulations by now "legislating" in an area reserved for the General Assembly.

349. Plaintiffs Heffner, Cavanagh, Patrick Connell, Eugene Connell, Matthew Connell, James J. Connell, Jr., Katora, Leffler, Wessel, Dougherty, Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter, Halpate and others similarly situated are unduly denied the utilization of on-line continuing education as a means of efficiently maintaining educational standards such as OSHA training currently available through non-PFDA sources.

350. Plaintiffs Heffner, Cavanagh, Patrick Connell, Eugene Connell, Matthew Connell, James J. Connell, Jr., Katora, Leffler, Wessel, Dougherty, Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter, Halpate and others similarly situated are arbitrarily

denied the utilization of on-line continuing education as a means of efficiently maintaining education standards, since education is available from approved higher education institutions such as the Pittsburgh Institute of Mortuary Science and other non-PFDA sources, including the International Cemetery, Cremation and Funeral Association ("ICCFA").

351. Plaintiffs Heffner, Cavanagh, Patrick Connell, Eugene Connell, Matthew Connell, James J. Connell, Jr., Katora, Leffler, Wessel, Dougherty, Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter, Halpate and others similarly situated have arbitrarily been denied continuing education credit for anything that might be deemed at the whim of the PFDA control board to be "office management or marketing."

352. Such restrictions and arbitrary action constitute violations of Plaintiffs' rights under both the federal and state constitutions, specifically, the due process and equal protection clauses of each.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

(a)     Declare the current continuing education scheme unconstitutional as implemented;

(b)     Enjoin Defendants from enforcing those provisions of the Rules and Regulations;

(c)     Award to Plaintiffs their costs;

(d)     Award to Plaintiffs their reasonable attorneys fees pursuant to 42 U.S.C. §1988; and

(e)     Enter such other relief as this Court deems just and reasonable.

**COUNT XI**
**Plaintiffs, Lomison, Schwalm, East Harrisburg and**
**Jefferson Memorial Park, Inc. v. Defendants**
**(Unlawful Interference with Trade)**

353.   Paragraphs 1 through 352 hereof are incorporated herein by reference as if set forth in full.

354.   Plaintiffs Lomison, Schwalm and East Harrisburg own and operate crematories.

355.   Plaintiffs Lomison, Schwalm and East Harrisburg are not licensed funeral directors and the crematories which they own and operate are not licensed as funeral establishments under the Funeral Director Law.

356.   Plaintiff, East Harrisburg is a Pennsylvania corporation which markets and/or perform cremations.

357.   In order to perform cremations in the Commonwealth, a permit must be obtained from the Commonwealth of Pennsylvania, Department of Environmental Protection ("DEP").  35 P.S. § 1121.

358.   Those provisions of law which pertain to the permitting of individuals or entities to perform cremation services do not require that the individual or entity be a licensed funeral director in order for the permit to be issued.

359.   In addition to the foregoing, the Real Estate Licensing and Registration Act, Act No. 9 of February 19, 1980, P.L. 15, as amended, 63 P.S. § 455.101 et seq. (the "Real Estate Act") governs the conduct of "cemeteries."

360.   The Real Estate Act defines a "cemetery" as "[a] place for the disposal or burial of deceased human beings, by cremation or in a grave, mausoleum, vault, columbarium or other receptacle, but the term does not include a private family cemetery."  63 P.S. § 455.201.

361.   Nothing in the Real Estate Act requires an individual or entity that performs cremations to be a licensed funeral director.

362.   Finally, the Future Interment Law permits individuals and entities who are not licensed funeral directors to sell funeral related merchandise and to do so pre-need.

363.   Specifically, the Future Interment Law provides:

> Except as hereinafter provided, no person shall, directly or indirectly or through an agent, offer to enter into or enter into a contract for the sale of personal property or for the furnishing of personal services to be used in connection with the interment of a deceased human being wherein the personal property is not to be delivered or the personal services are not to be performed until the

> death at some future time of the person for whose interment such property or services are to be furnished.

63 P.S. § 480.1.

364.   The Future Interment Law further provides:

> (a)    Any person entering into any such contract as the seller shall deposit into a merchandise trust fund, established for that purpose with a banking institution in the Commonwealth authorized to perform trust functions, as trustee of such fund, seventy percent of the retail price of the personal property or personal services so sold for future need.

* * *

63 P.S. § 480.2.

365.   As the foregoing reflects, individuals or entities who are not licensed funeral directors may enter into pre-need contract for merchandise and services incidental thereto provided that certain trusting requirements are satisfied.

366.   Pursuant to the foregoing, Plaintiffs Lomison, Schwalm and East Harrisburg, as well as others similarly situated, desire to enter into pre-need agreements for cremation services and merchandise related to the same.

367.   As reflected in paragraphs 95 through 98 above, the Board historically took the position that crematories are not subject to the jurisdiction of the State Board.   Therefore, for more than a century crematories and cremation societies directly and independently serviced this small segment of the public who wished to simply be cremated without any traditional funeral visitation, public display of the

body, purchase of a casket or other services.  The first crematory in North America was built in Washington, Pennsylvania in 1876.  Since that time, crematories and cremation societies in Pennsylvania and nationally have sold direct cremation as a no frills, low cost alternative to traditional funerals involving a funeral director.

368.   Although the Funeral Director Law has been in place for decades and its State Board was fully aware that crematories and cremation societies were selling and servicing direct cremation to tens of thousands of consumers, it is only recently that the State Board took the new legal position that cremation services can only be provided by funeral directors.

369.   In fact, implicitly conceding that it does not have jurisdiction over portions of the death care industry other than licensed funeral directors, the State Board, in response to certain portions of the Audit Report, noted that "[t]his Board has gone on record for the past several years, requesting that this Law be revisited by the Legislature to bring it in line with modern practices in the industry and broaden its influence upon a larger industry than the licensed funeral director." Exhibit "1," p. 232.

370.   As set forth above, however, there has been an increase in consumer demand for cremation services.  See paragraph 96 above.

371.   As a result, individuals and entities, including the Plaintiffs referenced in this Count, who desire to market and provide cremation services would become

competitors with those licensed funeral directors who provide traditional funeral services.

372.   In response, the Defendants now take the position that, to do anything other than cremate the body, a licensed funeral director must be involved.

373.   The Defendants and its prosecuting attorneys now take the position that a crematory which is not licensed as a funeral establishment cannot even contract with the general public to provide cremation services either at need or pre-need.  See e-mail from State Board prosecuting attorney attached hereto as Exhibit "19."

374.   Stated alternatively, Defendants' legal position is that a Pennsylvania resident cannot die and be disposed of lawfully, unless a licensed funeral director is paid in the process.

375.   Pursuant to the foregoing interpretation of law, a crematory which is not a licensed funeral establishment cannot market the cremation services that it provides and cannot enter into a pre-need contract to provide cremation services or merchandise without the threat of prosecution.

376.  Plaintiffs Lomison, Schwalm, East Harrisburg and Jefferson Memorial Park, Inc. either have pre-need contracts to provide cremation services and/or merchandise or desire to enter into pre-need contracts to provide cremation services and/or merchandise.

377.   Those Plaintiffs referenced above who have entered into pre-need contracts for cremation services and merchandise now face the threat of prosecution as a result of this arbitrary and selective interpretation of the law.

378.   If Plaintiffs Lomison, Schwalm, East Harrisburg and Jefferson Memorial Park, Inc. continue to solicit, market and sell pre-need contracts for cremation services or merchandise, those Plaintiffs may subject themselves to prosecution.

379.   In fact, Plaintiffs Lomison and Schwalm, as well as many others, have already received investigatory subpoenas issued by the State Board seeking the production of, among other things, pre-need contracts for cremation services.

380.   Significantly, because Defendants interpret the Funeral Director Law as precluding individuals who are not licensed funeral directors from owning or holding a legal interest in a funeral establishment (which provision is challenged above), Plaintiffs in this Count cannot, as the Funeral Director Law is currently interpreted, license their crematories as funeral establishments because they are not licensed funeral directors.

381.   Precluding crematories that are properly licensed from entering into pre-need or at need contracts for cremation services does nothing other than stifle competition and aid in assuring that one cannot die in this Commonwealth unless a

licensed funeral director is somehow financially remunerated, regardless of the wishes of the consumer.

382.   The foregoing interpretation of the Funeral Director Law also *de facto* nullifies and repeals the Future Interment Law and those laws which govern the permitting and licensing of crematories, as said interpretation precludes a crematory from doing that which the Future Interment Law and the permitting law expressly permit, unless a funeral director unilaterally chooses to subcontract with that crematory <u>and</u> take a fee for being a middleman who has far less knowledge of cremation than does the licensed crematory.

383.   Plaintiffs Lomison, Schwalm, East Harrisburg and Jefferson Memorial Park, Inc. have a First Amendment right to market, solicit, and sell pre-need contracts, and at-need contracts, for cremation services and related merchandise.

384.   The Defendants do not have any, let alone a substantial, governmental interest in precluding Plaintiffs Lomison, Schwalm, East Harrisburg and Jefferson Memorial Park, Inc. from marketing, soliciting and entering into pre-need contracts or at-need contracts for cremation services and related merchandise without being a licensed funeral establishment.

385.   Precluding the Plaintiffs referenced above, as well as others similarly situated, from marketing, soliciting and entering into pre-need contracts or at-need

contracts for cremation services and related merchandise, without first being licensed as a funeral establishment, does not directly advance any recognized, substantial governmental interest.

386.   Precluding the Plaintiffs in this Count, as well as others similarly situated, from marketing, soliciting and entering into pre-need contracts or at-need contracts for cremation services and related merchandise, without first being a licensed funeral establishment, is more extensive than necessary to serve any substantial governmental interest that may exist.

387.   Precluding the Plaintiffs in this Count, as well as others similarly situated, from marketing, soliciting and entering into pre-need or at-need contracts for cremation services and related merchandise without first obtaining a license as a funeral establishment violates the Plaintiffs rights to commercial free speech, as guaranteed by the First Amendment of the Constitution of the United States, as well as by the Constitution of the Commonwealth of Pennsylvania.

388.   The Funeral Director Law, the Real Estate Act, the Future Interment Law and other applicable permitting laws do not support the interpretation set forth at Exhibit "19."

389.   No legitimate governmental interest exists in precluding individuals and entities that own and operate a crematory from entering into a pre-need or at-

need contract for cremation services and related merchandise without first obtaining a license for the crematory as a funeral establishment.

390.   Precluding individuals and entities that own and operate a crematory from entering into pre-need and at-need contracts for cremation services and related merchandise without first obtaining a license as a funeral establishment is not rationally related to any legitimate governmental interest.

391.   Precluding individuals and entities that own and operate a crematory from entering into pre-need and at-need contracts for cremation services and related merchandise without first obtaining a license as a funeral establishment is arbitrary and capricious.

392.   Precluding individuals and entities that own and operate a crematory from entering into pre-need and at-need contracts for cremation services and related merchandise without first obtaining a license as a funeral establishment violates Plaintiffs' rights to due process of law, as guaranteed by the Constitution of the United States.

393.   Precluding individuals and entities that own and operate a crematory from entering into pre-need and at-need contracts for cremation services and merchandise without first obtaining a license as a funeral establishment violates Plaintiffs' rights under both the federal and state impairment of obligation of contract clauses of the federal and state Constitutions.

394.    Precluding individuals and entities that own and operate a crematory from entering into pre-need and at-need contracts for cremation services and related merchandise without first obtaining a license as a funeral establishment violates Plaintiffs' rights to due process of law and to those rights and privileges guaranteed by the Constitution of the Commonwealth of Pennsylvania, Article I, §1.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order as follows:

(a)    Declare that those provisions of the Funeral Director Law and Regulations, or the interpretation of the same, which preclude properly licensed crematories that are not licensed funeral establishments from contracting with the general public to provide cremation services for either at need or pre-need are unconstitutional;

(b)    Enjoin the State Board from enforcing the Funeral Director Law consistent with such unconstitutional interpretation;

(c)    Award to Plaintiffs their costs;

(d)    Award to Plaintiffs their reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

(e)    Enter such other relief as this Court deems just and reasonable.

**COUNT XII**
**Plaintiffs, Heffner, Cavanagh, Patrick Connell, Eugene Connell, Matthew**
**Connell, James J. Connell, Jr., Katora, Leffler, Wessel, Dougherty, Finney,**
**Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee,**
**Scott, Haas, Wachter, Halpate, and Jefferson Memorial Funeral Home, Inc.**
**v. Defendants**
**(Unlawful Restriction on Ownership of Merchandise Company)**

395.   Paragraphs 1 through 394 hereof are incorporated herein by reference.

396.   Plaintiffs Heffner, Cavanagh, Patrick Connell and Eugene Connell are licensed funeral directors who not only own a licensed funeral establishment, but who also own or have a legal interest in a merchandising company established pursuant to the Future Interment Law or that is permitted as a crematory.

397.   As Exhibit "19" reflects, the Defendants are _now_ interpreting the Funeral Director Law so as to preclude crematories from entering into a pre-need or at need agreement for cremation services even if a licensed funeral director has a legal interest in that crematory, if the crematory is not a licensed funeral establishment.

398.   As the Funeral Director Law and Regulations are currently, albeit unconstitutionally, written, a funeral director cannot have an interest in more than one funeral establishment or branch office.

399.   The Defendants also now take the position that a licensed funeral director cannot have a legal interest in a merchandise company that sells funeral

merchandise and allow that company to be part of a pre-need or at-need funeral-related contract.

400.   In fact, certain funeral homes, funeral directors and crematories have been served with investigatory subpoenas that have been issued by the State Board through which records concerning those individuals' and entities' legal interests in merchandise companies have been demanded because Defendants and their agents desire to prosecute and convict those who are operating as such.

401.   Precluding the Plaintiffs herein, and those similarly situated, from owning or otherwise having a legal interest in a separate merchandise company is wholly inconsistent with law, including the express provisions of the Future Internment Law.

402.   Plaintiffs Heffner, Cavanagh, Patrick Connell, Eugene Connell, Matthew Connell, James J. Connell, Jr., Katora, Leffler, Wessel, Dougherty, Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter, Halpate and Jefferson Memorial Funeral Home, Inc. have a First Amendment right to market, solicit and sell funeral merchandise, at need or pre-need, through a company unrelated their funeral establishment.

403.   The Defendants do not have a substantial governmental interest in precluding Plaintiffs Heffner, Cavanagh, Patrick Connell, Eugene Connell, Matthew Connell, James J. Connell, Jr., Katora, Leffler, Wessel, Dougherty,

Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter, Halpate and Jefferson Memorial Funeral Home, Inc. from marketing, soliciting and entering into pre-need contracts or at-need contracts for funeral merchandise.

404.   Precluding the Plaintiffs referenced above from having an ownership interest in a merchandise company and from marketing, soliciting and entering into pre-need contracts or at-need contracts for funeral merchandise does not directly advance any recognized, substantial governmental interest.

405.   Precluding the Plaintiffs in this Count from having an ownership interest in a merchandise company and from marketing, soliciting and entering into pre-need contracts or at-need contracts for funeral merchandise is more extensive than necessary to serve any substantial governmental interest that may exist.

406.   Precluding the Plaintiffs in this Count from having an ownership interest in a merchandise company and from marketing, soliciting and entering into pre-need or at-need contracts for funeral merchandise violates the Plaintiffs rights to commercial free speech, as guaranteed by the First Amendment of the Constitution of the United States, as well as by the Constitution of the Commonwealth of Pennsylvania.

407.   Precluding the Plaintiffs in this Court from having an ownership interest in a merchandise company and from marketing, soliciting and entering into

pre-need contracts or at-need contracts for funeral merchandise violates Plaintiffs' rights under both the federal and state impairment of obligation of contract clauses of the federal and state Constitutions, in part because Defendants and their predecessors authorized these merchandise companies for many years and Plaintiffs, in reliance thereon, have entered into contracts which, although legal when entered into, are now being declared by Defendants as <u>ill</u>egal.

408.   Defendants are currently attempting to promulgate regulations to "validate" their untenable interpretation of law on this issue, thus underscoring the ripeness of this issue and validating the chilling effect to these Plaintiffs who desire to operate contra this illegal interpretation.  <u>See</u> Exhibit "7".

409.   No legitimate governmental interest exists in precluding licensed funeral directors from owning or possessing a legal interest in a merchandise company which sells funeral related product.

410.   Precluding licensed funeral directors from owning or possessing a legal interest in a merchandise company which sells funeral related product is not rationally related to any legitimate governmental interest.

411.   Precluding licensed funeral directors from owning or possessing a legal interest in a merchandise company which sells funeral related product is arbitrary and capricious.

412. Precluding licensed funeral directors from owning or possessing a legal interest in a merchandise company which sells funeral related product violates Plaintiffs' rights to due process of law and equal protection of the law, as guaranteed by the Constitution of the United States.

413. Precluding licensed funeral directors from owning or possessing a legal interest in a merchandise company which sells funeral related product violates Plaintiffs' rights to due process of law and to those rights and privileges guaranteed by the Constitution of the Commonwealth of Pennsylvania, Article I, §1.

414. Defendants' conduct and threat of prosecution is not founded upon a good faith belief that their legal position is constitutional, thus subjecting them to claims for monetary damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order as follows:

(a)    Declare that the foregoing interpretation of the Funeral Director Law and Regulations is unconstitutional;

(b)    Enjoin the State Board from enforcing such an interpretation of the Funeral Director Law and related Regulations;

(c)    Award to Plaintiffs monetary damages;

(d)    Award to Plaintiffs their costs;

(e)    Award to Plaintiffs their reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

(f)    Enter such other relief as this Court deems just and reasonable.

## COUNT XIII
## All Plaintiffs v. Defendants
## (Challenge to Section 11(a)(8) of Law and Section 13.202(5) of Regulations)

415.    Paragraphs 1 through 414 hereof are incorporated herein by reference as if set forth in full.

416.    Section 11(a)(8) of the law allows Defendants to discipline for the following:

> Soliciting patronage other than by legitimate
> advertisement, or paying a commission or agreeing to
> pay a commission to any person or persons for soliciting
> or for business secured, or paying any gratuity to any
> person with intent to have such person aid in securing
> business, or other similar unprofessional conduct.

417.    Defendants' current regulations contain a similar prohibition and authorization to discipline:

> §13.202 Unprofessional Conduct.
>
> Unprofessional conduct includes the following:
>
> •    * * *
>
> Paying or extending an offer to pay or give to a person,
> agency or group a commission or a valuable
> consideration for the solicitation or procurement of
> clientele.

49 Pa. Code § 13.202(5).

418.    The original purpose of this prohibition was to stop the practice of a funeral director paying a commission or gratuity to the employees of a morgue,

hospital or home for the aged, for that employee to recommend or steer the bereaved family to a certain funeral establishment.  In some more extreme cases, the body was actually picked up by the funeral director without the family's permission. Once the body was in the possession of the funeral director, the family was often hesitant to change funeral directors.  The current problematic practice of this type of abuse is exemplified by certain conflicted funeral directors who serve as coroners and who are on the scene of death and, for their personal financial gain, attempt to steer consumers to utilize a funeral home owned by them. The legislative intent in using the term "commission" was <u>not</u> to prevent a funeral director from allowing an employee of the funeral home, who is also a licensed insurance agent, from receiving a commission for selling a pre-need insurance policy to fund a funeral, yet that is how the provisions are currently being interpreted.

419.   Both the statutory and regulatory prohibitions as now interpreted by Defendants subject Plaintiffs and others similarly situated to discipline or other sanction under circumstances whereby Plaintiffs would compensate either trained employees or affiliated insurance agents who, on behalf of Plaintiffs, communicate honest information with potential consumers relating to funeral merchandise or service arrangements on a pre-need basis.

420.   On April 14, 2005, in <u>Walker v.</u> Flitton, supra.,the United States District Court for the Middle District of Pennsylvania clearly and unequivocally concluded that it is a violation of the United States Constitution to prohibit the conduct set forth above.

421.   More specifically, the federal court made clear that employees and insurance agents affiliated with licensed funeral directors could indeed speak to and solicit potential business on behalf of their employer/principal funeral director.

422.   It is both illogical and inconceivable that the federal court, in ruling as it did, intended the absurd situation whereby, although these individuals, on behalf of a licensed funeral director, could speak to and solicit potential business, they could not be compensated in any manner by that funeral director.

423.   Accordingly, to the extent § 11(a)(8) and § 13.202(5) make illegal a funeral director's compensation for solicitation, those provisions of law must be deemed unconstitutional.

424.   Even at present, Defendants are attempting to formally promulgate a regulation which reinforces these two above-referenced prohibitions, thus making ripe Plaintiffs' request that such be declared unlawful.

425.   The two above-referenced provisions must be read in conjunction with the federal court decision in <u>Walker v. Flitton</u> such that trained employees and licensed insurance agents can be compensated when their interaction with

prospective customers is consistent with the dictates set forth by the federal court in <u>Walker v. Flitton</u>.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order as follows:

(a)   Declare that the provisions of the Funeral Director Law and Defendants' Regulations which prohibit licensed funeral directors from compensating trained employees and/or licensed insurance agents for soliciting prospective pre-need business is unconstitutional;

(b)   Enjoin Defendants from enforcing those provisions of the Funeral Director Law and Defendants' Regulations relating to compensating individuals for soliciting pre-need business;

(c)   Award to Plaintiffs their costs;

(d)   Award to Plaintiffs their reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

(e)   Enter such other relief as this Court deems just and reasonable.

## COUNT XIV
### All Plaintiffs v. Defendants
### (Request for Injunctive Relief and Continuing Jurisdiction)

426.   Paragraphs 1 through 425 hereof are incorporated herein by reference as if set forth in full.

427.   The conduct of Defendants and Defendants' predecessors demonstrates an intractable adherence to the goals and mission of PFDA and/or the interests of those funeral directors who seek to stymy competition; unreasonably

restrict vital information from coming into the hands of Pennsylvania consumers; and eliminate any person or entity from participating in the death care industry unless licensed as a funeral director and operating in a traditional but reactionary manner – all of which causes the Pennsylvania consumer more money and uninformed decisions.

428.   By way of example, despite the clear guidance and directive of the Federal Court in Walker v. Flitton, supra., these Defendants relentlessly continue to push regulations which, if adopted, will gut the heart and soul of the benefits achieved by consumers and others in the Federal Court litigation.

429.   These Defendants also seek to promulgate regulations which will create such a disincentive for funeral directors and others to contract for pre-need business, even though state law expressly provides for pre-need agreements; even though these Defendants had previously approved irrevocable pre-need agreements; and even though the Pennsylvania consumer will be harmed by the *de facto* elimination of pre-need agreements.

430.   The prosecuting arm of Defendants has recently made clear that it now intends to effectively put licensed, regulated crematories out of business.

431.   By way of example, the prosecutorial division has rendered its opinion that crematories may not advertise their services in Pennsylvania and crematories may not contract directly with Pennsylvania consumers even under

circumstances where that consumer contracts with the funeral director for all goods and services but for the act of cremation.

432.   Although changes in the law have occurred over the last five or six decades which have rendered many of the current statutory and regulatory requirements of Defendants no longer valid, these Defendants have failed to act so as to conform the Funeral Director Law to state and federal judicial rulings.

433.   Because of the ongoing nature of Defendants' actions, and given Defendants' recent actions relating to their refusal to adhere to the dictates of the Federal Decision of Walker v. Flitton, supra. and Bean v. Commonwealth, supra., it is respectfully alleged that equitable relief and continuing Federal Court jurisdiction is necessary for the purpose of overseeing the prospective conduct of these Defendants.

434.   Plaintiffs and those situated similarly to Plaintiffs should not be required to undergo quasi penal prosecutions in order to test new, different and untenable interpretations of Defendants and PFDA.

435.   Plaintiffs and those situated similarly to Plaintiffs should not be required to guess what the opinion or interpretation of Defendants is at a particular point in time, thus subjecting themselves to uncertainty, likelihood of quasi penal prosecution; and loss of valuable liberty or property interests.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request this

Honorable Court to enter an Order as follows:

(a) Retain equitable and supervisory jurisdiction over this matter and Defendants until the Court is assured that Defendants will not proliferate their unconstitutional, arbitrary and unreasonable conduct;

(b) Award to Plaintiffs their costs;

(c) Award to Plaintiffs their reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

(d) Enter such other relief as this Court deems just and reasonable.


Respectfully submitted,


JAMES, SMITH, DIETTERICK & CONNELLY, LLP

POST & SCHELL, P.C.


/s/ Gary L. James
Gary L. James, Esquire
Attorney ID # 27752
glj@jsdc.com
134 Sipe Avenue
Hummelstown, PA  17036-9137
(717) 533-3280

/s/ James J. Kutz
James J. Kutz, Esquire
Attorney ID #21589
jkutz@postschell.com
Barbara A. Zemlock, Esquire
Attorney ID #58891
bzemlock@postschell.com
17 North Second Street, 12th Floor
Harrisburg, PA  17101
(717) 731-1970


Date:  May 20, 2008