# EXHIBIT "2"

HOUSE BILL 2872 P.N. 4354

PRINTER'S NO. 4354

THE GENERAL ASSEMBLY OF PENNSYLVANIA

HOUSE BILL
No. 2872 Session of 2002

INTRODUCED BY STETLER, M. COHEN, FRANKEL, JOSEPHS, LEDERER,
MELIO, PISTELLA, ROONEY, RUBLEY, SAYLOR, WASHINGTON AND
YOUNGBLOOD, OCTOBER 1, 2002

REFERRED TO COMMITTEE ON PROFESSIONAL LICENSURE, OCTOBER 1, 2002

AN ACT

1  Providing for the protection of purchasers of funeral services
2      and goods by requiring the examination, licensure and
3      registration of persons who offer funeral goods and services
4      to the public; establishing and empowering the State Board of
5      Funeral Services in the Department of State to regulate
6      funeral directors, certain crematory operators, independent
7      providers, preneed funeral sales contractors, for-profit
8      cremation societies and for-profit memorial societies selling
9      funeral goods and services; providing for penalties; and
10     making a repeal.

11                   TABLE OF CONTENTS
12  Chapter 1.  Preliminary Provisions
13  Section 101.  Short title.
14  Section 102.  Definitions.
15  Chapter 3.  Licenses and Registrations
16  Section 301.  Classes of licenses, certificates and
17              registrations.
18  Section 302.  Obtaining licenses, certificates and
19              registrations.
20  Section 303.  Funeral director and funeral supervisor license.
21  Section 304.  Funeral business license.

1   Section 305.   Funeral facility license and limited funeral
2                      facility license.
3   Section 306.   Certificate of authority to sell preneed funeral
4                      contracts.
5   Section 307.   Student trainee and resident intern registration.
6   Section 308.   Preceptor registration.
7   Section 309.   Examinations.
8   Chapter 5.   License and Registration Administrative Provisions
9   Section 501.   Issuance of licenses, certificates and
10                     registration cards.
11  Section 502.   Licenses under prior laws and from other states.
12  Section 503.   Expiration of licenses and renewal.
13  Section 504.   Refusal, suspension and revocation.
14  Section 505.   Unfair methods.
15  Section 506.   Unfair claim settlement practices.
16  Section 507.   Procedure, hearings, appearances and production of
17                     books and service process.
18  Chapter 7.   Business Operations Requirements
19  Section 701.   Practice without a license, certificate or
20                     registration; exceptions.
21  Section 702.   What constitutes practice.
22  Section 703.   Conduct of licensed funeral business.
23  Section 704.   Preparation room restrictions.
24  Section 705.   Food and beverage restrictions.
25  Chapter 9.   Preneed Funeral Contracts
26  Section 901.   Disposition of proceeds received on contracts.
27  Section 902.   Cancellation of preneed funeral contracts.
28  Section 903.   Payment of funds upon death of named beneficiary.
29  Section 904.   Annual report.
30  Chapter 11.   Consumer Protection Trust Account

20020H2872B4354                    - 2 -

1   Section 1101.  Preneed Funeral Contract Consumer Protection
2                  Trust Account.
3   Section 1102.  Delinquency proceedings.
4   Section 1103.  Other proceedings.
5   Section 1104.  Change in fee.
6   Chapter 13.  Cremation
7   Section 1301.  Cremation.
8   Section 1302.  Unclaimed remains.
9   Chapter 15.  Administration of Act
10  Section 1501.  State Board of Funeral Services.
11  Section 1502.  Responsibility of board.
12  Section 1503.  Public information materials.
13  Section 1504.  Inspectors.
14  Section 1505.  Budget report.
15  Section 1506.  Newsletter.
16  Section 1507.  Change of ownership notification.
17  Section 1508.  Fees imposed.
18  Section 1509.  Disposition of fees.
19  Chapter 17.  Enforcement
20  Section 1701.  Penalties.
21  Chapter 19.  Miscellaneous Provisions
22  Section 1901.  Severability.
23  Section 1902.  Existing rules and regulations.
24  Section 1903.  Repeal.
25  Section 1904.  Existing proceedings.
26  Section 1905.  Offenses under prior law.
27  Section 1906.  Existing preneed rights and obligations.
28  Section 1907.  Effective date.
29     The General Assembly of the Commonwealth of Pennsylvania
30  hereby enacts as follows:

20020H2872B4354                    - 3 -

# EXHIBIT "3"



# PENNSYLVANIA
# FUNERAL DIRECTORS
# ASSOCIATION

July 18, 2000

Letter to members regarding PFDA Action Fund

Dear PFDA Member:

The battle to protect the value of a funeral director's license is continuing in the Pennsylvania court system as we work to prohibit sales of pre-need contracts by unlicensed individuals.

To sustain this critical effort, there is an urgent need to replenish the PFDA Funeral Service Action Fund (FSAF) that pays legal fees and costs related directly to the defense of vital matters like this.

These fees have been averaging about $8,000 a month. We expect that this case could take two to five years to resolve ultimately and may be considered by the Pennsylvania Supreme Court.

This effort must be sustained. Unless we vigorously defend our position, we invite new attacks on the traditional relationships between funeral directors and the families they serve.

This fund has been used to aid local funeral director associations with regional issues and to help protect the future of funeral service wherever it is challenged. Unlike our political action (PAC) funds, the FSAF can accept corporate contributions and cash.

Your financial support of the PFDA action fund will help continue the battle to protect the value of your funeral director's license and those who will follow you in funeral service. Please make your check out to PFDA(FSAF) and send it to the PFDA office address.

We will issue updates about this case as it progresses. We hope we can count on your support today for the value of your license tomorrow.

Sincerely,

Martin R. Brown
President

Administrators of
THE PENNSYLVANIA FUNERAL TRUST', PENNSYLVANIA FUNERAL MERCHANDISE TRUST, PENNSYLVANIA FUNERAL PLAN
7441 Allentown Blvd., Harrisburg, PA 17112 . Telephone (800) 692-8088 • (717) 545-7215 • www.PFDA.org



PENNSYLVANIA FUNERAL DIRECTORS

A  S  S  O  C  I  A  T  I  O  N

Dear Member,

The battle to protect the integrity and value of a funeral directors license is underway in Commonwealth Court Harrisburg. Depending on the outcome, anyone with an insurance license alone could sell pre-need.

Your association is the ONLY organization fighting to protect the interests of funeral directors. This is a contest for high stakes, and the costs are high as well.

Opponents of PFDA's position recently filed a $5,000,000 suit against the association, its officers and the legal counsel of the association. While we believe this is a groundless attempt to delay and deter us, resolving it will require additional resources.

Even before this action, legal fees of supporting the position of the State Board against unlicensed pre-need sales were running about $8,000 per month. This money came from the Funeral Service Action Fund (FSAF), which has hired special legal counsel.

Frankly, no one is sure how long this legal battle will last and how much it will cost. We are sure that we are on the last "thin blue line" of defense to stave off major deterioration of the value of your license.

If we don't fight now, we invite more devaluation of a funeral directors license. No one else will do it for us, and there are many other interests who would like to carve out sections of a funeral director's business. They're not going away.

There will be "no tomorrow" if funeral service loses this challenge. The best "damage control" is to prevent it before it happens, and the battle is underway NOW.

FSAF contributions to support our legal battles can be made with personal checks or corporate checks can be accepted.

We need your financial help TODAY to keep our litigation in full-swing. If you want more information, get in touch with me personally. If you value your license, please send a check, payable to PFDA/FSAF.

Sincerely,

Martin K. Brown
PFDA President

744 Allentown Blvd., Harrisburg, PA 17112 * (717) 545-7215 * 800-692-6068

Brown 0020

00131



**PENNSYLVANIA FUNERAL DIRECTORS**

**P F D A**

**A S S O C I A T I O N**

November 30, 2000

Dear PFDA Member:

The battle that's going on right now in Commonwealth Court in Harrisburg could mean we will be competing for pre-need sales with door-to-door hucksters, telemarketing "boiler rooms," aluminum siding salesmen, school teachers working at summer vacation jobs, and anyone else who wants to sell it.

Right now, Pennsylvania's Funeral Director Law says that only funeral directors can sell pre-need. In April, the State Board found that a Uniontown funeral director was guilty of unprofessional conduct and of violating the Funeral Director Law by assisting two representatives of the Commonwealth Funeral Consultants in the unlicensed practice of funeral directing.

But the state board's decision is being challenged in an appeal underway now to the Commonwealth Court.

The Pennsylvania Cemetery and Funeral Directors' Association and the Catholic Family Security Association (CFSA) BOTH filed "amicus curiae" briefs in support of Andrew D. Ferguson III and his lawsuit challenging the State Board. CFSA is an insurance agency and wholly owned subsidiary of the Catholic Cemeteries Association.

That tells you who is already lined up AGAINST funeral directors on this issue. They have deep pockets and they know how high the stakes are.

You can do two things. You can wring your hands and worry, OR you can take out your checkbook and support the Funeral Service Action Fund (FSAF) which finances PFDA's special legal activities. PFDA is the ONLY group that has hired legal counsel *in support of the position of the State Board in this case.*

Brown 0016

In other words, FSAF is on the last line of defense against a court interpretation that will not just put the "camel's nose under the tent." It will fling wide open the gates to the sales territory of funeral directors, and YOUR pre-need business could be fatally trampled in the stampede.

Send your check in support of the Funeral Service Action Fund to PFDA TODAY!

Sincerely,

PENNSYLVANIA FUNERAL DIRECTORS ASSOCIATION

Marty R. Brown
President

John J. Peters
District 5 Governor

**P.S. Contributions to the FSAF can be made in the form of cash, any form of check or by credit card.**

Brown 0017



PENNSYLVANIA FUNERAL DIRECTORS

A  S  S  O  C  I  A  T  I  O  N

# <u>URGENT</u> MEMORANDUM

TO:          ALL PFDA MEMBERS

FROM:        MARTIN BROWN, PRESIDENT
             PENNSYLVANIA FUNERAL DIRECTORS
             ASSOCIATION

DATE:        SEPTEMBER 26, 2000

SUBJECT:     THE CURRENT LAW REGARDING PRE-NEED
             SALES AND MARKETING

I believe that all licensed Pennsylvania funeral directors should known the facts about what is happening in our state regarding unlicensed pre-need sales practices.

The law firm of Eckert, Seamans, Cherin & Mellott, LLC has written the enclosed letter for the Pennsylvania Funeral Directors Association (PFDA), providing us the status of Pennsylvania law regarding pre-need selling and marketing by persons not licensed as funeral directors. I strongly urge you to read this letter so that you can protect your professional license.

Also enclosed is an Indemnification Agreement drafted by the same law firm. If you are currently involved or planning to get involved in pre-need sales and marketing activities with a pre-need provider who may not be in compliance with the current interpretation of the funeral director law, I would suggest you have that company sign this Indemnification Agreement. You want to protect yourself and your business.

If you have any questions or comments regarding this memorandum, please write or call the PFDA Office. I appreciate the time you have taken to review this important matter.



PENNSYLVANIA FUNERAL DIRECTORS

A S S O C I A T I O N

# April 2002 District Meetings

*If you value your license, you will attend!*

## Dates and Locations

**April 2 – DuBois Area**
Holiday Inn – DuBois
US 219 & I-80
DuBois, PA
Phone: (814) 371-5100

**April 3 – Mercer Area**
Mercer Howard Johnson Inn
835 Perry Highway
Mercer, PA
Phone: (724) 748-3030

**April 4 – Pittsburgh/Monroeville Area**
Radisson Hotel Green Tree
101 Radisson Drive
Pittsburgh, PA 15205
Phone: (412) 922-8400

**April 8 – Valley Forge Area**
Radisson Valley Forge Hotel
1160 First Avenue
King of Prussia, PA
Phone: (610) 337-2000

**April 9 – Allentown/Bethlehem Area**
Radisson Hotel Bethlehem
437 Main Street
Bethlehem, PA
Phone: (610) 625-5000

**April 10 – Wilkes-Barre Area**
Best Western Genetti Hotel
77 E. Market Street
Wilkes-Barre, PA
Phone: (570) 823-6152

**April 11 – Harrisburg**
PFDA Headquarters
(Luzerne Conference Room)
7441 Allentown Blvd.
Harrisburg, PA
Phone: (717) 545-7215

**Meeting Time: 4:00 p.m. – 6:00 p.m.**
*The meetings are FREE!*
*Call (717) 545-7215 to pre-register or fill out*
*the enclosed form.*

---

* Find out how PFDA is working on electronic death certificate filing

  ■ Participate in a program remembering Flight 93 victims

  ■ Come hear about the cremation situation in Georgia

*See other side for more details...*

# Meeting Agenda and Issues to be Discussed

.roductions

. Consumer Final Rights Alliance -- Who are they and what are they trying to do?
  - Many of you have been receiving letters discussing the Funeral Director Law and the State Board of . Funeral Directors from former Lieutenant Governor Mark Single.
  - *Find out how this vital issue concerns your license!*

3. Current Litigation and Potential Effects on your License
  - Cemeteries and others selling cremation services
  - Funeral homes and others using unlicensed employees to sell pre-need
  - Third party sellers suing PFDA
  - *All are related to the direct attack on the funeral director license.*

4. Consumers can Prearrange Direct through AFSCME
  - The American Federation of State and County Municipal Employees (AFSCME) is a union endorsed pre-need program where consumers can prearrange their own funerals and write directly with the insurance company and casket manufacturers.
  - *Come hear about who the players are!*

5. Filing Death Certificates Electronically
  - PFDA has been actively discussing the possibility of electronic death certificate filing with the Department of Public Health.
  - *Find out how we can quicken this process and help us improve our proposals to the Department of Public Health.*

6. Flight 93 Memorial (Hearts of Steel)
  - We need your commitment! Find out how to help participate in raising money for the memorial.
  - A videotape regarding the fundraiser will be shown.
  - *Come receive your promotional materials and ad slicks at the meetings!*

7. Proposed Pre-need Regulations
  - PFDA will be attending a pre-need work session, which is scheduled for March 5, 2002. At the session, the Board will be discussing ideas for new pre-need regulations.
  - *Come to the meetings and receive a copy of the first draft of pre-need regulations.*

8. Cremation Situation in Georgia
  - PFDA President Shelby Ferguson II, John Eirkson, and Kathleen Ryan traveled to Atlanta to meet with Georgia funeral directors and learn how the Georgia crematory situation can be prevented in other states.
  - *Come hear about new PA legislation that may go into effect as a result of this situation.*

9. Questions and Answers at the end

*Make sure you don't miss the Spring PFDA District Meetings.*

## This is IMPORTANT STUFF!

*Come join us at a location near you.*

# EXHIBIT "4"



# The Pennsylvania Funeral Merchandise Trust

### A Preneed Merchandise Trust...That Gives You Money Now!!

Today's preneed market is more challenging than ever. Everyone selling merchandise needs financial resources UPFRONT, in order to compete.

That's why PFDA created the Pennsylvania Funeral Merchandise Trust. After careful legal research, a method has been established that allows a separate merchandising corporation to put 70 percent of the retail price of the merchandise in trust under the terms of the Pennsylvania Future Interment Act – and makes 30 percent available to MEET THE COMPETITION with other merchandising companies.

The Pennsylvania Merchandise Trust is designed to be used by ANY SIZE operation.

It doesn't require an insurance license,

It Does create new opportunities for funeral service.

It Does create cash flow to advance preneed sales.

Don't cut back on the preneed operations that are the future of your business.

Protect the margins on merchandise that make up the largest part of a funeral transaction.

If you would like more information on the Pennsylvania Funeral Trust, or the Pennsylvania Merchandise Trust, contact: M. Kenneth Baylor at 1-800-692-6068.

▶ Members Area
▶ Return to Home Page

PENNSYLVANIA FUNERAL DIRECTORS ASSOCIATION

MODEL INCORPORATION KIT

FOR

PENNSYLVANIA MERCHANDISE CORPORATIONS

October, 1996

The Pennsylvania Funeral Directors Association Model Incorporation Kit for Pennsylvania Merchandise corporations is intended to illustrate to members of the Association some of the current forms of the basic documentation necessary to establish a Pennsylvania Merchandise corporation. Incorporating, like embalming, is not a "do it yourself" thing.  Careful consideration must be given to a number of legal and tax issues, which only attorneys and accountants are competent to handle.  It is therefore, necessary for members to consult with their attorneys and accountants in the incorporation of their merchandise business.

# EXHIBIT "5"

COMMONWEALTH OF PENNSYLVANIA

DEPARTMENT OF STATE

BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS

F I N A L   M I N U T E S

BOARD MEETING OF:

STATE BOARD OF FUNERAL DIRECTORS

APR 0 9 1998

TIME:  9:33 A.M.

BOARD ROOM A

THIRD FLOOR

116 PINE STREET

HARRISBURG, PENNSYLVANIA

MARCH 4, 1998

*** 

## STATE BOARD OF FUNERAL DIRECTORS

Board Members:

Leandro N. Angelone, Chairman, Professional Member
Neil W. Regan, Vice Chairman, Professional Member
(Jodi L. Flitton, Esquire, Bureau of Consumer Protection-
  Not Present)
(Gregory K. Jordan, Public Member - Not Present)
Janice H. Mannal, Secretary, Professional Member
Gary L. Morrison, Public Member
James O. Pinkerton, Professional Member
Anthony A. Sanvito, Professional Member
Dorothy M. Childress, Commissioner
    Bureau of Professional and Occupational Affairs
                                                 ***

Bureau Personnel:

John T. Henderson, Esquire
Board Counsel

Cheryl B. Lyne
Board Administrator

Kathleen K. Ryan, Esquire
Board Prosecutor

Peter Kovach, Esquire
Board Prosecutor

Also Present:

Joel Harpel
Summit Bank

Steven A. Stine, Esquire

Donald J. Murphy, Esquire

Constantine Vesouliatis

Dimetrius Herron
Herron Funeral Home

John Herron

Paula Herron

Marc Moyer, Esquire

3

Also Present, Continued:

Edward Finkelstein, Esquire

Stuart A. Sacks, Esquire

Phil Christian
Commonwealth Partnership Trust

4

1                                 ***

2              STATE BOARD OF FUNERAL DIRECTORS

3                  Meeting of March 4, 1998

4                                 ***

5          The regularly scheduled meeting of the Pennsylvania

6      State Board of Funeral Directors was held on Wednesday,

7      March 4, 1998.  The meeting was called to order at 9:33

8      a.m. by Leandro N. Angelone, Chairman.  Following a roll

9      call, it was noted that a quorum was present to conduct the

10     business of the Board.

11                                ***

12     [Guests introduced themselves.]

13                                ***

14     Approval of Minutes from the February 4, 1998 Meeting

15     MR. PINKERTON:

16          I move to approve the minutes of February 4, 1998.

17     MR. REGAN:

18          Second.

19     MR. ANGELONE:

20          Roll call vote, please.

21          Leandro N. Angelone, aye; Commissioner Childress,

22          aye; Neil W. Regan, aye; Gary L. Morrison, aye;

23          Anthony A. Sanvito, abstain; James O. Pinkerton,

5

1           aye; Janice H. Mannal, abstain.

2       [The motion was carried; Anthony A. Sanvito and Janice H.

3       Mannal abstained from voting in the motion.]

4                                       ***


5       [Pursuant to Section 8 (a) (5) of the Sunshine Act, the

6       Board entered Executive Session with John T. Henderson,

7       Board Counsel, at 9:37 a.m. for the purpose of conducting

8       quasi-judicial deliberations.   The Board returned to open

9       session at 11:12 a.m.]

10                                      ***

11      MR. HENDERSON:

12              We   are   reconvened  after  an   extended  executive

13              session  which  was  held  in  order  to  have  quasi-

14              judicial  discussions  regarding  a  variety  of

15              matters.  The  first  matter  the  Board  will  vote on

16              will  be  the  Notice  of  Withdrawal  and  Respondent's

17              Motion  of  Withdrawal  the  Order  to  Show  Cause  with

18              Prejudice  in  the  matter  of  Dale A. Auer case, Dkt.

19              No.  0111-48-97,  File  No.  97-48-00660,  and  also  the

20              companion  case  consolidated  with  the  case,

21              Commonwealth  of  Pennsylvania,  Bureau  of

22              Professional and Occupational Affairs v. Cremation

23              Society of Pennsylvania, Dkt. No. 0086-48-97, File

24              No.  96-48-01121.  Is  there  a  motion  regarding  these

15

1          First, the request was to change, as

2          from the letter of February 6, was to l

3          of a fictitious name, which I appraised the lawyer,

4          Mr. Heim, by phone call, fictitious names were not

5          permitted.  He followed up with his letter of

6          February 18, which you have, which stated that he

7          is withdrawing the request, but would like to

8          change the corporate name from L. E. Diehl Funeral

9          Home to L. E. Diehl Funeral Home and Cremation

10         Center, Inc., and talks about his concern regarding

11         Subsection 8.  Then this follow-up letter of the

12         20th, that actually wants to change it to Diehl.

13         He wants to also drop the L.E., and change it to

14         Diehl Funeral Home and Cremation Center.  I believe

15         its concern under Subsection 8 is that, as you

16         know, a restricted business corporation may provide

17         only funeral services and no other service.

18         Cremation has been viewed by this Board to be not

19         the providing of a funeral service.  Therefore, are

20         we permitting, through the use of a name in a

21         restricted business corporation, for them to

22         advertise cremation services, are they violating

23         their corporate charter?

24    MR. PINKERTON:

25         When you say it has been viewed by the Board as not

1    cremation is included as a part of it.  So where

2    does the federal rule and the state rule overlap or

3    bifurcate?

4  MR. HENDERSON:

5    Section 13(c) addresses that to an extent by saying

6    first that no person shall practice as a funeral

7    director unless he holds a valid license.  Then it

8    goes on to say that provision does not apply to the

9    following persons -- not activities -- persons when

10    acting under the direction of a licensed funeral

11    director.  Then it says employees of a cemetery or

12    crematory.

13  MR. PINKERTON:

14    I understand that.

15  MR. HENDERSON:

16    Right.  So one could argue that there is still an

17    involvement there and you are only taking out of

18    the licensure requirements the employees, but the

19    activity itself must still have the involvement of

20    a funeral director.  Traditionally, this Board has

21    not taken this approach.  They have sort of had a

22    hands-off attitude toward it.

23  MR. MURPHY:

24    I have two problems, and both of them, to me, seem

25    fairly clear.  Number one, you have the name

# EXHIBIT "6"

# I'm Glad You Asked!

## Your Questions Will Be Answered Here.



Craig Stewart, a Reading/Berks native, is a licensed Funeral Director and Certified Preplanning Consultant, a professional designation endorsed by the National Funeral Director's Association.

**CRAIG L. STEWART**
Licensed Funeral Director
Certified Preplanning Consultant

**Q.** I already have a funeral prearrangement plan made with another funeral home. Can I transfer my plan to your funeral home?

**A.** YES! Any individual who desires to transfer their funeral prearrangements from any other funeral home to ours is welcome! We gladly accept all plans and will honor all the benefits of your original written agreement. We want you to be entirely satisfied. Meeting your needs and exceeding your expectations is our highest goal. Simply give us a call anytime to get things started.

I'm also available, at no charge, for presentations on a variety of funeral related topics at your group meeting location.

People can greatly benefit through open, honest discussions concerning the process of death, dying, funeralization, and memorialization. Many people have no knowledge of funeral practices, choices, options, procedures, or costs, prior to the time of need. An informative and educational tour can be quite helpful to them.

For instance, are you aware of all the specific details which are required for each and every funeral? Do you know about funeral costs and procedures? Are you aware of the many informative books and pamphlets available on grief and bereavement issues?

A tour might satisfy your natural curiosity about the funeral process. You'll see, first hand, how funeral directors meet the needs of individual families with the professional expertise our community deserves and has come to expect.

To arrange a tour or presentation, simply give me a call in advance so I can personally spend this time with you.

My services are available through the following, family-owned firms. Clip and send to me at one of the following locations for a no fee, no obligation consultation.

☐ Sanders Funeral Home and Cremation Services, Inc.
1501 N. 11th St., Reading, PA 19604/610-372-1624
*Frederick Sanders, Supervisor*

☐ Lutz Funeral Home, Inc., 2100 Perkiomen Ave.,
Mt. Penn, PA 19606/610-376-7121
*John Lutz, Supervisor*

Name:_____

Address:_____

Phone:_____

If you prefer, feel free to contact me directly at 610-796-7551.

SUNDAY NEWS, LANCASTER, PA.

**B4**   AUGUST 17, 2003



*One of the
most important
services
we provide
is free.*

## Information

If you have a question about any aspect of
funerals; from cremation, to costs, to
transferring existing pre-arrangements from
another funeral home, just call.

We'll take the time to answer those questions
at no cost or obligation to you.

## CHARLES F. SNYDER
### FUNERAL HOME INC.

| | | |
|---|---|---|
| 414 E. King Street | CHARLES F SNYDER JR. | 441 N. George Street |
| LANCASTER | FUNERAL HOME & CHAPEL INC. | MILLERSVILLE |
| 393-9661 | 3110 Lititz Pike | 872-5041 |
| | (just north of Lancaster on Rt. 501) | |
| Charles F. Snyder, Jr. | LANCASTER / LITITZ | Michele L. Rehman |
| Supervisor | 560-5100 or 627-8668 | Supervisor |
| | Susan A. Schneider, Supervisor | |

# EXHIBIT "7"



ARTHUR COCCODRILLI, CHAIRMAN
ALVIN C. BUSH, VICE CHAIRMAN
DAVID J. DEVRIES, ESQ.
JOHN F. MIZNER, ESQ.
KIM KAUFMAN, EXECUTIVE DIRECTOR
LESLIE A. LEWIS JOHNSON, CHIEF COUNSEL

PHONE: (717) 783-5417
FAX: (717) 783-2664
irrc@irrc.state.pa.us .
http://www.irrc.state.pa.us

# INDEPENDENT REGULATORY REVIEW COMMISSION
### 333 MARKET STREET, 14TH FLOOR, HARRISBURG, PA 17101

October 24, 2007

Anthony Scarantino, Chairman
State Board of Funeral Directors
2601 North 3rd Street
Harrisburg, PA 17110

Re: Regulation #16A-4815 (IRRC #2627)
    State Board of Funeral Directors
    Preneed Funeral Arrangements

Dear Chairman Scarantino:

Enclosed are the Commission's comments for consideration when you prepare the final version of this regulation. These comments are not a formal approval or disapproval of the regulation. However, they specify the regulatory review criteria that have not been met.

The comments will be available on our website at www.irrc.state.pa.us. If you would like to discuss them, please contact me.

Sincerely,

Kim Kaufman
Executive Director
wbg
Enclosure
cc: Honorable Robert M. Tomlinson, Chairman, Senate Consumer Protection and Professional
    Licensure Committee
    Honorable Lisa M. Boscola, Minority Chairman, Senate Consumer Protection and
    Professional Licensure Committee
    Honorable P. Michael Sturla, Majority Chairman, House Professional Licensure Committee
    Honorable William F. Adolph, Jr., Minority Chairman, House Professional Licensure
    Committee
    Honorable Pedro A. Cortes, Secretary, Department of State

## Comments of the Independent Regulatory Review Commission

on

## State Board of Funeral Directors Regulation #16A-4815 (IRRC #2627)

### Preneed Funeral Arrangements

### October 24, 2007

We submit for your consideration the following comments on the proposed rulemaking published in the August 25, 2007 *Pennsylvania Bulletin*. Our comments are based on criteria in Section 5.2 of the Regulatory Review Act (71 P.S. § 745.5b). Section 5.1(a) of the Regulatory Review Act (71 P.S. § 745.5a(a)) directs the State Board of Funeral Directors (Board) to respond to all comments received from us or any other source.

**1. Section 13.1. Definitions. - Reasonableness; Consistency with other regulations; Need; Clarity.**

*Preneed funeral contract --*

We have questions in two areas concerning this definition.

First, why does this definition only include the term "funeral entity"? In addition to "funeral entity," the term "licensed funeral director" is defined in Section 13.1 of the existing regulations. Why not include both "funeral entity" and "licensed funeral director" in the definition for preneed funeral contract?

Second, what is the intent of including the phrase "whether or not the funeral entity receives preneed funeral funds"? Why would a business enter into such a contract without receiving funds?

Furthermore, a significant focus of both Section 13(c) of the Funeral Director Law (Law) (63 P.S. § 479.13(c)) and this proposed regulation is the money received for such contracts. What type of review or oversight would the Board exercise in a situation where there is no monetary transaction? Unless the Board can justify the inclusion of this phrase, it should be deleted from the final-form regulation.

*Preneed funeral funds --*

In Paragraph (i) of this definition, what is the purpose of the last phrase, "whether or not a contract to provide specified funeral services or merchandise exists"? How could the Board verify that money held by a licensee or funeral entity was related to "preneed" monies if no contract existed? If a customer has not finalized her or his decisions concerning which services to select but gives money to a funeral director or funeral entity, is the funeral director or entity required to document the transaction?

Finally, Paragraphs (iii) and (iv) may be inconsistent or incompatible with the proposed regulation since they involve insurance policies and not just contracts. An assignment of an insurance policy may exist with or without a preneed contract. If there is no contract, the transfer clause required by Section 13.228(a) will not apply. If an insurance policy includes a provision requiring assignment to a particular funeral entity, the Board needs to review and explain how it will regulate a change in the policy. The Board may need to develop separate provisions to address insurance policies.

**2. Section 13.224. Depositing and reporting preneed funeral funds. -- Fiscal impact; Reasonableness; Consistency with the statute and regulations; Implementation procedure; Feasibility; Clarity.**

Subsection (a) contains new language. For example, there is a new rule that all the preneed funds received by the funeral director or entity must be deposited within ten days of receipt. We identified questions in two areas.

First, why is the ten-day rule necessary? Is there any record or history of problems with the timeliness of deposits? The Board should explain the need for the new language in this subsection or delete it from the final-form regulation.

Second, it is unclear if Subsection (a) applies to a funeral entity that receives a preneed fund transfer from another entity at the request of a customer. If this subsection does apply to such a transfer, what happens to any accumulated earnings or interest? The earnings or interest are not mentioned in the definition of "preneed funeral fund." However, Section 13.228(b) in this proposed regulation specifically requires the transfer of "accumulated interest and earnings" with preneed funeral funds. If the first funeral entity must transfer both the preneed funds (the original money given by the customer) and any accumulated interest and earnings, then the receiving entity should be required by the final-form regulation to deposit the interest and earnings with the customer's preneed funeral funds.

Subsection (b) mandates quarterly reporting of the information described in Subsection (c). There are four concerns.

First, why is mandated reporting necessary? What will the Board do with this information? The Board needs to explain how it plans to review and utilize these reports.

Next, what will be the costs for the Board in processing and reviewing the reports, and for funeral entities or funeral directors to transmit or submit the reports? Does the Board have adequate staff to process and review these records on a regular and timely basis? Commentators report that there are thousands of preneed contracts across the state. The Board should examine these costs and provide cost estimates when it submits the final-form regulation. If the Board opts to retain the reporting requirement, the costs for both the Board and the regulated community may be reduced significantly by requiring annual or biennial reporting, rather than quarterly.

Third, the Preamble indicates that changes are necessary because the existing provisions "do not address the transferability of funds when a funeral director other than the contracting funeral director provides funeral services and merchandise or the ability of a customer to change funeral

2

directors or transfer funds in the event of a change of funeral directors." However, quarterly or periodic reporting is not necessary to monitor these transactions. The existing regulations require a licensee to submit a report every time the funeral director enters into a preneed contract or provides the services required by a preneed contract. The final-form regulation could mirror the current rules by requiring reports whenever there is a change or an end to the contract, a switch to another funeral entity or funeral director, or a transfer of funds.

Fourth, what is the definition of the term "rollover" in Subsection (b)? As noted by the House Professional Licensure Committee (House Committee) on October 3, 2007, the final-form regulation should include a definition for this term. In addition, the intent of the last sentence of Subsection (b) is unclear. The need for this sentence should be clarified in the final-form regulation.

Regarding Subsection (c)(2), please explain the need for deleting the phrase "100% of the money received by the funeral director on account of the contract had been deposited." This language is consistent with Section 13(c) of the Law and should be retained.

### 3. Section 13.227. Limitations on preneed funeral contracts. - Fiscal impact; Consistency with the statute; Reasonableness; Clarity.

Commentators for the Pennsylvania Cemetery, Cremation and Funeral Association and the Funeral Consumers Alliance of Greater Philadelphia expressed concerns with provisions in this section. We share three concerns.

First, the new language in Subsection (b) reads:

> A funeral director or funeral entity may not charge or collect any fees under a preneed funeral contract for funeral goods and services that exceed the fees for the goods and services as set forth on the funeral entity's general price list **at the time** the goods or services are provided. [Emphasis added.]

This provision could possibly negate a benefit of preneed contracts. Price lists may be guaranteed in preneed contracts at the time when the contracts are signed. The consumer gets the benefit of the prices available at the time of the contract, and the funeral entity gets the benefit of accepting funds before they are needed. With promulgation of Subsection (b), would funeral entities be able to increase costs charged to customers based on price lists at the time of service? What happens if the preneed funds in an account do not cover the price list at the time of service? What impact would this provision have on irrevocable contracts? Should the subsection state "at the time the contract is initiated"? The Board must explain the need for this subsection or delete it from the final-form regulation.

Second, Subsection (b) refers to a "funeral entity's general price list." Is there any situation when a funeral director would maintain a "general price list"?

Third, we question the rationale and need for Subsection (c), which reads:

> A preneed funeral contract may not incorporate a contract for funeral merchandise entered into by a person or entity other than a funeral director.

3

The Law does not identify any restrictions on the source of the merchandise included in a funeral director's contract. In addition, it is our understanding that the National Funeral Directors Association recommends that "a funeral home should never refuse to service a family because they indicate that they will be using a third-party casket." This provision appears to limit the ability of a consumer to select from a variety of products. The Board should justify this provision or delete it from the final-form regulation.

## 4.  Section 13.228.  Transfer of a preneed funeral contract by customer. - Fiscal impact; Consistency with statute; Reasonableness; Feasibility; Clarity.

Pursuant to Subsection (a), every preneed contract initiated after the effective date of this regulation must expressly permit the customer to transfer the account and funds to another funeral director or funeral entity. The Preamble offers no explanation for this change beyond generic references to protection of consumers and updating regulations to match current practices in the profession.

The statute gives the Board the authority to adopt regulations. Section 16(a) of the Law (63 P.S. § 479.16(a)) reads:

> The board shall be charged with the enforcement of this act. It shall be empowered to formulate **necessary** rules and regulations not inconsistent with this act for the proper conduct of the business or profession of funeral directing and as may be deemed **necessary** or **proper** to **safeguard** the interests of the public and the standards of the profession. (Emphasis added.)

The Board has not demonstrated the need for this proposed regulation. Specifically, the Board has not explained how this proposed regulation will "safeguard the interests of the public." Additionally, the Board has disclosed no record indicating a high level of consumer complaints or significant harm to consumers related to preneed contracts. In the final-form regulation submittal, the Board should explain the need for this regulation, and how it will protect consumers.

In its comments, the House Committee expressed concerns with the impact of this regulation on the calculation of resources in determining eligibility for benefits from Social Security or Medical Assistance (MA) programs. The Board claims that customers will be able to set aside the preneed funds and avoid having them calculated as a resource because the account, money or trust remains "irrevocable." Subsection (b) directs the transfer of the preneed funds from one funeral entity to another at the direction of the customer. However, nothing in this section states that the funds are "irrevocable" or that none of the funds may be returned to the customer. In fact, the words "revocable," "irrevocable" or "irrevocability" do not appear in the proposed regulation or the Preamble. In the final-form regulation, the Board should clarify whether preneed funds would be irrevocable, and how the funds would be protected from classification as an asset for the purposes of Social Security or MA programs.

The provisions of this section are very clear that the current funeral entity must transfer all the preneed funds, interest and earnings to the new funeral entity as requested by the customer. However, there is nothing that directs the actions of the new entity or what it may do with the

4

funds. Nothing in the proposed regulation requires that the new funeral entity honor the terms and conditions of the original contract or that it use all the preneed funds, interest and earnings for funeral services. For example, what would prevent the new funeral entity from giving a portion of the funds to the customer and reducing the list of services? The Board should clarify how the new funeral entity must treat the original contract and the funds.

The Board should also respond to the questions raised by the House Committee as to whether the preneed funds can be irrevocable yet still transferable. There is also a concern with the Law. Section 13(c) of the Law includes the following sentence:

> … If any such licensed funeral entity shall accept any money for such contracts, he shall, forthwith, either deposit the same in an escrow account in, or transfer the same in trust to, a banking institution in this Commonwealth, conditioned upon its **withdrawal or disbursement only for the purposes for which such money was accepted**…. (Emphasis added.)

It is unclear how the proposed regulation is consistent with the Law since none of its provisions guarantee that the money will be used for the purposes for which it was accepted. These purposes are set forth in the original preneed contract. The final-form regulation should ensure that the purposes in the original contract are fulfilled.

In its comments, the House Committee also requested further information concerning regulations or laws in other states pertaining to the portability of preneed contracts. Portability is an important issue for both the House Committee and commentators. The difficult question appears to be providing for portability while simultaneously maintaining the irrevocability of preneed funds, especially for income and asset determinations in Social Security or MA programs.

If it was only a question of portability, it is available under the existing regulations. The Board submitted a copy of the Commonwealth Court decision *Bean v. Department of State, State Board of Funeral Directors* (855 A.2d 148, 2004) with this proposed regulation. The *Bean* decision reported that Board-approved contract forms allowed customers to select an irrevocable or revocable contract. With a revocable contract, the customer can transfer preneed funds at a later date. This is portability. If the Board believes these options are insufficient, then it could establish an additional option for these forms that is based on this section.

If the goal is to combine both portability and irrevocability, the Board needs to thoroughly review options that ensure irrevocability while allowing for consumer choice. This would allow the marketplace to provide what consumers want and need. The Board should investigate a variety of options to allow for portability when needed while also guaranteeing irrevocability of the funds and terms in the contract.

5. **Section 13.229. Sale or transfer of preneed funeral contracts or preneed funeral funds by funeral director. - Fiscal impact; Consistency with statute; Reasonableness; Feasibility; Clarity.**

Under Subsection (a), why is it necessary to notify each customer of a transfer within 30 days? The Board should explain the basis for the 30-day period or consider extending the time period.

5