# EXHIBIT "8"



James J. Kutz
Direct Dial: 717-612-6038
Fax Number: 717-731-1985
jkutz@postschell.com

December 5, 2005

*BY HAND DELIVERY*

Michelle T. Smey
Board Administrator
Department of State
2601 North Third Street
P.O. Box 2649
Harrisburg, PA  17105-2649

PENNSYLVANIA

PHILADELPHIA

PITTSBURGH

HARRISBURG

LANCASTER

ALLENTOWN

NEW JERSEY

PRINCETON

RE:    <u>Comments on Draft Regulations of State Board of Funeral
Directors Submitted on Behalf of Pennsylvania Cemetery &
Funeral Association</u>

Dear Ms. Smey:

On behalf of the Pennsylvania Cemetery & Funeral Association ("PCFA"), this is to provide written comments on the draft Regulations of the State Board of Funeral Directors (the "State Board") dealing with "pre-need activities by unlicensed employees..." as set forth in your cover letter of November 4, 2005.  First, I wish to thank you for the opportunity to submit these comments on behalf of PCFA.  PCFA is a statewide trade organization which I believe is unique in that its membership includes, among others, licensed funeral directors, cemeterians, licensed insurance agents, crematory operators, sellers of death industry merchandise subject to the Future Interment Law, and others who are not licensed funeral directors.  We feel this broad-based representation allows us to speak for the entire death care industry, a capability not available to any other statewide group.

Upon review of the draft Regulations, it appears, at first blush, that they are being proposed to purportedly address certain judicial decisions which bind the Board and, in particular, the decision of the Honorable John E. Jones, III that was rendered in the recent case of <u>Walker, et al. v. Flitton, et al.</u>, 364 F. Supp. 2d 503 (M.D. Pa. 2005).  As the Board should be fully aware, that detailed decision struck down Board resolutions and related interpretations which attempted to restrict unlicensed individuals in the pre-need market because they were violative of the First Amendment's commercial speech provision.  The Court did not write a summary opinion for its conclusion.  Rather, it tediously vetted the federal court record; applied those record references to the commercial speech prongs of analysis; noted the

Michelle T. Smey
December 5, 2005
Page 2

absence of <u>any</u> evidence of consumer harm; and thus directed the Board not to enforce its previously enacted resolution or any formative thereof because it was not justified under a First Amendment analysis; therefore, under principals of preemption, the federal law prohibited same.

Unfortunately, it appears that some, if not all, of the provisions of the draft Regulations not only fail to address the substantive <u>concerns</u> adjudicated by the federal court, most of those provisions appear to remain violative of the First Amendment rights of licensed funeral directors and their unlicensed employees and agents who seek to communicate honest and accurate information concerning pre-need. To be further candid, the "prohibition" portion of these draft regulations is so restrictive that no reasonable person would dare to utilize support personnel to communicate or interact with consumers as any fair reading thereof would allow this Board and its prosecutors to <u>continue to</u> prosecute individuals as if <u>Walker v. Flitton</u> had never been decided and rendered final and binding on this Board. Indeed, these draft Regulations reflect a selective and misleading use of passages from Judge Jones' 56-page Opinion, in that every reference to "no consumer harm", along with the Judge's conclusions as to why consumer harm did not exist, is ignored, without explanation. With respect, we do not believe that Judge Jones accepted jurisdiction and tirelessly searched the record in concluding that this Board was excessively interfering with the rights of individuals in the marketplace, only to have this Board propose Regulations which, by the time they are read and digested in their entirety, relegate the unlicensed support person to nothing more than the equivalent of an advertising "flyer" which is received in the mail every day by consumers along with tons of other advertising literature. Judge Jones painstakingly noted that the Board's restrictions likely harmed the consumer and others because of their excessive restriction which, by any other name, is anti-competitive and a quintessential example of protectionism. Admittedly, these Regulations allow unlicensed employees or agents to distribute one and only one general price list and it vaguely permits the employee or agent to "provide general assistance" but with no explanation as to what that "general assistance" may be comprised of. Apparently, the reason for that becomes evident in subsection (c) of the draft Regulation which deals with that which employees and agents are not permitted to do which, with respect, is a virtual total ban on communication with the customer or prospective customer. Perhaps the obvious rhetorical question to be asked in view of these draft Regulations is the following:

> What exactly is the unlicensed agent or employee permitted to say to a prospective customer other than here is a general price list of the only funeral director for whom I am allowed to speak and if you have any questions, I am not allowed to say anything?

Without attempting to be pejorative, that is precisely what these Regulations now call for.

Michelle T. Smey
December 5, 2005
Page 3

PCFA implores this Board to read that excerpt from Judge Jones' Opinion dealing with other states which permit unlicensed agents of funeral directors or third parties to sell pre-need plans. Indeed, noting that at least 34 states permit same, the Court goes on to note that "a search of case law in these states uncovered no examples of consumers being harmed from being solicited by unlicensed individuals...". More to that point, 34 other states permit unlicensed agents and employees to work on behalf of licensed funeral directors and it is indeed disturbing that this Board would continue to hold tight to a policy which restricts information, restricts employment, restricts the free exchange of communication; and restricts when there is no need, let alone a compelling need, to protect the consumer, given the fact that other portions of this draft Regulation require any contracts to ultimately be executed with the funeral director.

Beyond this, the "need" for these proposed Regulations becomes dubious in view of § 13(d), which permits funeral arrangements at-death to be made by any unlicensed member of the funeral home staff, without ratification for up to 48 hours – a period of time long enough to dictate, *de facto*, that all decision-making has taken place in the absence of the licensed funeral director. In short, there is no legitimate reason for this Board to make pre-need information, potential sales, and actual sales so difficult as to "cause" consumers to have no "time of death" plans until death itself occurs, at which time emotions are high and judgment affected.

Having stated the above, allow me to now discuss some of the more problematic provisions as follows.

The provisions which raise significant concerns are set forth in § 13.230(b) and (c) of the draft Regulations. The former section identifies those activities in which employees or agents not licensed under the Act may engage and the latter identifies those activities which an employee or agent not licensed under the Act may not perform, or in which they are otherwise restricted. In order to fully understand the constitutional flaw associated with these provisions, certain basic principles of law must be addressed.

First, in order for any governmental entity to restrict speech, a substantial governmental interest that the government seeks to protect must be implicated. It is clear that certain portions of the draft Regulations seek to prohibit employees or agents from fully communicating with pre-need customers. For example, subsection (c) provides, in relevant part, that:

> Employees or agents not licensed under the Act shall not:
>
> * * *
>
> (2)    Prepare work sheets, proposals or other presentations for funeral services.

Michelle T. Smey
December 5, 2005
Page 4

>           (3)     Engage in discussions or other communications with
>           consumers regarding the actual selection of funeral services and
>           merchandise incidental to such services.

* * *

These two provisions clearly seek to restrict an employee's or agent's communications with consumers.   Significantly, the federal court, in <u>Walker</u>, examined whether there is a substantial government interest in barring unlicensed individuals from interacting with consumers.  According to the Court:

> We fail to see, on the record before us, what substantial
> governmental interest exists relating to allowing only licensed
> funeral directors, rather than non-licensed insurance sales
> people who are employed by, or agents of those funeral
> directors, to interact with customers and disseminate price <u>and
> other information regarding pre-need services</u>.  Here, as the
> unlicensed Plaintiffs are trained, supervised, employed and
> directly controlled by a licensed funeral director, it appears that
> many of the Defendant's consumer concerns are overstated and
> thus misplaced.  Furthermore, because the law requires all pre-
> need contracts to be signed by a funeral director, the funeral
> director must review his employee's work each time they submit
> a contract for his signature.

<u>Walker</u>, 364 F. Supp. 2d at 519-520 (emphasis added).

Similar to <u>Walker</u>, one must question what "substantial governmental interest" is promoted by prohibiting unlicensed employees and agents from preparing work sheets, proposals or other presentations for funeral services, and from prohibiting employees or agents from engaging in discussions or other communications with consumers regarding the selection of funeral services and merchandise incidental to such services.  These two provisions seek to prohibit some of the very type of communications that the federal court concluded should <u>not</u> be restricted.  If paragraph (3) of section (c) precluded unlicensed employees or agents from engaging in discussions concerning the <u>technical</u> aspects of, say, the chemical benefits of embalming, such would likely be reasonable and legitimate.  This section, however, is overly broad and precludes an unlicensed employee or agent from engaging in those discussions or communications with a consumer pre-need that an unlicensed individual can engage in with a consumer at-need.  <u>See</u>, 63 Pa. C.S. § 479.13(d).    Indeed, the federal court recognized the inconsistency that exists with this type of preclusion.  <u>See, e.g.</u>, <u>Walker</u>, 364 F. Supp. 2d at 511 ("...although the Law prohibits unlicensed individuals from offering for sale pre-need

Michelle T. Smey
December 5, 2005
Page 5

contracts, these same unlicensed individuals are permitted to make tentative funeral arrangements in certain situations.")

Similarly, the "substantial governmental interest" promoted by paragraph (2) of section (c) is also absent. Query: Insofar as only a licensed funeral director can actually contract with consumers for the sale of pre-need funeral services, why absolutely prohibit an employee or agent from preparing worksheets, proposals, or other presentations for the funeral services? Quite frankly, it is to a consumer's benefit for an employee or agent to provide to that consumer a worksheet, proposal or other presentation for funeral service so that the proposal will be in writing and documented. It will effectively memorialize the conversation between the consumer and the employees or agents; it will give that consumer the opportunity to "shop" for better deals. Obviously, if the information provided on those work sheets, proposals or presentations is inaccurate and improper, the licensed funeral director will become aware of the same when that consumer discusses the pre-need contract with the licensed funeral director. Not only will the worksheets, proposals and presentations be of benefit to consumers, but they are also beneficial to the licensed funeral director, as it provides a "check" on the unlicensed employees and agents and helps the funeral director to supervise the employees' and agents' work product. No governmental interest is promoted by section (c) (2) of the draft Regulations.

Other very significant constitutional, as well as practical, concerns are raised by the draft Regulations. First, § 13.230(c)(1) provides that employees or agents not licensed under the Act shall not "[b]e associated with any other funeral director or funeral entity." What possible governmental interest is promoted with this provision? Without a doubt, this proposed provision restricts lawful association and improperly interferes with the same. This provision will economically strangle trained but unlicensed individuals such as licensed insurance agents and sellers of death industry merchandise by precluding them from working with more than one funeral entity or funeral director. This restraint is unjustified and cannot be sustained. The motivation behind this provision is transparent – it seeks to curtail competition within the pre-need industry. Certainly, this provision will not withstand constitutional muster.

In addition to the foregoing, the PCFA has additional concerns with other provisions of the draft Regulations. Specifically, it is believed that subsection (6) of section (c) is redundant. Subsection (7) prohibits employees or agents not licensed under the Act from engaging in any activities that constitute the practice of funeral directing. Subsection (6) would fall within the scope of subsection (7) and, hence, is redundant. It is suggested that such language be removed.

Additionally, subsection (2) of section (b) is circular. That section states that employees or agents not licensed under the Act may "[p]rovide general assistance to his employer or principal by engaging in activities, including communications with consumers, not otherwise

Michelle T. Smey
December 5, 2005
Page 6

prohibited by the Act or this chapter." One of the issues and concerns involved in the <u>Walker</u> litigation was that the Law failed to clearly identify what an unlicensed individual may do. To state that an unlicensed person can engage in those activities "not otherwise prohibited" provides no clarity or guidance whatsoever. To the extent that the draft Regulations are intended to expressly state what employees or agents not licensed under the Act may do, subsection (2) provides little guidance.

Turning to Section 13.230(a), a concern exists with subsection (3), which states that: "[t]he funeral director or funeral entity may not pay or agree to pay a commission to such employee or agent for soliciting or for business secured." This is an economic restraint on trade that is not justified. Again, what is the harm that is sought to be protected by the State Board on this trade practice? Provided that any such commission is not passed on to the consumer, none exists.

Finally, a substantial concern exists with respect to section (a)(5). This provision requires <u>any</u> document presented by the employee or agent to a consumer for signature or acknowledgment to bear language that states that the document does not constitute a contract or an offer to contract. Query: What if, among other things, a licensed insurance agent, who is an agent for a funeral home, is writing an insurance policy for the consumer which the consumer ultimately intends to use to fund a pre-need contract? Does § 13.230(a)(5) apply to this policy? On its face, it does, yet an insurance policy is most certainly a "contract" within the legal definition of the same. To the extent that this provision is attempting to dictate the terms of an insurance policy and to alter the legal import of those policies, this draft Regulation is not only overly broad, but it is also interfering with the jurisdiction of the Insurance Department and is infringing on those Regulations. If section (a)(5) is not intended to include within its scope insurance policies, this provision needs to be revised accordingly.

In closing, a review of the official minutes of the Board confirms that detailed discussions have indeed ensued as to what it is that the federal court directed. These draft Regulations, however, reflect a patent effort to yield on its previous, restrictive policy only to the extent mandated by the federal court and even then, as noted above, we believe that compliance with the rationale of that decision has not been met in the form of these Regulations. Nevertheless, PCFA suggests that what this Board should be doing is to promulgate Regulations which allow the free flow of information; allow the free flow of communication between consumers and offerors of funeral services and merchandise, yet protect the public. Instead, and with all due respect, these Regulations are an example of a profession seeking to impede the free flow of information and the knowledgeable decision-making of consumers who are not at risk by interacting with agents or employees of licensed funeral directors who are doing nothing more than making available to the consumer informed choices, understanding that the licensed funeral director is ultimately responsible for any decision-making or contractual terms thereon.

Michelle T. Smey
December 5, 2005
Page 7

The Regulatory Review Act, 71 P.S. § 745.1 et seq., as well as the Governor's Executive Order expressly referenced in the Board's own letter requesting comments, makes clear that regulations should be proposed <u>only</u> when there is a need. <u>See</u>, 71 P.S. § 745.5(a)(3). Here, as noted aptly by the federal court, there is not one shred of factual evidence supporting the "need" for such a restrictive regulatory scheme, at least not a <u>consumer</u> need. And, with respect, we believe that the "need" referenced in the law was intended to refer to the "public's" need and not the professional's pecuniary need.

PCFA thanks this Board for reviewing these written comments and it urges the Board to consider same and react in a manner which advances the interests of consumers, fair pricing, and legitimate competition.

Respectfully submitted,

James J. Kutz

JJK:dlh

# EXHIBIT "9"

1

```
 1              COMMONWEALTH OF PENNSYLVANIA
 2
 3               DEPARTMENT OF STATE
 4
 5    BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS
 6
 7        V E R B A T I M   T R A N S C R I P T
 8
 9
10          STATE BOARD OF FUNERAL DIRECTORS
11            REGULATIONS COMMITTEE MEETING
12
13
14             TIME:  10:09 A.M.
15
16               BOARD ROOM B
17
18             ONE PENN CENTER
19          2601 NORTH THIRD STREET
20          HARRISBURG, PENNSYLVANIA
21
22
23             MARCH 21, 2006
```

2

1
2          State Board of Funeral Directors
3
4          Regulations Committee Meeting
5                  March 21, 2006
6  Committee Members:

7  Michael J. Yeosock, Chair
8  Jodi Zucco, Esquire
9  Donald J. Murphy
10 Basil L. Merenda, Commissioner
11      Bureau of Professional and Occupational Affairs
12
13 Bureau Personnel:
14
15 Frank J. Bolock, Jr., Esquire, Board Counsel
16 Michelle T. Smey, Board Administrator
17
18 Also Present:
19
20 Kathleen Ryan, Esquire, Pennsylvania Funeral Directors
21      Association
22 Charles Bowen, PFDA
23 James J. Kutz, Esquire, Pennsylvania Cemetery and
24      Funeral Association (PCFA)
25 John W. Erikson, Director, Pennsylvania Funeral
26      Directors Association
27 John Katora, PCFA
28 Bob Stewart, PCFA
29 Chris Williams
30 Tim Kernan, PCFA
31 Harry Neel, PCFA
32 Deborah Lee, Pennsylvania Insurance Department
33 Thomas G., Kukuchka, PFDA
34
35

36

168

1    MS. RYAN:

2             Well, and...

3    MR. MURPHY:

4             Say, "Jones was wrong."  Let's start another

5             suit against us.

6    COMMISSIONER MERENDA:

7             Right.

8    MS. RYAN:

9             Well, you know I wasn't there but I wonder

10            how much the Judge really understood.

11   MR. MURPHY:

12            I don't think the Judge really understood.

13            I don't think the Judge had the full case of

14            how funeral directing operates.  I don't

15            think he had it.  It was an unfortunate fact

16            the way this was given to the Judge to

17            decide.  It was lucky for Jim.  It was

18            unlucky for us.

19   COMMISSIONER MERENDA:

20            Of course Mr. Kutz would say that it was

21            excellent lawyer...

22   MR. MURPHY:

23            Well, there's a strong element of that too

# EXHIBIT "10"

1

*DRAFT*

COMMONWEALTH OF PENNSYLVANIA

DEPARTMENT OF STATE

BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS

**V E R B A T I M   M I N U T E S**

MEETING OF:

**STATE BOARD OF FUNERAL DIRECTORS**

TIME:  9:30 A.M.

BOARD ROOM D
ONE PENN CENTER
2600 NORTH THIRD STREET
HARRISBURG, PENNSYLVANIA

AUGUST 3, 2005

1           anyway?  Would that impede the, the funeral

2           business, the licensee's business?  Why

3           don't we just require, as the Law currently

4           seems to indicate, that you have to engage

5           in this discussion and this agreement

6           through a consultation with a licensed

7           funeral director?

8    JAMES O. PINKERTON:

9           There's a Federal Court case that says that…

10   JODI L. ZUCCO:

11          Well what is the impact on that?  We also

12          have our Statute and our current regs.  Who

13          cares what the Judge said?  He said "not

14          engaging in funeral direction."

15   JAMES O. PINKERTON:

16          But he's saying we can't restrict people

17          from going out there and delivering

18          information.

19   MICHAEL MORRISON:

20          But is information a contract?

21   JODI L. ZUCCO:

22          Well, isn't it funeral directing which the

23          Order says, as opposed to the Opinion, isn't

1           And the Order, as Jodi just pointed out,

2           says they can't engage in the practice of

3           funeral directing as defined in the Act.

4           And we've said the Act defines funeral

5           directing to include counseling.

6    JODI L. ZUCCO:

7           Consultation, yeah.  So why don't we just

8           blow off the Opinion and go with the Order?

9    THOMAS BLACKBURN:

10          And that's what we've been essentially

11          saying for the last two or three months.

12   DONALD J. MURPHY:

13          What I'm saying is we should do it.  Not sit

14          here and say oh it's fine and then we go out

15          of here.  I know, Tony knows, she knows, he

16          knows...

17   JODI L. ZUCCO:

18          The licensees don't know.

19   DONALD J. MURPHY:

20          Right.

21   JODI L. ZUCCO:

22          They have no clue what's going on here.

23   DONALD J. MURPHY:

1    The Board made a decision.  Hurray.  The

2    effect of that is telling the public,

3    telling the funeral directors here's what

4    you can and can't do.  We need to fire a

5    counter barrage against…

6 JODI L. ZUCCO:

7    The effect of that is…

8 THOMAS BLACKBURN:

9    We can put an article in the newsletter that

10    says to licensees, "here's what we're

11    planning to do."

12 UNKNOWN:

13    Court says, you know, Board get off your

14    duff, Board get off your duff, Board issue

15    regulations.

16 THOMAS BLACKBURN:

17    Well obviously that Judge doesn't understand

18    how we promulgate regulations in the

19    Commonwealth of Pennsylvania.

20 MICHAEL J. YEOSOCK:

21    This would support an appropriate

22    regulation, which requires licensed funeral

23    directors employing unlicensed individuals

1            in the capacity, to consult face-to-face.

2            Can't we tell them that?

3    JODI L. ZUCCO:

4            No, we don't want to tell them that.

5            Because that's constituting funeral

6            direction.

7    MICHAEL J. YEOSOCK:

8            All right then we go down here.  We issue a

9            regulation that says you have the

10           responsibility for training your unlicensed

11           people who are going to do this, you have a

12           responsibility for supervising the people

13           who do this, you have a responsibility for

14           letting them make clear to the individual

15           that they are not selling the contract,

16           That you have to have a face-to-face

17           consultation with the funeral director,  We

18           can say all that and we're in compliance

19           with the Order.

20   BASIL L. MERENDA:

21           In a reg.

22   UNKNOWN:

23           In a regulation, yes.

1   THOMAS BLACKBURN:

2              If you want I can draft something to add on

3              to the existing pre-need reg that says

4              exactly those things.  And we're still

5              consistent with the view that that

6              unlicensed person cannot counsel the sale.

7              They can share information and here are the

8              restrictions on the funeral director's

9              (inaudible).

10  JODI L. ZUCCO:

11             Where is the sharing information versus

12             consultation, coming in?

13  THOMAS BLACKBURN:

14             That's something else we'll have to stick in

15             there.

16  JODI L. ZUCCO:

17             I have to disagree with Mr. Murphy I think.

18  MICHAEL J. YEOSOCK:

19             Maybe we could (inaudible) and hand out the

20             price list, but they can't do this and they

21             can't do that.

22  JODI L. ZUCCO:

```
 1              But it's got to be consistent with our prior
 2              decisions.  Who cares what the Judge wants?
 3              It has to be consistent with our prior
 4              decisions.  It has to be consistent with
 5              Ferguson…
 6  MICHAEL MORRISON:
 7              Support Ferguson with what we do because
 8              that's still (inaudible).  This to me just
 9              supports Ferguson is what it's doing.  It's
10              saying they can get out information, but
11              they can't do the contract.
12  DONALD J. MURPHY:
13              Right, exactly.  But we need to say that, we
14              need to get out in print.
15  JODI L. ZUCCO:
16              Well.
17  DONALD J. MURPHY:
18              Let me ask another question.  Counselor, are
19              we in contempt if we go too far?
20  JODI L. ZUCCO:
21              I wondered about that.
22  THOMAS BLACKBURN:
23              I'm not.
```

```
 1              And the Order, as Jodi just pointed out,

 2              says they can't engage in the practice of

 3              funeral directing as defined in the Act.

 4              And we've said the Act defines funeral

 5              directing to include counseling.

 6   JODI L. ZUCCO:

 7              Consultation, yeah.  So why don't we just

 8              blow off the Opinion and go with the Order?

 9   THOMAS BLACKBURN:

10              And that's what we've been essentially

11              saying for the last two or three months.

12   DONALD J. MURPHY:

13              What I'm saying is we should do it.  Not sit

14              here and say oh it's fine and then we go out

15              of here.  I know, Tony knows, she knows, he

16              knows...

17   JODI L. ZUCCO:

18              The licensees don't know.

19   DONALD J. MURPHY:

20              Right.

21   JODI L. ZUCCO:

22              They have no clue what's going on here.

23   DONALD J. MURPHY:
```

.

# EXHIBIT "11"

# Kutz, James

**From:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Sent:** Wednesday, October 25, 2006 4:43 PM
**To:** Kutz, James
**Subject:** Proposed Preneeds Regulations

Jim:

I just want to confirm that after consulting with our General Counsel's office and Frank Bullock, outside counsel for the Funeral Directors Board, we are all of one mind and agree that the Board cannot adopt and promulgate any regulations under Section 13(a) of the Funeral Director Law in light of the rulings in the Ferguson and Walker cases. Therefore, I have requested Frank, and he has agreed, to draft an opinion to this effect. Please call or email if you or Ernie have any further questions or comments with respect to this matter.



Governor's Policy Office
506 Finance Building
Harrisburg, PA 17120



The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination, or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this information in error, please contact the sender and delete the material from any computer.

# EXHIBIT "12"



COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF STATE
BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS
STATE BOARD OF FUNERAL DIRECTORS
P. O. BOX 2649
HARRISBURG, PA 17105-2649

MICHELLE T. SMEY
BOARD ADMINISTRATOR



717/783-3397
717/705-5540 FAX

February 6, 2007

James J. Kutz, Esquire
Post & Schell
17 North Second Street
12th Floor
Harrisburg, PA 17101-1601

Dear Mr. Kutz, Esquire:

The State Board of Funeral Directors is continuing its efforts to promulgate regulations concerning preneed activities by unlicensed employees. The Governor's Executive Order 1996-1 requires the Board to solicit pre-draft commentary from statewide organizations that might be interested in the Board's rulemaking. Please consider the attached rulemaking and submit any comments to my attention at the address listed above.

The shaded areas indicate changes from the Board's prior draft. The strikethroughs indicate deletions from the prior draft.

Comments must be received by March 10, 2007. The Board will be discussing this regulation, and any comments received, at its regular board meeting on April 4, 2007. The meeting location is One Penn Center, 2601 North Third Street, Harrisburg, Pennsylvania, 17110. The meeting will begin at 9:30 a.m. As per the Sunshine Act, all board meetings are open to the public.

If you have any questions, please contact me.

Sincerely,

*Michelle T. Smey*

Michelle T. Smey

# ANNEX A

## TITLE 49. PROFESSIONAL AND VOCATIONAL STANDARDS

### PART I. DEPARTMENT OF STATE

#### Subpart A. Professional and Occupational Affairs

#### CHAPTER 13. STATE BOARD OF FUNERAL DIRECTORS

#### GENERAL PROVISIONS

§ 13.1. Definitions.

The following words and terms, when used in this chapter, have the following meanings, unless the context clearly indicates otherwise:

\* \* \*

*Funeral entity* – A restricted business corporation, professional corporation, pre-1935 corporation, partnership, sole proprietorship, widow, widower, or estate authorized by the Board to practice the profession of funeral director.

\* \* \*

*Preneed activity* – Any activity on behalf of a funeral entity concerning the provision of funeral service or merchandise upon the death of a specifically identified person living at the time of the activity.

*Preneed funeral contract* – An agreement under which a funeral entity promises or agrees to provide funeral merchandise or render services upon the death of a person living at the time the contract is made, whether or not the funeral entity receives preneed funeral funds.

\* \* \*

1

## § 13.206a.  Utilization of unlicensed employees by a funeral entity.

(a)  A licensed funeral director or funeral entity may permit an unlicensed employee of the funeral entity to interact with customers concerning preneed activity in accordance with this section.

  (1)  The funeral director or funeral entity utilizing an unlicensed employee shall be professionally responsible for the actions of the unlicensed employee.

  (2)  The funeral entity utilizing an unlicensed employee shall execute a written employment agreement with the unlicensed employee and shall retain a copy of that agreement for at least one year after the employee has left employment.

  (3)  The unlicensed employee shall operate only in the name of and on behalf of the employing funeral entity and under the close supervision of a licensed funeral director.

  (4)  The funeral director or funeral entity may not pay or agree to pay a commission to the unlicensed employee for soliciting business or for business secured by the unlicensed employee.

  (5)  A licensed funeral director of the funeral entity employing an unlicensed employee in this capacity shall consult face-to-face with each customer before entering into or offering to enter into a preneed funeral contract.

  (6)  Any document presented by the unlicensed employee to the customer for signature or acknowledgment must bear in 20-point or larger print the following notice completed with the name of the funeral entity:

  THIS DOCUMENT DOES NOT CONSTITUTE A CONTRACT OR AN OFFER TO CONTRACT.  THIS DOCUMENT IS NOT BINDING ON YOU (THE CUSTOMER) OR [name of funeral

January 8, 2007

entity], BUT IS MERELY FOR INFORMATION PURPOSES TO

INFORM YOU OF THE SERVICES AND MERCHANDISE

AVAILABLE AND THE COST THEREOF, AS WELL AS

FUNDING OPTIONS. ANY NEGOTIATIONS WITH A VIEW TO

ENTERING INTO A CONTRACT WITH [name of funeral entity]

MUST TAKE PLACE IN A FACE-TO-FACE MEETING WITH A

LICENSED FUNERAL DIRECTOR OF [name of funeral entity].

(b) An employee not licensed under the act acting in accordance with this section may:

(1) Distribute general price lists of the employing funeral entity only.

(2) Prepare worksheets, proposals or other presentations for funeral services and merchandise incidental to such services.

(3) Engage in discussions or other communications with customers regarding the selection of funeral services and merchandise incidental to such services.

(4) Engage in discussions or other communications with customers regarding financial arrangements for the rendering of funeral services and merchandise incidental to such services.

(5) Provide general assistance to the employing funeral entity by engaging in activities, including communications with customers, not otherwise prohibited by the act or this chapter.

(c) An employee not licensed under the act who engages in the activity described above may not:

(1) Be associated with Engage in preneed activity on behalf of any other funeral entity.

(2) Prepare worksheets, proposals or other presentations of funeral services.



(5) Offer to or enter into a preneed funeral contract with any customer on behalf of the funeral director or funeral entity.

(6) Engage in any activity that would cause a customer to believe that the unlicensed employee is skilled in the knowledge, science or practice of funeral directing.

(7) Engage in any activity that constitutes the practice of funeral directing under the act.

(d) Nothing in this section shall be construed to alter the scope of practice of a licensed insurance agent acting pursuant to licensure from the Department of Insurance, so long as the insurance agent is not acting as a funeral director or practicing funeral directing.

January 8, 2007