# EXHIBIT "13"



17 North Second Street
12th Floor
Harrisburg, PA 17101-1601
717-731-1970 Main
717-731-1985 Fax
www.postschell.com

James J. Kutz

jkutz@postschell.com
717-612-6038 Direct

March 9, 2007                               *Via Hand Delivery and Email*

Michelle T. Smey
Board Administrator
Department of State
2601 North Third Street
P.O. Box 2649
Harrisburg, PA 17105-2649

RE:   Comments on Revised Draft Regulations of State Board of Funeral
      Directors Submitted on Behalf of Pennsylvania Cemetery Cremation
      & Funeral Association

Dear Ms. Smey:

On behalf of the Pennsylvania Cemetery Cremation & Funeral Association ("PCCFA"), allow
this letter to serve as the organization's comments on the most recently revised draft Regulations
of the State Board of Funeral Directors ("Board"), dealing with pre-need activities of unlicensed
employees and agents as set forth in your cover letter to me of February 6, 2007.

I wish to thank the Board, the Administration, and yourself for giving PCCFA the opportunity to
submit these comments. Although we have previously communicated to the Board, let me
reiterate the fact that PCCFA is a statewide trade organization which is unique in that its
membership includes, among others, licensed funeral directors, cemeterians, licensed insurance
agents, crematory operators, sellers of death industry merchandise subject to the Future
Interment Law, and others who are not licensed funeral directors. I would submit that this broad-
based representation probably renders PCCFA as a most appropriate entity to speak to these draft
Regulations on behalf of the entire death care industry, a capability not available to any other
statewide group.

PCCFA wishes to compliment the Administration and the Board for its diligent assessment and
vetting of the numerous comments submitted in response to earlier draft Regulation proposals of
the Board. It is abundantly clear that numerous concerns have been addressed, at least in part,
and for this, we are most appreciative and thus extend our thanks. Indeed, this latest draft
proposal has moved significantly in what we believe to be the proper direction; it clarifies many
areas where uncertainty and confusion had existed; it takes into account, at least in part, the
comprehensive opinion and analysis of the federal court, as set forth in Walker v. Flitton, 364 F.
Supp. 2d 503 (M.D. PA) 2005; and this latest draft also demonstrates an effort to attempt to deal

Michelle T. Smey
March 9, 2007
Page 2.

with a licensure act whose provisions are now more than half a century old and in many instances, antiquated and outdated. However, PCCFA believes that this most current draft requires still further refinement and, with respect, further conformance with current law in order to be viable and reasonable if finally promulgated as binding law.

Perhaps in part some of the struggle in crafting a set of viable Regulations stems from the fact that the statute governing conduct of funeral directors within this Commonwealth has been left to stand "largely unchanged since the 1950's, thus providing little help or guidance to the Board." See Walker at n.13. It was for this reason that PCCFA, in prior submissions to this Board, urged consideration of a strategy which deferred promulgating any Regulations until necessary comprehensive changes could be made to the statutory law which, as the federal court aptly noted "are clearly long overdue", rather than attempting to promulgate against a back drop of "antiquated provisions of the law…". See, Id. Thus, although PCCFA continues to believe that deferral of this rule-making process until these antiquated provisions of law can be conformed to the realities of the 21st Century, the following specific comments to the specifically proffered regulatory provision are offered below.

Proposed Section 13.206(a) is identified under a "heading" of "Utilization of Unlicensed Employees by a Funeral Entity". PCCFA submits that the heading of this section, as well as the language which follows must be amended to include not only unlicensed "employees" but also unlicensed "agents" of the funeral director. Indeed, a substantial portion of the Walker decision focused on licensed insurance agents who would be affiliated with licensed funeral directors in offering pre-need packages to prospective customers. From both a historical, regulatory and real-life perspective, licensed insurance agents are "agents" rather than traditional "employees". Limiting unlicensed affiliations to "employees" only is overly restrictive, unnecessary, and substantially defeats one of the holdings of Walker; i.e., to address the permissibility of licensed insurance agents working in conjunction with licensed funeral directors. As we see it, the more important component of the relationship would indeed be the written agreement between the licensed funeral director and his or her employee or agent – a concept specifically contemplated and proposed by the Board in subsection (a)(2) of Section 13.206(a). In other words, the agreement controls the relationship, the level of supervision, and all other interaction between the licensed funeral director and his or her employee or agent, rather than the technical label appended to that unlicensed assistant. There could be a host of reasons, including tax reasons and other affiliations of the licensed insurance agent which would make his or her designation as an "employee" improper or inconsistent with other statuses or affiliation. Under current appellate case law, the licensed funeral director or funeral director supervisor serves in the capacity as "captain of the ship" and is responsible for the acts of his or her subordinates and affiliates. See Geisel v. State Board of Funeral Directors, 755 A.2d 750 (Pa, Commw. 2000). To state the point differently, it is not the label attached to the unlicensed affiliate that is important but rather the language in the written agreement which ensures control over the relationship and ultimate responsibility with the licensed funeral director. Obviously, the language which follows under the heading in Section 13.206(a) would require revision so as to add the words "or agent(s)" each and every time there is a reference to "unlicensed employee".

Michelle T. Smey
March 9, 2007
Page 3

Second, PCCFA respectfully urges the elimination of proposed subsection (4) under Section 13.206(a). That proposed revision directs that a funeral director may not agree to pay a commission to the unlicensed employee (or agent) for either soliciting business or for business secured by the unlicensed representative. PCCFA is not unaware of 63 P.S. § 479.11(a)(8), which suggests that it is improper to pay a commission or agree to pay a commission to any person for soliciting or for business secured, or paying any gratuity to any person with the intent to have such person aid in securing business. With all due respect, the federal court decision in Walker v. Flitton, while not expressly voiding this provision of law, nevertheless, by logic, implication, and *de facto* application, did precisely that! If this subsection in the proposed Regulations were allowed to remain in the final rule-making, it would have the practical affect of essentially "gutting" the primary value achieved by the Plaintiffs in Walker v. Flitton. Certainly, an unlicensed employee or agent is not prepared to work for a licensed funeral director if they can neither receive a commission for their valuable and competent services, nor be given a "gratuity" for such efforts. Although definitions may vary, gratuity is essentially defined as a sum of money given as a reward for a service. See, e.g., *Cambridge Advanced Learner's Dictionary*. The major thrust of the contention in Walker was that the federal constitution was being infringed by the Board's prohibition against licensed funeral directors using unlicensed employees or agents to help them in securing pre-need business. It would defy logic to conclude that the federal court intended to declare such prohibition unconstitutional, yet allow this Board to completely impede the very relief secured by Plaintiffs by forcing these employees and agents to work without commissions or other gratuity. This proposed subsection of the Regulations must be removed because it conflicts with the heart and soul of the Walker logic and holding.

In subsection (5) of Section 13.206(a), the Board continues to propose the requirement that a licensed funeral director "shall consult face-to-face with each customer before entering into or offering to enter into a pre-need funeral contract". PCCFA acknowledges the federal court's reference to the possibility of such a provision. However, upon analysis, it is respectfully submitted that this requirement is both onerous and unnecessary, primarily to the consumer. For example, an elderly widower living in California wishes to return to Pennsylvania and be buried next to his now-deceased wife at the time of his demise. He is unable to travel to Pennsylvania but wants to ensure that his funeral arrangements are completely addressed pre-need. He is permitted under Pennsylvania law to enter into all aspects of a pre-need agreement with a Pennsylvania funeral director without so much as speaking to the Director, let alone meeting him face-to-face. Obviously, neither the General Assembly nor this Board apparently had concerns with a contract being entered into under such circumstances. Moreover, the requirements would be no different if the widower was living in Erie and contracted with a Philadelphia funeral director whose funeral home was within close proximity to the cemetery where his deceased wife was buried. Query: If both of these scenarios can result lawfully in the effectuation of pre-need contracts, why does the injection of the trained employee or agent into the preliminary process compel any different result? The funeral director must still execute any pre-need contract in order for the pre-need funeral service arrangements to be effective – PCCFA does not dispute this requirement. Why require the consumer to journey to the home of the funeral director if that

Michelle T. Smey
March 9, 2007
Page 4

customer is fully satisfied with his pre-arranged plans; does not have the time or ability to travel to the funeral home, yet understands that the prearranged contract becomes effective only upon the execution by the funeral director?   Respectfully, this Regulation would be far more logical and reasonable if it required notification to the customer that he or she has the option of speaking with and/or meeting with the funeral director prior to any arrangement becoming effective.  In other words, allow the consumer to make his or her choice as to the extent of interaction desired with the licensed funeral director.

This suggestion is consistent with the manner in which virtually all other business transactions may be effectuated.  For example, an attorney within this Commonwealth can be formally and legally retained by having a client execute a representation letter, without ever speaking with or meeting the retained attorney.  The representation may involve matters of critical importance and millions of dollars but that does not defeat the absence of a face-to-face meeting requirement.  Similarly, real estate agents and brokers buy and sell millions of dollars of real estate and improved property on behalf of contractees who never meet the real estate broker or agent.  Insurance agents sell annuities in the hundreds of thousands of dollars to customers they have never met.  With all due respect, and without attempting to belittle the importance of preparing one's funeral arrangements, if business transactions involving millions of dollars can be effectuated without face-to-face meetings, entering into a prearranged funeral for $6,000 or $7,000 should require no more, especially under circumstances where this Board is proposing that requirement only if the trained, unlicensed employee or agent is involved in the sharing of information with the consumer.

In view of the above logic and reasoning, PCCFA respectfully submits that subsection (5) should be revised to provide that the consumer shall be specifically advised of his or her option to either speak with or personally meet the funeral director before the pre-need contract is effectuated by execution of the funeral director.

With regard to subsection (6) of Section 13.206(a), PCCFA again urges this Board to consider the necessity of a bold print notification to a consumer as that notification is proposed by the Board.  First, a portion of the proposed notification is inconsistent with other sections of the proposal setting forth those things which an employee or agent can do when interacting with the prospective customer.  Specifically, the employee or agent is permitted under this proposal to do more than simply inform a customer of available services and funding options.  Moreover, to the extent the notification would require any "negotiations" to take place in a face-to-face meeting with the funeral director, the comments set forth above relating to the absence of necessity for that requirement are incorporated into this comment.  Having stated this, PCCFA would suggest that, if any notification was required, that it contain information advising the customer that the contract will become effective only upon the licensed funeral director executing a pre-need agreement and that if the customer wishes, he or she may consult, either in person or by other means, with the licensed funeral director.  However, as the notice is proposed here, the result may have unintended consequences which unnecessarily alarm families with regard to matters which unlicensed individuals speak to everyday, and, moreover, in the case of the licensed

Michelle T. Smey
March 9, 2007
Page 5

insurance agent, he or she is permitted to actually contract with the customer in terms of that customer purchasing a final expense insurance policy.

In subsection (b), the proposed Regulation suggests that an employee or agent may only distribute the general price list for his or her employing funeral entity and no other home. To be candid, this restriction is illogical and inconsistent with competition, disclosure to the consumer, the providing of an opportunity for the consumer to make informed choice, and it is also anti-competitive. General Price Lists (GPL) are required under the Federal Trade Commission Funeral Rule to be distributed whenever an inquiry about funeral services in general is made by a consumer or upon specific request of a GPL. It is the heart and sole of free enterprise that a merchant be permitted to discuss the comparative value of his product with that of a competitor. It is equally the heart and soul of free enterprise that a consumer should be allowed to make an informed choice. Query: What should the employee or agent tell a customer when asked whether his or her prices are competitive with the funeral home down the street? The obvious answer is that, if the employee or agent knows the general price lice of a competitor, it should be disclosed so that the Pennsylvania consumer is more fully informed before he or she commits to a particular financial proposal. This anti-competitive and protective provision set forth in (b)(1) is not in the public interest and it should be stricken.

The next proposed provision upon which PCCFA would like to comment relates to subsection (c) which sets forth those actions which are prohibited by the employee or agent. Subsequent (1) thereof prohibits the employee or agent from engaging in any pre-need activity on behalf of more than one funeral entity. With respect, this restriction is unnecessary and will have the effect of precluding many funeral directors from utilizing agents. For example, if we take a rural funeral home which does 35 or 40 "calls" a year, there is no reasonable means by which the licensed funeral director can employ or affiliate full-time with an unlicensed employee or insurance agent – there is simply insufficient cash flow to allow that. Moreover, in the case of the licensed insurance agent, he or she is regulated closely by the Pennsylvania Department of Insurance and, to this extent, there is little concern for confusion, misrepresentation or consumer harm. What should be important and what should provide adequate protection is the terms and conditions of the employment or engagement agreement between the funeral director and the unlicensed individual. If the licensed funeral director wants exclusive rights over the employee or agent, and if that funeral director has the financial means to secure exclusive employment or agency rights, such a condition can easily be written into any employment or engagement contract. However, so long as the consumer is not misled (and certainly if the consumer is misled, this Board can respond thereto), there is no compelling need for this overly restrictive clause.

In closing, PCCFA wishes to make clear that its suggested revisions, amendments and deletions derive from a basic belief that the Pennsylvania consumer is best served when he or she has more information rather than less; is able to make an informed decision without imposing unreasonable burdens on that consumer, such as traveling to a funeral home across state simply because a requirement compels it; and that restriction on competition and free enterprise should be no greater than that necessary to protect the public. Notably, in Walker v. Flitton, the federal

Michelle T. Smey
March 9, 2007
Page 6

court, when discussing the absence of evidence in support of prohibiting unlicensed individuals from discussing funeral arrangements states the following:

> Furthermore, because the law requires all pre-need contracts to be signed by a funeral director, the funeral director must review his employee's work each time they submit a contract for his signature.

See Walker, 364 F. Supp. 2d at 519-520 (emphasis added).  Simply stated, the federal court expressly envisioned the scenario under which employees and agents of the licensed funeral director would have contracts filled out and signed by the customer, subject, of course, to the funeral director "reviewing" the employee's work whenever they "submit a contract for his signature".  Inasmuch as the funeral director remains responsible for the acts of his employees and agents, there is an inherent, built-in incentive for these employees and agents to be trained, to act properly, and to not harm either the consumer or the status of the licensed funeral director.

We thank the Board for the opportunity to submit these comments; we urge the Board to consider them in earnest as we believe they are fairly measured and sincere; and we look forward to a continued dialogue with the Board and this Administration, which has seen fit to fully analyze before promulgating.

Very truly yours,


James J. Kutz

JJK:dlh

# EXHIBIT "14"

# PROPOSED RULEMAKING

## STATE BOARD OF FUNERAL DIRECTORS

### [ 49 PA. CODE CH. 13 ]

### Preneed Activities of Unlicensed Employee

**[37 Pa.B. 5257]**
**[Saturday, September 29, 2007]**

The State Board of Funeral Directors (Board) proposes to amend § 13.1 (relating to definitions) and to add § 13.206a (relating to utilization of unlicensed employees by a funeral entity), to read as set forth in Annex A.

*Effective date*

The amendments will be effective upon publication of the final-form rulemaking in the *Pennsylvania Bulletin.*

*Statutory Authority*

The amendments are authorized under sections 11, 13, 15 and 16(a) of the Funeral Director Law (act) (63 P. S. §§ 479.11, 479.13, 479.15 and 479.16(a)).

*Background and Need for the Amendment*

Section 13(c) of the act (63 P. S. § 479.13(c)) provides, "No person other than a licensed funeral director shall, directly or indirectly, or through an agent, offer to or enter into a contract with a living person to render funeral services to such person when needed." In *Ferguson v. State Bd. of Funeral Directors*, 768 A.2d 393, 400 (Pa. Cmwlth. 2001), appeal denied, 566 Pa. 670, 782 A.2d 549, the court affirmed the Board's conclusion that an insurance agent who identified herself as working with a funeral director and, equipped with the funeral director's price lists and other literature, counseled the preneed selection of funeral goods and services, even though the funeral director later met with each customer and had the customer sign a statement of funeral goods and services prepared by the funeral director on the basis of the insurance agent's worksheets, offered to enter into a contract with the insured for funeral goods and services when needed without being licensed to practice funeral directing (in violation of section 13(c) of the act). The court also held that by doing so the insurance agent made arrangements for funeral services and sold funeral merchandise to the public incidental to the funeral services and therefore engaged in the practice of funeral directing without a license (in violation of section 13(a) of the act). Id. at 399-400. By doing that and entering into a life insurance contract to fund the preneed arrangements, which the funeral director had already agreed to accept as payment in full, the insurance agent also made financial arrangements for the rendering of funeral services and sale of merchandise incidental to the services and therefore engaged in the practice of funeral directing without a license (in violation of section 13(a) of the act). Id. However, in *Walker v. Flitton*, 364 F.Supp.2d 503 (U.S.D.C. M.D. Pa. 2005), a case involving commercial free speech rights under the First Amendment of the Federal constitution, the court ordered that the Board "shall not prohibit agents or employees of specific licensed funeral directors from providing

accurate information to consumers regarding the sale of preneed funeral plans and services. This interaction shall include, but shall not necessarily be limited to, the distribution of accurate price lists to consumers, but under no circumstances may unlicensed individuals contract with consumers for the sale of preneed funerals, nor may they act as a 'funeral director' as defined in [the act.]" The court indicated that it did not intend to alter the Pennsylvania substantive law set forth in *Ferguson*. Id. at 513.

The Board has determined that its regulations need to address what unlicensed employees of a funeral establishment may do concerning preneed sales. See, *Walker* at 525-26 ("as a result of the [Board's] considered failure to enact a clarification of [its] interpretation of [the act], both consumers and the funeral industry in Pennsylvania have been forced to speculate as to precisely what conduct by unlicensed individuals is permissible"). The court "strongly urge[d] the Board members to fulfill their mandate by giving prompt attention to the goal of resolving all of the unclarity which has attended the sale and marketing of preneed funerals and life insurance polices to fund them in Pennsylvania." Id. at 529. The Board intends in this proposed rulemaking to be responsive to the court's mandate while remaining true to the act as previously construed.

This proposed rulemaking addresses only preneed activities and not actions after a death has occurred. In the event the licensed funeral director is temporarily absent, an unlicensed member of the funeral home staff may make tentative funeral arrangements after a death has occurred. See section 13(d) of the act (63 P. S. § 479.13(d)). Making tentative arrangements does not include offering to enter into a contract with a living person to render funeral services to the person when needed, and does not include making arrangements for funeral services and selling merchandise incidental to the service and does not include making financial arrangements for the rendering of funeral services and sale of merchandise incidental to the services. See 49 Pa. Code § 13.205 (relating to tentative agreements) tentative arrangements means contacting a licensed funeral director for the embalming operation, obtaining and placing obituary notices, setting a service time with the clergyperson and cemetery official and making an appointment for the family with a licensed funeral director for the selection of merchandise.

*Description of the Proposed Amendments*

In § 13.1 (relating to definitions), the term "preneed activity" would be defined as activity concerning the provision of funeral merchandise and services upon the death of a specifically identified person living at the time of the activity, and the term "preneed funeral contract" would be defined as an agreement under which a funeral entity promises or agrees to provide funeral merchandise and render services upon the death of a person living at the time the contract is made. These definitions are consistent with section 13(c) of the act.

Proposed § 13.206a would address the use of unlicensed employees of the funeral entity concerning preneed activity. Proposed § 13.206a(a) would set forth standards for the relationship between the funeral director or entity and the unlicensed employee. Proposed § 13.206a(a)(1) would make clear that the funeral director and funeral entity are professionally responsible for the actions of the unlicensed employee. See, *Walker* at 515 (funeral director is exposed to sanction by Board for improper action of unlicensed employee). Proposed § 13.206a(a)(2) would require the funeral director to closely supervise the unlicensed employee. See, *Walker* at 527 (Board may require close supervision by funeral director of unlicensed employees interacting with customers concerning preneed sales). Proposed § 13.206a(a)(3) would prohibit the funeral director from paying any commission to the unlicensed employee for soliciting business. See, section 11(a)(8) of the act (63 P. S. § 479.11(a)(8)) (Board may take disciplinary action against a funeral director who "solicit[s] patronage . . . by paying a commission or agreeing to pay a commission to any person or persons for soliciting or for business secured, or paying any gratuity to any person with the intent to have such person aid in securing business"). By prohibiting the unlicensed employee from being paid based upon how much preneed business the employee brings into the funeral home, this provision is intended to reduce the employee's incentive to persuade a customer to select funeral services and merchandise whether or not that selection would be in the customer's interest. Proposed § 13.206a(a)(4) would require the funeral director to meet face-to-face with the customer before entering into the contract,

and proposed § 13.206a(a)(5) would require that any document presented to a customer by the unlicensed employee must include a notice that the document will not be binding and that a licensed funeral director must meet with the customer before entering into any contract. See, *Walker* at 527 (unlicensed individual may not contract with customer, and Board may require licensed funeral director to consult face-to-face with preneed customer before the customer's proposed contract is signed by the funeral director).

In *Walker,* supra, at pages 526-27, the court noted the responsibility of the Board to delineate with precision what conduct by unlicensed persons is permissible. Proposed § 13.206a(b) and (c) would set forth those actions of unlicensed employees that would be permitted or prohibited, respectively. Proposed § 13.206a(b)(1) would specifically authorize an unlicensed employee to distribute general price lists of the employing funeral entity, and proposed § 13.206a(b)(2) would authorize an unlicensed employee to provide general assistance to the employing funeral entity by engaging in activities not otherwise prohibited. These provisions are intended to allow funeral entities enough latitude to be responsive in allowing unlicensed employees to communicate with consumers with regard to preneed activity without violating the act, while being responsive to the mandate of the court in *Walker*.

Proposed § 13.206a(c) would prohibit an unlicensed employee from engaging in certain actions concerning preneed activities. Proposed § 13.206a(c)(1) would prohibit an unlicensed employee from being associated with any other funeral entity. See, *Walker* at 506, n. 17 at 520 (court need not address unlicensed person not trained by and acting on behalf of specified funeral director, because plaintiffs are fulltime employees of funeral home trained and supervised by licensed funeral director). Being restricted to a single funeral entity, the unlicensed employee would be acting only on behalf of the funeral director and funeral entity responsible for the unlicensed employee's actions who also have presumably trained the unlicensed employee. Additionally, if an unlicensed employee were to work for more than one funeral entity, the various funeral directors may be less likely to closely supervise the unlicensed employee, because each funeral director might tacitly assume that all work away from that funeral entity would be supervised by the funeral directors at other funeral entities, and the unlicensed employee might not be closely supervised at all.

Because the Board cannot authorize unlicensed employees of a funeral entity to practice funeral directing, proposed § 13.206a(c)(2) and (3) would prohibit an unlicensed employee from preparing worksheets, proposals or other presentations for funeral services or to engage in discussions or other communications with customers regarding the actual selection of funeral services and merchandise incidental to those services. See, *Ferguson* at 400 (counseling selection of preneed funeral services is making arrangements for funeral service and selling funeral merchandise incidental to the services and is therefore engaging in the practice of funeral directing). Similarly, proposed § 13.206a(c)(4) would prohibit an unlicensed employee from making financial arrangements for the rendering of funeral services and merchandise incidental to such services. See, *Walker* at 527 (under no circumstances may unlicensed individual act as a funeral director as defined in section 2(1) of the act); section 2(1) of the act (term "funeral director" includes "a person who makes arrangements for funeral service and who sells funeral merchandise to the public incidental to such service or who makes financial arrangements for the rendering of such services and the sale of such merchandise); see also, *Ferguson* at 400 (entering into contract for life insurance to fund funeral and effectuating the assignment of the policy to the funeral director as previously agreed constitutes making financial arrangements for funeral services and merchandise). Because these actions by the unlicensed person constituted the unlicensed practice of funeral directing in Ferguson, the Board must make clear that an unlicensed person cannot practice funeral directing by engaging in these actions.

Proposed § 13.206a(c)(5) would prohibit an unlicensed employee from offering to or entering into a preneed funeral contract with any customer on behalf of the funeral entity. See, *Walker* at 527 (under no circumstances may unlicensed individual contract with consumer for sale of preneed funeral). Section 13 (c) of the act, as construed in *Ferguson*, makes it clear that only a licensed funeral director may enter into a preneed contract. This proposed provision is necessary to maintain that limitation. Proposed § 13.206a(c) (6) and (7) would prohibit an unlicensed employee from engaging in any activity that would cause a

customer to believe that the unlicensed employee is skilled in the knowledge, science or practice of funeral directing or to engage in any activity that constitutes the practice of funeral directing under the act. See, *Walker* at 527 (under no circumstances may unlicensed individuals act as a funeral director as defined in section 2(1) of the act); section 15(1) of the act (person is deemed to be practicing as a funeral director under the act if he "holds himself out to the public in any manner as one who is skilled in the knowledge, science and practice of funeral directing, embalming or undertaking"). These prohibitions of proposed § 13.206a(c) are intended to protect the public by clearly defining what an unlicensed employee of a funeral entity may not do in regard to preneed activity consistent with the act as construed in *Ferguson* and in accordance with the judicial mandate in *Walker*.

Finally, proposed § 13.206a(d) would make clear that the Board's rulemaking is not intended to affect the scope of practice of insurance agents licensed by the Insurance Department.

In November, 2005, the Board solicited input from and provided an exposure draft of this proposed rulemaking to funeral directors and organizations as required. The Board held a public hearing on the exposure draft on December 12, 2005. At a public meeting in March 2006, a committee of the Board discussed the various comments and prepared a revised draft of this proposed rulemaking, which the Board subsequently approved. The Board prepared an alternate version of this proposed rulemaking, which would permit unlicensed employees to engage in a greater range of activities. In January 2007, the Board provided to interested parties this alternative exposure draft and solicited comments. In response to extensive comments from the regulated community, the Board determined that it should proceed with the proposed rulemaking in substantially the same form as previously approved. In addition, the Board considered the impact the rulemaking would have on the regulated community and on public health, safety and welfare.

## Fiscal Impact and Paperwork Requirements

The proposed rulemaking will have no adverse fiscal impact on the Commonwealth or its political subdivisions. The rulemaking will impose no additional paperwork requirements upon the Commonwealth, its political subdivisions or the private sector.

## Sunset Date

The Board continuously monitors the cost effectiveness of its regulations. Therefore, no sunset date has been assigned.

## Regulatory Review

Under section 5(a) of the Regulatory Review Act (71 P. S. § 745.5(a)), on September 19, 2007, the Board submitted a copy of this proposed rulemaking and a copy of a Regulatory Analysis Form to the Independent Regulatory Review Commission (IRRC) and to the Chairpersons of the Senate Consumer Protection and Professional Licensure Committee and the House Professional Licensure Committee. A copy of this material is available to the public upon request.

Under section 5(g) of the Regulatory Review Act, IRRC may convey any comments, recommendations of objections to the proposed rulemaking within 30 days of the close of the public comment period. The comments, recommendations or objections shall specify the regulatory review criteria which have not been met. The Regulatory Review Act specifies detailed procedures for review, prior to final publication of the rulemaking, by the Board, the General Assembly and the Governor of comments, recommendations or objections raised.

## Public Comment

Interested persons are invited to submit written comments, suggestions or objections regarding this

(3) The funeral director or funeral entity may not pay or agree to pay a commission to the unlicensed employee for soliciting business or for business secured by the unlicensed employee.

(4) A licensed funeral director of the funeral entity employing an unlicensed employee in this capacity shall consult face-to-face with each customer before entering into or offering to enter into a preneed funeral contract.

(5) Any document presented by the unlicensed employee to the customer for signature or acknowledgment must bear in 20-point or larger print the following notice completed with the name of the funeral entity:

> THIS DOCUMENT DOES NOT CONSTITUTE A CONTRACT OR AN OFFER TO CONTRACT. THIS DOCUMENT IS NOT BINDING ON YOU (THE CUSTOMER) OR [name of funeral entity], BUT IS MERELY FOR INFORMATION PURPOSES TO INFORM YOU OF THE SERVICES AND MERCHANDISE AVAILABLE AND THE COST THEREOF, AS WELL AS FUNDING OPTIONS. ANY NEGOTIATIONS WITH A VIEW TO ENTERING INTO A CONTRACT WITH [name of funeral entity] MUST TAKE PLACE IN A FACE-TO-FACE MEETING WITH A LICENSED FUNERAL DIRECTOR OF [name of funeral entity].

(b) An employee not licensed under the act acting in accordance with this section may:

(1) Distribute general price lists of the employing funeral entity only.

(2) Provide general assistance to the employing funeral entity by engaging in activities, including communications with customers, not otherwise prohibited by the act or this chapter.

(c) An employee not licensed under the act who engages in the activity described in this section may not:

(1) Be associated with any other funeral entity.

(2) Prepare worksheets, proposals or other presentations for funeral services.

(3) Engage in discussions or other communications with customers regarding the actual selection of funeral services and merchandise incidental to the services.

(4) Make financial arrangements for the rendering of funeral services and merchandise incidental to the services.

(5) Offer to or enter into a preneed funeral contract with any customer on behalf of the funeral director or funeral entity.

(6) Engage in any activity that would cause a customer to believe that the unlicensed employee is skilled in the knowledge, science or practice of funeral directing.

(7) Engage in any activity that constitutes the practice of funeral directing under the act.

(d) Nothing in this section shall be construed to alter the scope of practice of a licensed insurance agent acting under licensure from the Insurance Department, so long as the insurance agent is not acting as a funeral director or practicing funeral directing.

[Pa.B. Doc. No. 07-1793. Filed for public inspection September 28, 2007, 9:00 a.m.]

No part of the information on this site may be reproduced for profit or sold for profit.

This material has been drawn directly from the official *Pennsylvania Bulletin* full text database. Due to the limitations of HTML or differences in display capabilities of different browsers, this version may differ slightly from the official printed version.

The
Pennsylvania

**BULLETIN**  •  BULLETIN TOC  •  PREV  •  NEXT  •  NEXT BULLETIN  •  SEARCH  •  HOME

*webmaster@PaBulletin.com*

# EXHIBIT "15"



ARTHUR COCCODRILLI, CHAIRMAN
ALVIN C. BUSH, VICE CHAIRMAN
DAVID J. DEVRIES, ESQ.
JOHN F. MIZNER, ESQ.
KIM KAUFMAN, EXECUTIVE DIRECTOR
LESLIE A. LEWIS JOHNSON, CHIEF COUNSEL

PHONE: (717) 783-5417
FAX: (717) 783-2664
irrc@irrc.state.pa.us
http://www.irrc.state.pa.us

# INDEPENDENT REGULATORY REVIEW COMMISSION
### 333 MARKET STREET, 14TH FLOOR, HARRISBURG, PA 17101

November 28, 2007

Anthony Scarantino, Chairman
State Board of Funeral Directors
2601 North 3rd Street
Harrisburg, PA 17110

Re: Regulation #16A-4816 (IRRC #2639)
   State Board of Funeral Directors
   Preneed Activities of Unlicensed Employee

Dear Chairman Scarantino:

Enclosed are the Commission's comments for consideration when you prepare the final version
of this regulation.  These comments are not a formal approval or disapproval of the regulation.
However, they specify the regulatory review criteria that have not been met.

The comments will be available on our website at www.irrc.state.pa.us.  If you would like to
discuss them, please contact me.

Sincerely,

Kim Kaufman /few)

Kim Kaufman
Executive Director
wbg
Enclosure
cc: Honorable Robert M. Tomlinson, Chairman, Senate Consumer Protection and Professional
     Licensure Committee
   Honorable Lisa M. Boscola, Minority Chairman, Senate Consumer Protection and
     Professional Licensure Committee
   Honorable P. Michael Sturla, Majority Chairman, House Professional Licensure Committee
   Honorable William F. Adolph, Jr., Minority Chairman, House Professional Licensure
     Committee
   Honorable Pedro A. Cortes, Secretary, Department of State

# Comments of the Independent Regulatory Review Commission

## on

## State Board of Funeral Directors Regulation #16A-4816 (IRRC #2639)

## Preneed Activities of Unlicensed Employee

## November 28, 2007

We submit for your consideration the following comments on the proposed rulemaking published in the September 29, 2007 *Pennsylvania Bulletin.* Our comments are based on criteria in Section 5.2 of the Regulatory Review Act (71 P.S. § 745.5b). Section 5.1(a) of the Regulatory Review Act (71 P.S. § 745.5a(a)) directs the State Board of Funeral Directors (Board) to respond to all comments received from us or any other source.

1. **Comments from the House Committee - Fiscal impact; Public health and welfare; Implementation procedures; Feasibility; Reasonableness; Consistency or conflict with the statute; Need; Clarity; Compliance with the Act.**

By letter dated November 14, 2007, the House Professional Licensure Committee (House Committee) submitted its comments on this proposed regulation which identified concerns, issues and questions that relate directly to the criteria and requirements for submitting regulations. We share the comments presented by the House Committee and incorporate them into the Commission's comments on this proposed regulation.

One of the most important concerns raised by the House Committee and other commentators was the fiscal impact of the proposed regulation. They assert that the proposed regulation does not reflect current practices in many segments of the preneed market and will increase costs for funeral entities and customers. The Board failed to provide any estimates of these potential costs in the Regulatory Analysis Form or the Preamble that accompanied the proposed regulation. Fiscal impact and other information is required by Section 5(a) of the Regulatory Review Act (Act) (71 P.S. § 745.5(a)). Therefore, the Board needs to develop and document an analysis of the fiscal impact of this proposed regulation on both the public and private sectors. This analysis should include detailed information as required by the Act (71 P.S. §§ 745.5(a)(4), (a)(5), and (a)(9)-(12)).

2. **Section 13.1. Definitions. - Reasonableness; Need; Clarity.**

*Preneed activity -*

This term is used only once in the proposed regulation. Therefore, this definition may be unnecessary and should be deleted from the final-form regulation unless the Board can explain both the intent and need for the definition.

*Preneed funeral contract -*

We have questions in two areas concerning this definition.

First, why does this definition only include the term "funeral entity"? In addition to "funeral entity," the term "licensed funeral director" is defined in Section 13.1 of the existing regulations. Why not include both "funeral entity" and "licensed funeral director" in the definition for preneed funeral contract?

Second, what is the intent of including the phrase "whether or not the funeral entity receives preneed funeral funds"? Why would a business enter into such a contract without receiving funds?

Furthermore, a significant focus of Section 13(c) of the Funeral Director Law (Law) (63 P.S. § 479.13(c)) is the money received for such contracts. What type of review or oversight would the Board exercise in a situation where there is no monetary transaction?

3. **Section 13.206a. Utilization of unlicensed employees by a funeral entity. - Fiscal impact; Public welfare; Implementation procedures; Feasibility; Reasonableness; Consistency or conflict with statutes and other regulations; Need; Clarity.**

There are four subsections in this section. Our comments include issues and questions relating to the whole section, and also identify specific questions or issues relating to provisions in each subsection.

Throughout the section, the terms or phrases "unlicensed employee" and "employee not licensed under the act" appear to be used interchangeably. If both refer to the same type of individual, the Board should pick one term or phrase and use it consistently in the final-form regulation.

*Subsection (a)  -  Responsibilities and conditions*

This subsection contains five subparagraphs. Our comments and questions address four areas regarding these subparagraphs.

First, the intent of the phrase "close supervision" in Subparagraph (a)(2) is unclear. The final-form regulation should specify the standards for the term "close supervision" or delete this subparagraph from the final-form regulation.

Second, Subparagraph (a)(3) mirrors Section 11(a)(8) of the Law (63 P.S. § 479.11(a)(8)). In discussing this provision, the Preamble states:

> By prohibiting the unlicensed employee from being paid based upon how much preneed business the employee brings into the funeral home, this provision is intended to reduce the employee's incentive to persuade a customer to select funeral services and merchandise whether or not that selection would be in the customer's interest.

What safeguards are in place to deter funeral entities and licensed funeral directors from persuading a customer to select services and merchandise that are not in the customer's interest regardless of whether unlicensed employees are involved?

Third, we have questions and concerns in two areas relating to Subparagraph (a)(4) which reads:

> A licensed funeral director of the funeral entity employing an unlicensed employee in this capacity shall consult face-to-face with each customer before entering into or offering to enter into a preneed funeral contract.

It is unclear whether this provision also applies to funeral entities that do not hire unlicensed employees to conduct preneed business. What are the requirements for entities or directors who do not have unlicensed employees involved in preneed business? Would the "face-to-face" rule apply to them? If not, could such a funeral director conduct preneed business via the postal service, email or telephone? If some form of "face-to-face" rule is retained in the final-form regulation, it should apply to all transactions, not just the ones where unlicensed employees are involved.

The House Committee, Pennsylvania Association for Autism and Intellectual Disabilities and other commentators expressed serious concerns with, and opposition to, the "face-to-face" requirement. It is our understanding that there may be hundreds to thousands of preneed contracts being completed via the postal service without "face-to-face" meetings. Many of these customers are confined to their residences for various health reasons. They live in various regions across the state. Many are also seeking to set aside preneed funds and avoid having them counted as resources in eligibility determinations for Social Security or Medical Assistance programs. Under a "face-to-face" mandate, these prearrangement services and the setting aside of resources may be unavailable. Given these conditions, is this new requirement feasible or necessary?

Before the Board requires "face-to-face" meetings, it should determine whether there are sufficient numbers of licensees available to meet with these parties and whether a "face-to-face" rule is needed. The final-form regulation could provide for flexibility and consumer choice by requiring that customers be given options such as: 1) "face-to-face" consultation; 2) teleconference; 3) email, facsimile or postal service; or 4) communication via intermediaries or unlicensed employees.

Fourth, Subparagraph (a)(5) contains language for a prescribed notice stating that a document presented by an unlicensed employee is not a binding contract. The Pennsylvania Funeral Directors Association (PFDA) and other commentators questioned the need for this requirement. Since a preneed contract must be signed by a funeral director, why is the prescribed notice necessary?

As an alternative to this notice, the Board should consider requiring a different disclosure statement. This disclosure would inform customers that an agent or employee is not a licensed funeral director and is acting only as an employee or agent for the licensed funeral director(s). In

3

part, the language of this disclosure could mirror Section 15(1) of the Law (63 P.S. § 479.15(1)) which is entitled "What constitutes practice." Section 15(1) reads:

> A person, either individually or as a member of a partnership or of a corporation, shall be deemed to be practicing as a funeral director within the meaning and intent of this act who:

> (1) holds himself out to the public in any manner as one who is skilled in the knowledge, science and practice of funeral directing, embalming or undertaking, or who advertises himself as an undertaker, mortician or funeral director.

By disclosing that the unlicensed person is not practicing as a person skilled in the profession, it would prevent any misconceptions on the part of customers as to whether the unlicensed person is practicing as a licensed funeral director.

*Subsection (b)  -  Permitted activities*

This subsection describes what an unlicensed employee may do in conducting preneed business. The employee may:

- Distribute general price lists of the employing funeral entity only.

- Provide general assistance... including communications with customers, not otherwise prohibited by the act or this chapter.

The Board submitted a copy of the federal court decision in *Walker v. Flitton*, 364 F.Supp.2d 503 (M.D. Pa. 2005) (*Walker*) with this proposed regulation. The Preamble of the proposed regulation states that in the *Walker* decision, "the court noted the responsibility of the Board to delineate with precision what conduct by unlicensed persons is permissible." The proposed regulation does not provide sufficient detail to satisfy the court's mandate. The final-form regulation should provide specific direction and concrete examples of the types of interaction and assistance that may be conducted by unlicensed employees in the preneed business.

*Subsection (c)  -  Prohibited activities*

This subsection includes a list of prohibitions that apply to unlicensed employees. The list is divided into seven subparagraphs. We have identified the following questions and issues with the language of these subparagraphs.

There is an overall concern. To justify these subparagraphs, the Preamble relies exclusively on the Commonwealth Court decision in *Ferguson v. State Bd. of Funeral Directors*, 768 A.2d 393 (2001)(*Ferguson*). The Board's position that assisting customers in the selection of services and merchandise constitutes the practice of funeral directing was upheld in *Ferguson*. However, in its opinion, the court clearly noted both its obligation to give deference to the Board's interpretation of its rules and regulations, and the court's limited scope of review. 768 A.2d at 398.

4

Several commentators raised fiscal and policy concerns regarding this subsection. In addition, the federal court in *Walker* clearly expressed a preference for prohibitions on commercial speech that are "narrowly tailored" to achieve a governmental interest. 364 F.Supp.2d at 525-526. In this light, we would encourage the Board to review its interpretation of the Law and consider allowing for more active and robust participation in preneed activities by unlicensed employees.

As the Board responds to commentators' concerns and questions regarding Subsection (c), it should:

1)  Specifically identify the governmental interest or policy objective that each prohibition is designed to achieve.

2)  Clarify how the provision is "deemed necessary or proper to safeguard the interests of the public and the standards of the profession" (63 P.S. § 479.16(a)).

3)  Explain how the provision has been "narrowly tailored" to implement the governmental interest or policy objective.

The Board should provide solid and factual documentation to explain how each restriction on commercial speech will effectively protect the public from real and ongoing harm.

Subparagraph (c)(1) requires that an unlicensed employee be associated with only one funeral entity. Several commentators assert that this requirement will place a hardship on smaller funeral homes, especially in rural areas. A smaller business may not be able to hire an employee to assist in preneed business. But, two or more funeral homes could combine resources to share an employee who focuses on preneed business. Removing this option may reduce the ability of funeral entities to offer preneed services and increase the price of such services (since a single funeral home will need to charge more to compensate its employee). The Board should explain the need for this requirement and how it will impact the availability and cost of services.

Subparagraph (c)(2) prohibits the unlicensed employee from preparing "worksheets, proposals or other presentations." This language is overly broad. Can these employees work independently and away from customers in preparing these items with or for a licensee?

Subparagraphs (c)(3) and (c)(4) prohibit the involvement of unlicensed employees in communications with customers concerning the "actual selection of funeral services and merchandise incidental to the services" and making of "financial arrangements." How will the Board monitor these activities and enforce the prohibitions? Another concern is possible confusion relating to sale of "merchandise." Any person may sell merchandise under Act 1059 of 1963 (63 P.S. §§ 480.1-480.11) (Act 1059), also known as the Future Interment Law. Currently, unlicensed vendors legally sell funeral merchandise in Pennsylvania. The *Walker* court also observed that unlicensed individuals may sell funeral merchandise. 364 F.Supp.2d at 525-526. The Board should address this potential conflict between Act 1059 and its interpretation of the Law, and it should explain what is meant by "merchandise incidental to the services."

Subparagraph (c)(5) would not allow an unlicensed employee to "[o]ffer to or enter into a preneed funeral contract with any customer on behalf of the funeral director or funeral entity." Would an unlicensed employee be allowed to deliver or present a copy of a draft contract to a customer? If not, why?

*Subsection (d) - Insurance agents*

There are two concerns with this subsection.

First, this is the only subsection which uses the word "agent." The House Committee requested more information concerning the impact of this proposed regulation on other professions but it did not identify all these professions as "agents." The federal court in *Walker* referred to "agents" in conjunction with employees of a funeral director even though the specific circumstances of the case were limited to employees of funeral entities. 364 F.Supp.2d at 507, 513, 520, 522-526, 528 and 529. The *Walker* decision also used the words "employer" and "principal" in discussing employees and agents. 364 F.Supp.2d at 506, 520, 522 and 528. The final-form regulation should provide specific direction for agents working on preneed accounts, or the Board should explain why they are not included.

Second, the last subsection includes the phrase "a licensed insurance agent acting under licensure from the Insurance Department." This reference is incomplete and out-of-date. Act 147 of 2002 (Act 147) changed this term to "insurance producer." However, the existing regulations for the Insurance Department at 31 Pa. Code Chapters 37 and 39 have not yet been revised and continue to use the terms "insurance agents and brokers." These two chapters remain effective to the extent they are not "clearly inconsistent" with the new act (40 P.S. § 310.98). If this subsection is retained in the final-form regulation, it should be revised to include references to the existing regulations and Act 147.

### 4.  General - Fiscal impact; Reasonableness; Implementation procedures; Feasibility; Need; Clarity.

PFDA submitted extensive comments supporting the goal of the proposed regulation. It also made several suggestions for revisions and additions of new and substantive provisions. Its recommendations included proposals for new rules and procedures regulating registration and bonding, direct mail, seminars, and telemarketing. We urge the Board to carefully examine and consider PFDA's recommendations.

However, if the Board opts to pursue promulgation of substantial and extensive provisions that were not included in the notice of proposed rulemaking in the *Pennsylvania Bulletin* for this regulation, it should introduce these programs via a future notice of proposed rulemaking. The general public and General Assembly should be afforded a full opportunity to review such provisions and offer comments before such substantive proposals are submitted in a final-form regulation.

# Facsimile Cover Sheet



Phone:    (717) 783-5417
Fax #:    (717) 783-2664
E-mail:   irrc@irrc.state.pa.us

## INDEPENDENT REGULATORY REVIEW COMMISSION
### 333 MARKET STREET, 14ᵀᴴ FLOOR, HARRISBURG, PA 17101

|  |  |
|---|---|
| **To:** | Tom Blackburn |
|  | Cynthia Montgomery |
| **Agency:** | Department of State |
|  | Licensing Boards and Commissions |
| **Phone:** | 3-7200 or 3-3394 (Cynthia) |
| **Fax:** | 7-0251 |
| **Date:** | November 28, 2007 |
| **Pages:** | 8 |

**Comments:** We are submitting the Independent Regulatory Review Commission's comments on the State Board of Funeral Directors' regulation #16A-4816 (IRRC #2639). Upon receipt, please sign below and return to me immediately at our fax number 783-2664. We have sent the original through interdepartmental mail. You should expect delivery in a few days. Thank you.

Accepted by: _Cynthia K Montgomery_    Date: _11/28/07_

Fax5

# EXHIBIT "16"



POST &
SCHELL, PC
ATTORNEYS AT LAW

17 North Second Street
12th Floor
Harrisburg, PA 17101-1601
717-731-1970 Main
717-731-1985 Fax
www.postschell.com

James J. Kutz

jkutz@postschell.com
717-612-6038 Direct

October 29, 2007

*Via Hand Delivery*

Michelle T. Smey
Department of State
2601 North Third Street
P.O. Box 2649
Harrisburg, PA 17105-2649

RE:   Comments on Proposed Pre-Need Regulation # 16A-4816 (Pre-Need Activities of Unlicensed Employees) published 9/29/07 Submitted on Behalf of Pennsylvania Cemetery Cremation & Funeral Association

Dear Ms. Smey:

On behalf of the Pennsylvania Cemetery Cremation & Funeral Association ("PCCFA"), allow this correspondence to serve as the written comments to the draft Regulations of the State Board of Funeral Directors (the "State Board") relating to "Preneed Activities of Unlicensed Employee [sic]", a proposal which appeared on September 29, 2007 at 37 Pa. B.5257 in the Pennsylvania Bulletin. Pursuant to that rule-making notice, PCCFA submits its comments to the State Board through you.   Whereas I thank the State Board for the technical opportunity to present comments, it is with extreme pessimism that these comments will be meaningfully reviewed and considered by the Members of the State Board, given the history of this entire issue. Nevertheless, consistent with that statutory opportunity to respond, PCCFA wishes to go on record as opposing most strenuously this draft set of Regulations because it believes:  (1) the Regulations are unconstitutional; (2) the Regulations conflict with federal court decisional law involving a lawsuit to which the State Board itself was a losing party; (3) there is no need for this Regulation in its current form; (4) the regulatory scheme is patently anti-consumer, anti-disclosure, and anti-competitive; and (5) the end result of this Regulation's adoption will be to effectively stymy pre-need opportunities for the Pennsylvania consumer, thus securing a victory for those members of the funeral director profession who benefit far more substantially if funeral services are contracted for at-need (rather than pre-need) at a time when the death of a loved one and its concurrent grief predominate over logical decision-making.

Although the preamble to the draft suggests that the Regulations are proposed to be "responsive" to the [federal] court's mandate…"any summary reading of this Regulation confirms that the heart and soul of that federal court decision is being ignored, save some *de minimus* (and out of context) references in the Court Opinion as to what type of control or regulation the State Board

Michelle T. Smey
October 29, 2007
Page 2

might retain over trained employees and licensed insurance agents involved in the field of pre-need.

The Funeral Director Law has existed for more than half a century. The Future Interment Law has existed for approximately 45 years. Funeral directors have operated professionally and successfully over that lengthy period of time. Cemeterians have operated with dignity and success. Licensed crematories have operated as well over that period of time and sellers of funeral merchandise and licensed insurance agents involved in the sale of final expense insurance have similarly operated, with success, and with adequate protection to the consumer. Unfortunately, the State Board, the catalyst for the subject Regulations, has made a decision within the last several years to effectuate a monopoly within the death-care industry and it has systematically and, in most instances, successfully, achieved its desired goal of eliminating competition and preserving a system which retards a consumer's access to relevant information and competitive pricing. These subject Regulations are simply another example of that goal -- a goal which is strongly discouraged, if not precluded, by the language and intent of the Pennsylvania Regulatory Review Act of 1982, as amended, 71 P.S. § 745.1 et seq.

By way of background, this entire problem, a problem created by the Board, had its genesis in a 1999 "Resolution" which was adopted by the State Board. That Resolution was drafted by a trade organization (the Pennsylvania Funeral Directors Association); handed off to the State Board whose membership traditionally derives from PFDA activists; and predictably, adopted by the Board. That Resolution, which has now been strongly condemned by the federal court system, threatened everyone that the State Board would seek prosecution if anyone other than a licensed funeral director so much as spoke to a third party about the benefits or options relating to pre-need. The Board suggested, disingenuously, that the Resolution was necessary in order to address a "festering" problem, yet to that point in time (*to wit*, 1999), there was no evidence of any Pennsylvania consumer who had complained that he or she had been harmed from receiving information and/or having interaction with employees or agents of licensed funeral directors who provided pre-need information, pricing options, and discussed generally some of the benefits associated with entering into a pre-need contract, rather than awaiting the time of one's death. As this Board made clear that it intended to enforce that Resolution, legitimate and successful funeral directors, insurance agents, and trained employees of funeral directors brought suit in the United States District Court for the Middle District of Pennsylvania. Those individuals, as Plaintiffs, sought a declaration from the federal court that this Resolution, and the Board's threat of prosecution if the Resolution was violated, violated constitutional rights firmly ingrained into our jurisprudential system.

The case proceeded slowly but, ultimately, became the subject of discovery, after which motions for summary judgment were filed. On April 14, 2005, District Court Judge John E. Jones, III issued a 56-page Opinion and Order, wherein he declared that the Resolution and the Board Members' continued belief that the Resolution was a proper enunciation of Pennsylvania law, mandated the entry of judgment against the Board Members. Specifically, the Court concluded that the Funeral Board had no legitimate basis for prohibiting licensed insurance agents and

Michelle T. Smey
October 29, 2007
Page 3

trained employees of funeral directors from communicating honest information and otherwise interacting with prospective pre-need customers. In order to reach that determination, the Court was required to make several findings, all of which were adverse to this Board. The Court concluded that the First Amendment protected the communications between these agents/employees and prospective customers of pre-need. It concluded secondly that the Board Members could point to no <u>substantial</u> government interest that was advanced by the prohibition. It concluded thirdly that the resolution failed to advance any <u>legitimate</u> government interest. Finally, the Court concluded that the prohibition was far "more extensive than necessary" to serve any arguable government interest. In short, despite being given the opportunity to present the Court with any evidence that there was, in fact, this festering problem, the record demonstrated that no problem whatsoever existed except, perhaps, protectionism for the funeral director industry. Several passages from that opinion deserve discussion in this letter, inasmuch as the preamble to these Regulations suggests that it was the federal court decision which requires these Regulations. Whereas the Court did suggest that the Board had failed to provide clarity on the issue except for the adoption of the Resolution which, in effect, was a total ban on communication, the Court's analysis and logic hardly dictates the type of restricted activity now proposed by this Board. Indeed, any fair reading of the currently-proposed Regulation would lead any funeral director to not utilize or otherwise affiliate with any employee or insurance agent regarding pre-need sales for fear of prosecution under these Regulations.

By way of example, the Court rejected this Board's argument that only licensed funeral directors are competent to interact with pre-need customers, reasoning, *inter alia*, that the Board's consumer concerns are "overstated and thus misplaced...because the law requires all pre-need contracts to be signed by a funeral director, the funeral director must review his employee's work each time they submit a contract for his signature...". Clearly, the Court envisioned, as an allowable process, these agents and employees to prepare work sheets and to prepare contracts, subject, of course, to review and approval by the funeral director. The Court's decision could not be clearer. <u>See</u> 364 F. Supp. 2.d at 520.

The Court further concluded that there was absolutely "no evidence that an unlicensed individual working as the employee or agent of a licensed funeral director will give inaccurate or inappropriate information to consumers." Instead, as the Court noted, "there is a strong disincentive for that to take place, given the funeral director's clear exposure to sanctions by the Commonwealth. <u>Id</u>.

One of the fundamental absurdities in this Board's purported concern for consumers derives from Section 13(d) of the Funeral Director Law. Specifically, although the 1951 Funeral Director Law was silent regarding when and under what circumstances unlicensed employees of funeral homes could interact with customers for "at-need" funerals, in 1968, the law was amended to provide that:

Michelle T. Smey
October 29, 2007
Page 4

> "Tentative funeral arrangements after a death has occurred can be
> made by an unlicensed member of the funeral home staff in the
> event the licensed funeral director is temporarily absent."

See 63 P.S. § 479.13. Pursuant to that statutory grant, this Board proceeded to promulgate
Regulations dealing with unlicensed individuals and their ability to interact with at-need
customers (*i.e.*, the next-of-kin). The Board subsequently amended that Regulation in 1991 and
it now appears at 49 Pa. Code 13.205. Importantly, that Regulation allows the tentative
arrangements, effectuated by the unlicensed individual with the at-need customer, to remain in
effect, so long as those arrangements are "ratified" by a licensed funeral director within 48 hours.
This Board allows that unlicensed individual to interact with a licensed funeral director in order
to embalm; it permits the unlicensed individual to obtain and place obituary notices; it permits
the unlicensed individual to set a service time and it permits that individual to interact with
clergymen and cemetery officials. In short, by the time the licensed funeral director is required
to get involved and ratify the agreement, all arrangements and commitments have *de facto* been
accomplished. Beyond that, this Board's Regulation dealing with tentative arrangements at need
imposed no requirement whatsoever upon the knowledge, skill or training of the unlicensed
individual. Indeed, this Board apparently believes that it remains legitimate and reasonable for
the funeral home sexton or receptionist to make these arrangements, inasmuch as no regulatory
change is currently being proposed to Section 13.205. In this regard, it seems anomalous and
perplexing that this Board is so intent on restricting unlicensed agents of funeral directors from
having meaningful discussions with pre-need customers (who are not affected by grief and
death), yet essentially allow unfettered communication between a customer and the funeral
director's employee when exigent at-need arrangements are at issue. Accordingly, we would ask
the Board to explain why it feels compelled to severely restrict meaningful communication with
potential pre-need customers but leaves alone the current regulatory scheme which permits that
unlicensed individual to make all necessary funeral arrangements subject only to ratification
some 48 hours thereafter. Respectfully, there are many occasions where the funeral is conducted
within the 48 hours; this Board knows fully well that embalming decisions are made long before
the passage of 48 hours; and there are numerous religious beliefs which compel decision-making,
if not burial, within 48 hours. PCCFA does not necessarily suggest that the tentative
arrangement provision is dangerous. However, it does assert that, when the Board proffers as a
justification for the current Regulations " a need to protect the consumer", that assertion and its
veracity need to be weighed against Section 13.205. This very point was noted by the Federal
Court when, in condemning the Board's asserted governmental interest of protecting the public,
it countered as follows:

> "The Board Members' stated governmental interest clashes with
> the provision of the law which allows for unlicensed individuals to
> make temporary funeral arrangements after a death, when the
> possibility of misleading consumers is no doubt far higher."

Id. at 520.

Michelle T. Smey
October 29, 2007
Page 5

Other notable passages from <u>Walker</u> include the finding from the Court that the record developed
by the Board was completely "devoid of evidence supporting the proposition that consumers in
Pennsylvania have experienced difficulties at the hands of unlicensed individuals employed by
funeral directors who attempt to disseminate truthful information regarding pre-need funerals
and life insurance policies to fund them." <u>Id</u>. In other words, and as having been stated above,
there simply is no need for this type of restrictive regulatory scheme.[1]

The Court noted at least 34 states currently allow unlicensed agents of funeral directors or third
parties to sell pre-need funeral plans; it noted that a search of case law in those states uncovered
no examples of consumers being harmed from solicitation by unlicensed individuals; and the
Court also concluded that the consumer is better served when it is provided with exact prices for
funerals so that a customer can make a better-informed decision. <u>Id</u>. at 523-524.

In conclusion, the Federal Court noted that these employees and agents should be allowed to
interact with customers, to disseminate accurate price information, and to "solicit those
individuals for the purpose of having their employer sell pre-need funeral services and plans..."
Stated alternatively, the Court expressly noted its intent to "permit unlicensed individuals to
<u>discuss</u> pre-need plans with consumers so long as these communications occur under the
auspices, employment, direction and control of a licensed funeral director...". <u>Id</u>. at 527.

With all due respect, it is difficult to understand how this Board can fairly proffer the
Regulations that now seeks to adopt. Indeed, the currently-proposed Regulations are, in all
material respects, identical to the draft Regulations first circulated by this Board relating to
unlicensed activity on or about November 3, 2005. <u>See</u> Exhibit "A".[2] As this Board is well
aware, in response to those exposure draft Regulations, numerous comments were submitted,
many of which were in vehement opposition to the restrictive nature of the scheme. This Board
agreed to hold a public hearing work session on December 12, 2005, purportedly for the purpose
of exploring further the significant concerns of many of those affiliated with the death-care
industry. In fact, as a result of that session, the Board indicated a willingness to receive draft
Regulations different from that which it had proposed and, pursuant to that invitation, PCCFA,
under letter dated January 9, 2006, tendered a comprehensive set of Regulations, which, in our
opinion, were even-handed, allowed for reasonable communication; yet fully protected any
arguable consumer interest. <u>See</u> Exhibit "C".

On March 21, 2006, this Board held a "regulations committee meeting" to further discuss an
appropriate set of Regulations to deal with the interaction of insurance agents and employees of
funeral directors involved in pre-need sales. Whereas certain members appeared to be generally

---

[1] The Court also noted that the Board was given every opportunity to cite to consumer complaints, studies or other
analyses which would support its assertion that consumer injury would flow if unlicensed individuals were involved
in pre-need planning. However, as the Court noted, "none of the Defendants (meaning the State Board Members)
put forth <u>any</u> evidence that consumers had been harmed by the unlicensed solicitation of pre-need services. <u>Id</u>. at
523.

[2] One of those who commented in opposition to those draft Regulations was PCCFA and we incorporate those
concerns into this set of comments. <u>See</u> Exhibit "B" hereto.

interested in the concerns raised by the numerous different entities which had filed comments, other members appeared intractable and intent on pushing through that which had been initially drafted and so strenuously objected to. Perhaps even worse, certain Board Members appeared to respond to Judge Jones' Opinion with destain and disrespect. Indeed, one Board Member commented that the Judge did not "really understand how funeral directing operates" and a counsel representing PFDA wondered out loud "how much the Judge really understood". On an earlier occasion, a Member of this Board indicated that she did not "care" what Judge Jones said, specifically stating "who cares what the Judge said". Copies of these relevant excerpts are attached hereto as Exhibit "D", lest there be any question as to the accuracy of this correspondence.

Ultimately, this Board issued a slightly-revised regulatory schema and again circulated same for comment. Unfortunately, although a couple of *di minimus* changes did appear, the overwhelming problems associated with the initial draft remained. See second draft attached hereto as Exhibit "E". As a result, on August 8, 2006, the undersigned, on behalf of PCCFA, directed correspondence to executives within the Department of State, as well as the Chief Counsel of the Independent Regulatory Review Commission urging, for a second time, that these overly restrictive provisions be rejected as anti-consumer, anti-competitive and inconsistent with the theme and discussion of Federal Court Judge John Jones in Walker v. Flitton. A copy of this August 8, 2006 letter is attached hereto as Exhibit "F".

Although PCCFA and the undersigned were not privy to everything which transpired subsequent to August 8, 2006, we do know that certain concerns were raised at the highest levels of the executive branch. In fact, on October 25, 2006, the Governor's Policy Office advised that said Office, along with the General Counsel's Office and Board Counsel "are all of one mind and agree that the Board cannot adopt and promulgate any regulations under Section 13(a) of the Funeral Director Law, in light of the rulings in the Ferguson and Walker cases. That notice goes on to advise that counsel for the Board has agreed "to draft an opinion to this effect." See Exhibit "G".

Saddled with the direction of the Governor's Office, this Board, apparently through some of its agents, crafted a revised set of Regulations, which, although not acceptable in its entirety, provided a major step in the right direction. See cover letter and revised Regulations under date of February 6, 2007, attached hereto as Exhibit "H". Indeed, on March 9, 2007, the undersigned, on behalf of PCCFA, went so far as to compliment the Administration and the Board for its diligent assessment and vetting of the numerous comments submitted. PCCFA noted that the most-recently circulated Regulations had "moved significantly in what we believe to be the proper direction" but did go on to point out certain sections of the draft which PCCFA felt needed further tweaking. A copy of this March 9, 2007 comment letter is attached hereto as Exhibit "I".

Whatever occurred between March 9, 2007 and this Board's meeting in May of 2007 is not entirely clear. What is clear, however, is that the draft Regulations, which appeared in the

Michelle T. Smey
October 29, 2007
Page 7

Pennsylvania Bulletin on September 29, 2007 are identical in every material regard to that wholly objectionable set of Regulations that were circulated in late 2005. To state the issue differently, although this Board apparently paid lip service and went through the motions of supposedly considering comments and circulating more reasonable regulations, that endeavor was apparently nothing short of "show" as these current Regulations aptly and unfortunately demonstrate. Equally concerning is the question of how these currently-proposed Regulations made their way to the Pennsylvania Bulletin in the face of the Administration's October 25, 2006 determination that Walker v. Flitton precluded such a restrictive scheme.

Turning to the specifics of this currently-proposed Regulation, PCCFA first wishes to incorporate those comments which it proffered back on December 5, 2005, as well as those comments offered on August 8, 2006, inasmuch as those two prior drafts are essentially identical to the current one. In addition to that incorporation, we specifically object to Section 13.206(a) in its entirety. First, it is unclear why there is now no reference to "agents" of funeral homes, rather only to employees. Prior drafts included agents in the Regulation and there seems no legitimate explanation for exclusion of agents. We fear that the deletion of "agent" would prohibit a relationship other than employer/employee and, in the case of an insurance agent, there is no valid reason why an agency relationship would be improper, so long as the funeral director was ultimately responsible for the acts of the agent. This concern (i.e., the removal of "agent") is a theme which appears throughout the Regulations.

Second, subsection (a)(3) prohibits the funeral director from paying any commission for those employees who secure business for the funeral director. This prohibition is absurd even though similar language first appeared in the Funeral Director Law. Clearly the Federal Court did not envision that its order would permit employees to solicit business for the licensed funeral director, yet prohibit that employee from receiving remuneration for his or her effort. In all likelihood, if the Legislature had any concern with funeral directors paying "finder's fees", the focus was to preclude, for example, hospitals, morgues and coroners from having an "understanding" with one particular funeral director. To that extent, any provision of the Funeral Director Law which could be read as prohibiting the employees and agents of the type we are discussing herein from receiving remuneration was eliminated, at least impliedly by Judge Jones and must be eliminated in subsection 3.

Next, it is unclear why the Board would require that a licensed funeral director meet and consult with every customer before a contract can be entered into. There is absolutely no prohibition against a consumer entering into a contract with a funeral director by phone, by telefax, or by mail. Everyday, funeral arrangements are made via telephone; the agreement is roughed-out and forwarded to the customer; and the customer returns the contract executed. To impose a requirement of a face-to-face meeting for pre-need agreements, yet to have no similar obligation for at-need contracts or contracts entered into directly between a funeral director and a customer makes no sense. Indeed, the sole purpose for this requirement is to make pre-need sales, through the use of agents, so burdensome and meaningless that pre-need opportunities will fall by the wayside. If the Regulations were to read that a consumer be given the option of meeting face-to-

Michelle T. Smey
October 29, 2007
Page 8

face with the funeral director, that would certainly be more logical, as such is the case in any arrangement, pre-need or at-need.

Subsection (5) is equally objectionable. Indeed, it suggests that the only "document" that the agent or employee can provide to the customer is the price list of the particular home the employee is representing. Because PCCFA believes that pre-need discussions necessarily require worksheets and discussions, subsection (5) as a basic premise, is objectionable. Indeed, subsection (5) indicates precisely the limits which this Board would allow any agent to perform and that limitation is to hand a price list to a customer and then, when asked further information by the customer, to stand mute for fear of being charged with the "unlicensed practice of funeral directing". Indeed, proposed section (b)(2) creates that precise dilemma. Whereas it indicates that the employee can provide "general assistance", that same section warns that the employee cannot do anything "otherwise prohibited by the Act or this subchapter". Stated alternatively, this subsection will become a font for prosecution – a favored method by which this Board creates and interprets law. However, PCCFA believes that *quasi penal* prosecutions should not be the means by which laws are defined by this Board. Finally, why preclude an employee or agent from also providing price lists of other funeral homes? As the price list is an FTC-ordered public document, why play "hide the peanut" with the customer? The customer is far better served by having in-hand comparable pricing so a truly meaningful decision can be made.

This brings me to the next provision and our objections. In subsection (c) the Board proposes that an employee may not be associated with any other funeral entity. Why? What is important is that the employee make clear to the prospective customer who the funeral director is that he or she is representing. Why could not a trained employee, or for that matter, a trained licensed life insurance agent work for one funeral home in one area and work for another funeral home in another geographical area? In those outlying areas of our Commonwealth, where populations are sparse, it is most logical that insurance agents, traveling said territory, could and would be affiliated with more than one funeral home, depending upon the location of the customer. Again, this proposed provision is simply another effort to make financially untenable the use of agents or employees.

Subsection (c)(2) is one of the most objectionable provisions being proposed. It is simply illogical and clearly inconsistent with Judge Jones' discussion, to suggest that the life insurance agent or trained employee cannot pull out a work sheet and discuss with the customer how much it would cost for a funeral service and the type of merchandise the customer is contemplating. PCCFA is not suggesting that the employee or agent be able to "contract" with the customer. However, when a pre-need customer takes the time to meet with an agent, one would expect that the customer intends the encounter to be meaningful; to allow for the dissemination of enough information so as to make appropriate decisions and analyses; and substantive enough so as not to make this encounter the equivalent of handing out a flyer under one's front door mat. Along these same lines, subsection (c)(3), which prohibits the agent from engaging in "discussions or other communications with customers regarding the actual selection of funeral services and

Michelle T. Smey
October 29, 2007
Page 9

merchandise" suffers from the same absurdity. Again, the intent clearly renders the use of employees or agents worthless, if this type of language is adopted.

Subsection (4) of section (b) now prohibits the individual from making financial arrangements. Query: If a licensed insurance agent first discusses the funding of a pre-need agreement with life insurance, why not allow him to discuss financial arrangements?  Again, as with the other sections, subsection (4) is not reasonable; it is excessively restrictive; and its design and purpose is to render pre-need agents and employees of the funeral director meaningless.

Finally, subsection (7) of (c) prohibits any activity that "constitutes the practice of funeral directing under the Act".  If anything has been made clear by this Honorable Board, it is their belief that anyone who discusses any aspect of any funeral service or any aspect of funeral merchandise is engaged in the practice of funeral directing.  Subsection (7) is a trap for the unwary and will have the practical effect of impeding any funeral director's use of employees or agents.  Indeed, subsection (7) is akin to the same Resolution which this Board adopted in 1999, only to have the Federal Court declare it unconstitutional!.

PCCFA submits that a regulatory schema, similar to that proposed by it through its letter of January 9, 2006 (see, Exhibit "C") is a fair and reasonable resolution of this issue.  The currently proposed Regulations, however, are not fair and they certainly are not necessary.

Very truly yours,

James J. Kutz

JJK:dlh

cc:     PCCFA Board

# EXHIBIT "17"

# CAVANAGH FAMILY FUNERAL HOME, INC.

301 chester pike, norwood, pennyslvania 19074
phone: 610-532-3120

bart h. cavanagh, sr.
supervisor

24 October 2007

John H. Jewett
Independent Regulatory Review Commission          Via e-mail to: irrc@irrc.state.pa.us
333 Market Street, 14th Floor
Harrisburg, Pa. 17101

        **RE:** Proposed Pre-Need Regulation #16A-4815 and
        Proposed Regulation #16A-4816 (Pre-Need
        activites of unlicensed employees)published
        9.29.07  as put forth by the State Board of
        Funeral Directors.

Dear Mr. Jewett:

I am writing to you to offer a historical perspective relative to the State Board of Funeral Directors ("SBFD") and the real motivation for the above referenced proposed regulations.

I was appointed to the SBFD in 1980 by then Governor Thornburgh and was subsequently approved by the Senate.  At the time of my appointment, I was not and am not presently a member of the Pennsylvania Funeral Directors Association ("PFDA"). As a member of the SBFD, my allegiance was to the citizens of Pennsylvania and not the PFDA which almost immediately resulted in my becoming a target for removal from the SBFD.

After serving as vice chairman of the SBFD for one five year term and being commended by Governor Thornburgh for excellent service, I was reappointed to serve a second term. However, as a direct result of my serving the interest of Pennsylvania citizens instead of the PFDA, I was not confirmed by the Senate a second time, due to a statewide legislative effort against my confirmation by PFDA.  In need of an SBFD board member who would serve its needs as opposed to those of the public, the PFDA issued a "legislative alert" letter to all of its undertaker members strongly urging them to contact their senators to vote "no" on my confirmation for a second term of the SBFD.

The senate's failure to confirm my reappointment had nothing to do with my service record or integrity which is evidenced by my appointment and senate confirmation to the

Pennsylvania Public Television Commission shortly after I was blocked from serving a second term on the SBFD.

The PFDA called for my ouster as the result of my advocacy for the concept of pre-arranged funeral counseling in order to educate consumers and create competition, both of which tend to reduce customer costs while increasing customer service.

The PFDA continues to exert undue influence on the SBFD. Its Funeral Director Members all have been incubated in the PFDA's philosophical hen house. By way of illustration, when I served on the SBFD, former PFDA president, John Lutton, then Board Chairman, had a phone in the conference room that served basically as a direct line to J. Scott Calkins, Esquire, legal counsel for the PFDA. In house- counsel for the SBFD was down the hall from the SBFD conference room and yet Mr. Lutton would instead call counsel for the PFDA when he required an opinion on a legal issue.

During my time on the SBFD, in addition to serving the needs of the public instead of the PFDA, I also ended Mr. Lutton's practice of using PFDA counsel instead of SBFD counsel for advice on SBFD issues which presented another reason for the PFDA to call an end to my time on the SBFD.

Having noted my first-hand knowledge of the regulatory capture between the SBFD and the PFDA I turn my attention to the above referenced proposed regulations which if approved will make offering pre-need education, goods and services to the public very difficult and intimidating for ethical funeral directors. Failure to offer pre-need options to the public will allow certain funeral directors to maintain the very emotional "time of death atmosphere" in which consumers are likely to be taken advantage of at the hands of opportunistic undertakers.

An educated and unemotional consumer poses a problem for the PFDA's predatory "marketing mentality" in that the educated and unemotional consumer is not likely to spend as much money when in a calm state as they might when forced to arrange and pay for a funeral during a time of distress and emotional vulnerability. In fact, maintaining that type of predatory practice is what these proposed regulations are really about.

If the proposed regulations are approved they will make pre-need services so unattractive and intimidating that ethical funeral directors will not offer pre-need care. As part of the PFDA's campaign to abolish pre-need, the SBFD recently fined a funeral director $89,000.00 for what could easily be explained as a misunderstanding regarding fees for counseling pre-need clients. In that instance, nothing was hidden and no consumer was hurt. Why this funeral director was made a target is unknown to me. Most disturbing is that the funeral director was represented in that case by a former SBFD prosecutor who is now in-house counsel to the PFDA and who also, between those two positions, was an unlicensed person associated with pre-need funeral sales.

By writing this very letter I have made myself and family a target of The Board as in my opinion it acts as an enforcer and metes out discipline as the PFDA sees fit.

Be aware that the proposed regulations are a tool by which the PFDA can retain its grip on the SBFD in an effort to maintain the "at-need" funeral market to the exclusion of the "pre-need" funeral market. At-need sales present an opportunity for predatory funeral directors to take advantage of people that results in a financial windfall for the predatory undertaker. Pre-need sales present an opportunity for the many Pennsylvania funeral directors who serve sincerely and are ethical to counsel, educate and assist in difficult choices that will not result in a financial hardship to the consumer.

Much of this letter echoes testimony I gave 20-odd years ago before IRC which resulted in the PFDA issuing its "legislative alert" which in turn resulted in my removal from the SBFD. The concept which I advocate is a simple one -- providing the highest level of service to the consumer. By offering education and advice in the unemotional pre-need setting as opposed to the time constraints present when arranging a service at the time of death, the pre-need consumer can take all the time they want to make a decision; days, weeks, whatever, a tough environment for a predatory funeral director. Approval of the proposed regulations advocates fewer consumer choices.

Having heard all the legal reasons for not approving these regulations, hopefully my historical perspective will create a greater understanding of this issue.

Sincerely,


Bart H. Cavanagh, Sr.

P.S. It is comical that existing regulation will permit the funeral home maintenance man to arrange an at need funeral and determine if embalming is necessary as long as the licensee okays it in forty-eight hours; but, the unlicensed maintenance man cannot make a pre-need arrangement to be ratified later by the licensee.

# EXHIBIT "18"

100 CE/PROV (8/05)

**PENNSYLVANIA ◆ CE PROVIDERS ◆ INSTRUCTIONS**

# STATE BOARD OF FUNERAL DIRECTORS

**Mailing Address:**
**State Board of Funeral Directors**
**P.O. Box 2649**
**Harrisburg, PA 17105-2649**

Tel: 717-783-3397  Fax: 717-705-5540
E-Mail: st-funeral@state.pa.us
Website: www.dos.state.pa.us/funeral

**Courier Address:**
**State Board of Funeral Directors**
**2601 North Third Street**
**Harrisburg, PA 17110**

## PROVIDER APPLICATION FOR CONTINUING EDUCATION COURSE APPROVAL

### Follow Instructions Below and Submit All Required Documents

## Information

1. Application and fee must be received at least **60 days prior** to course/program presentation.

2. Subject matter for continuing education courses must be limited to courses pertaining to the enhancement of the professional skills as a Funeral Director.

3. Participants must be physically present to receive credit.

4. Courses in Office Management or Marketing will **not** be approved.

5. The Board reserves the right to reject a submitted course which is outside the scope of practice of funeral directing or is otherwise unacceptable because of presentation, content or failure to meet the criteria of the regulations.

6. Providers shall inform the Board of any material modifications in approved courses.

7. Maintain for your records a copy of your completed application prior to submission.

## Provider Responsibilities (§13.405)

1. Disclose in advance to prospective attendees the objectives, content, teaching method and number of hours of continuing education credit.

2. Open each course to all licensees.

3. Provide adequate physical facilities for the number of anticipated participants and the teaching methods to be used.

4. Provide accurate instructional materials.

5. Employ qualified instructors who are knowledgeable in the subject matter.

6. Evaluate the program through the use of questionnaires of the participants and instructors.

7. Issue a certified continuing education record to each participant.

8. Retain attendance records, written outlines, and a summary of evaluations for 5 years.

## Demonstration of Embalming Techniques (§13.406)

1. With prior approval of the Board, embalming of human remains to demonstrate techniques during a program of continuing education will not be considered to be the practice of funeral directing at an establishment not authorized by the Board.

2. Only a licensed funeral director may demonstrate embalming techniques at a program of continuing education in this Commonwealth.

# STATE BOARD OF FUNERAL DIRECTORS
P. O. Box 2649, Harrisburg, PA  17105-2649    717-783-3397

## Instructions

**The following attachments must be submitted with the application:**

1.   Fees:

   (a)  $100.00 fee for initial provider application **(first time providers only)**

   (b)  $100.00 fee for education course approval

   Check or money order made payable to the *"Commonwealth of Pennsylvania."*

   *NOTE:  A $20.00 processing fee will be assessed for any payment returned by your bank, regardless of the reason for non-payment.*

2.   Copies of course/program and syllabus which show the following:

   - Provider's name and address
   - Name of Course Coordinator
   - Dates and locations of course/program
   - Information on Instructors:  Name, Title, Affiliations, and Degrees
   - Course schedule
   - Evaluation Methods
   - Number of Hours
   - Method in which Provider certifies attendance

3.   Evidence of the course pertaining to the following subjects:

   - Basic and health sciences including anatomy, chemistry, bacteriology, pathology, hygiene and public health.

   - Funeral Service Arts and Sciences including embalming and restorative arts.

   - Funeral law, psychology, funeral principles, and directing.

4.   No correspondence courses, internet courses or courses in office management or marketing will be approved.

100 CE/PROV (8/05)

**PENNSYLVANIA ◆ CE PROVIDERS ◆ APPLICATION**

# STATE BOARD OF FUNERAL DIRECTORS

<u>Mailing Address:</u>
**State Board of Funeral Directors**
**P.O. Box 2649**
**Harrisburg, PA 17105-2649**

Tel: 717.772.8528  Fax: 717.705.5540
E-Mail: st-funeral@state.pa.us
Website: www.dos.state.pa.us/funeral

<u>Courier Address:</u>
**State Board of Funeral Directors**
**2601 North Third Street**
**Harrisburg, PA 17110**

## PROVIDER APPLICATION FOR CONTINUING EDUCATION COURSE APPROVAL

### Follow Attached Instructions and Submit All Required Documents

### (SUBMIT AT LEAST 60 DAYS PRIOR TO COURSE PRESENTATION)

| Section 1 | Provider Information | Please Print or Type |
|---|---|---|

| | |
|---|---|
| **Provider Name** | |
| **Address** | STREET: |
| | CITY:                STATE:      ZIP: |
| **FID Number:** (If applicable) | |
| **Telephone** | Ext. |
| **E-Mail Address** | |

| Section 2 | Fee - $100.00 for Initial Provider | Fee - $100.00 for Course Approval |
|---|---|---|

Submit check or money order payable to the
"Commonwealth of Pennsylvania".
Fees are non-transferable and non-refundable.

NOTE:    A $20.00 processing fee will be
assessed for any payment returned by your
bank, regardless of the reason for non-payment

| Section 3 | Course Information |
|---|---|

| | |
|---|---|
| **Course Title** | |
| **Total # of Hours Requested** | |
| **Subject(s) Offered** | |
| **Date/s Offered** | |
| **Course Locations** | |
| **Method of Certifying Attendance** | |
| **Course Objectives** | |

| OFFICIAL USE ONLY | | |
|---|---|---|
| Reviewed by: | Date: | |
| ☐ Approved    ☐ Disapproved | | Provider #: |

100 CE/PROV (3/05)

**PENNSYLVANIA STATE BOARD OF FUNERAL DIRECTORS**

P. O. Box 2649, Harrisburg, PA  17105-2649    717-783-3397

| **Section 4** | **Course Contact Person/Coordinator** |
|---|---|

**Name**

**Address**    Street:

City:                                                                 State:         Zip Code:

| **Telephone** | | | | | | | | | | | | **Ext.** | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**E-Mail Address**

| **Section 5** | **Course Information** |
|---|---|

| **Course Title** | |
|---|---|
| **Total # of Hours Requested** | |
| **Subject(s) Offered** | |
| **Date/s Offered** | |
| **Course Locations** | |
| **Method of Certifying Attendance** | |
| **Course Objectives** | |

| **Section 6** | **Instructor Information** |
|---|---|

| **Instructor Name** | **Title** | **Affiliation** | **Degree** |
|---|---|---|---|
| 1) | | | |
| 2) | | | |
| 3) | | | |

| **Section 7** | **Certification** |
|---|---|

By signing below, I verify that this form is in the original format as supplied by the Department of State and has not been altered or otherwise modified in any way.  I am aware of the criminal penalties for tampering with public records or information pursuant to 18 Pa. C.S.§4911.

Additionally, I certify that the statements in this application are true and correct to the best of my knowledge, information and belief, and that I am of good moral character.  I understand that any false statement made is subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities and may result in the suspension or revocation of my license or certificate.

**Coordinator's Signature:**                                    **Date:**

# EXHIBIT "19"

From: Batson, Monty [mailto:mbatson@state.pa.us]
Sent: Wednesday, January 23, 2008 10:29 AM
To: Kutz, James
Subject: Proposed consent agreement for ████████████ Cremation Center

Here is the updated consent agreement. In an effort to memorilize our conversation today, I would like to reiterate the Commonwealth's position. An unlicensed crematory cannot contract with the general public to provide cremation services for either at-need or pre-need. It is immaterial that the unlicensed crematory is owned by a funeral director. It is my understanding that all contracts that were entered into by ████████. ██████ Cremation Center are being handled by ███████Cremation Service, Inc. If ████████Cremation Service, Inc. wants to change its name to ██████████ Cremation Center then that is something he would have to take up with the Board. He may want to get something together and have it to the Board Administrator by Friday and ensure that it is on the agenda for February. Until a name change is granted or ███████████ Cremation Center becomes licensed it cannot enter into contracts to provide cremations. If there are any questions or concerns please contact me. As I indicated, I need to have the signed consent agreement, by you and your clients, and the civil penalty to the Board by this Friday, so time is of the essence. Thank you for your cooperation in this matter.

Sincerely,

Monty J. Batson, Esquire
Prosecuting Attorney
Pennsylvania Department of State
Office of Chief Counsel
(717) 783-7200

<>

This message is from the law firm Post & Schell, P.C. . This message and any attachments may contain legally privileged or confidential information, and are intended only for the individual or entity identified above as the addressee. If you are not the addressee, or if this message has been addressed to you in error, you are not authorized to read, copy, or distribute this message and any attachments, and we ask that you please delete this message and attachments (including all copies) and notify the sender by return e-mail or by phone at 215-587-1000. Delivery of this message and any attachments to any person other than the intended recipient(s) is not intended in any way to waive confidentiality or a privilege. All personal messages express views only of the sender, which are not to be attributed to Post & Schell, P.C., and may not be copied or distributed without this statement.

2/12/2008