# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERNEST F. HEFFNER, et al.,      :      No. 4:08-CV-990
                                  :
                 Plaintiffs   :      JUDGE JOHN E. JONES, III
                                  :
                   v.           :
                                  :
DONALD J. MURPHY, et al.,       :
                                  :
              Defendants   :

## BRIEF IN SUPPORT OF PLAINTIFFS'
## <u>MOTION FOR INTERIM AWARD OF ATTORNEYS' FEES</u>

James J. Kutz, Esquire
Barbara A. Zemlock, Esquire
POST & SCHELL, P.C.
17 North Second Street, 12th Floor
Harrisburg, PA  17101
(717) 731-1970

Gary L. James, Esquire
JAMES SMITH DIETTERICK &
CONNELLY LLP
134 Sipe Avenue
Hummelstown, PA  17036-9137
(717) 533-3280

Dated:  May 22, 2012               *Counsel for Plaintiffs*

# TABLE OF CONTENTS

I.    PROCEDURAL HISTORY AND STATEMENT OF FACTS .......................1

II.   STATEMENT OF QUESTIONS INVOLVED .............................................5

III.  ARGUMENT ...........................................................................................5

    A.    Plaintiffs Are Entitled to Fees as Prevailing Parties. ............................5

    B.    An Award of Fees Is Appropriate at This Time.....................................6

    C.    The Fees Requested By Plaintiffs Are Reasonable. ...............................8

        1.    Counsels' Rates Are Reasonable. ...............................................10

        2.    The Hours Expended Are Reasonable. ........................................14

IV.   CONCLUSION .........................................................................................22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Benjamin v. Department of Public Welfare,*
    807 F. Supp. 2d 201 (M.D. Pa. 2011) ................................................ 9, 10, 15

*Evans v. Port Authority,*
    273 F.3d 346 (3d Cir. 2001) ....................................................................... 10

*Fox v. Vice,*
    131 S. Ct. 2205 (2011) ........................................................................ 5, 6, 9

*Hanrahan v. Hampton,*
    446 U.S. 754 (1980) ............................................................................ 6, 7, 8

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ....................................................... 6, 9, 14, 15, 16, 17

*Jimmie v. Department of Public Welfare,*
    2010 U.S. Dist. LEXIS 127805 (M.D. Pa. Dec. 2, 2010) ........................... 10

*Lanni v. New Jersey,*
    259 F.3d 146 (3d Cir. 2001) ....................................................................... 10

*NAACP v. Wilmington Medical Center, Inc.,*
    689 F.2d 1161 (3d Cir. 1982) ....................................................................... 8

*Perdue v. Kenny A.,*
    130 S. Ct. 1662 (2010) ............................................................................ 8, 9

*Planned Parenthood of Central New Jersey v. Attorney General of New Jersey*
    297 F.3d 253 (3d Cir. 2002 ....................................................................... 19

*Public Interest Research Group of New Jersey, Inc. v. Windall,*
    51 F.3d 1179 (3d Cir. 1995) ....................................................................... 10

*Tenafly Eruv Association v. Borough of Tenafly,*
    195 Fed. Appx. 93 (3d Cir. 2006) ............................................. 14, 15, 17, 20

*Yakowicz v. Pennsylvania*,
    683 F.2d 778 (3d Cir. 1982) ........................................................................ 7, 8

## FEDERAL STATUTES

42 U.S.C. § 1988 ........................................................................ 1, 6, 7, 22

42 U.S.C. § 1988(b) ........................................................................ 5, 6, 8

After four years of what may only be described as the most arduous of litigation, generated by the State's inexorable defense of an antiquated law, Plaintiffs have prevailed on the vast majority of the constitutional claims raised in this case.  Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, Plaintiffs are therefore entitled to an award of their reasonable attorneys' fees in the amount of $1,394,713.50.

## I.    PROCEDURAL HISTORY AND STATEMENT OF FACTS

The Court is certainly well-aware of the long and winding road this case has taken.  Plaintiffs endeavor only to highlight some of the stops along the way which illustrate the depth and the difficulties of this significant litigation.

On May 20, 2008, 33 Plaintiffs filed what the Court has described as a "massive" 114-page, fourteen-count Complaint, challenging the constitutionality of the Pennsylvania Funeral Director Law ("FDL") under the First Amendment, Fourth Amendment, Commerce Clause, Due Process Clause, Equal Protection Clause, and Contract Clause of the United States Constitution, and relevant provisions of the Pennsylvania Constitution.  (Doc. 1.)  Plaintiffs were met with an equally massive Motion to Dismiss, which raised numerous threshold defenses and challenged the merits of every claim asserted.  (Doc. 11.)  After 158 pages of briefing and oral argument, the Court largely denied the motion and allowed all

counts of the Complaint to go forward.  (Doc. 32.)  Defendants filed an Answer, raising 85 affirmative defenses.  (Doc. 35.)

The parties engaged in discovery, which was even more voluminous than the pleadings and just as contentious as the Motion to Dismiss.   Defendants propounded lengthy sets of written discovery to every individual and entity named as a Plaintiff.   In total, Plaintiffs responded to 866 requests for admission, 693 interrogatories, and 55 requests for production.  Plaintiffs produced 6,702 pages of documents;  Defendants produced 22,468 pages;  and third-party subpoenas generated 4,350 more.  More than two-thirds of Defendants' production was not Bates-labeled, and none of it was grouped by request.  Plaintiffs were forced to spend significant time simply organizing, let alone reviewing and analyzing, these documents. (Kutz Decl. ¶ 17.)

Defendants' approach to written discovery was similar.   For example, Defendants responded to requests for admission by refusing to admit statements derived directly from the State Board of Funeral Director's own legislative initiatives, going so far as to claim that, after a purported "reasonable inquiry," Defendants were without sufficient information to admit or deny whether the facts they submitted to the Governor were true.   Similarly, Defendants responded to interrogatories with dozens of pages of single-spaced, brief-like block text.  Then, at the discovery deadline, Defendants produced "supplemental" and "further

supplemental" responses without any indication of what had been "supplemented." Plaintiffs were forced to conduct a line-by-line analysis of these responses to determine what, if anything, had changed.  (Kutz Decl. ¶ 18.)

Forty-five depositions were taken, 30 of which were noticed by Defendants, including the depositions of three Plaintiffs who had withdrawn from the case.[1] (Kutz Decl. ¶ 17.)  Every Plaintiff was questioned about every claim, even those in which they were not involved.  More than 200 exhibits were introduced at these depositions.  (*Id.*)  Each side also retained two expert witnesses, who produced a total of five expert reports.  Discovery also generated numerous disputes, premised largely on Defendants' baseless refusal to produce damaging documents, which repeatedly required the Court's intervention.

The parties strenuously litigated the Motion to Intervene of the Pennsylvania Funeral Directors Association (Docs. 50, 53, 57-60, 70-71), which was ultimately denied (Doc. 80).  The parties also vigorously litigated Plaintiffs' Motion to Amend the Complaint (Docs. 91-92, 94-95, 99), which was ultimately granted (Doc. 100).  Plaintiffs filed an Amended Complaint, raising three additional Commerce Clause claims.  (Doc. 101.)  Defendants' Answer asserted 91 affirmative defenses.  (Doc. 102.)

---

[1] Defendants refused to consent to these individuals' withdrawal *with prejudice*, forcing Plaintiffs to file a Motion for Voluntary Dismissal.  (Doc. 43.)

Plaintiffs (Doc. 140) and Defendants (Doc. 117) each filed a Motion for Summary Judgment on all remaining claims in the case. These motions generated 723 pages of briefing; statements and counter-statements of material fact totaling 1,296 pages (two-thirds of which were submitted by Defendants); and a record of over 15,000 pages. Defendants piled on by filing a Motion to Strike (Doc. 163), which the Court found to be "comprised primarily of rehashed legal and factual arguments pulled, ostensibly, straight from their summary judgment briefs" and so devoid of merit that it was denied in a footnote. (Doc. 182 at 158 n.30.)

On May 8, 2012, the Court issued a 159-page Memorandum and Order, granting summary judgment in favor of Plaintiffs on 11 counts, encompassing 19 different claims under the First Amendment, Fourth Amendment, Commerce Clause, Due Process Clause, and Contract Clause. (Doc. 182.) The Court found that Plaintiffs had proven, as a matter of law, the unconstitutionality of provisions of the FDL governing: inspection of funeral homes; who may own a funeral home; how many funeral homes one may own; the bequest of funeral homes; the locations where a funeral director may practice; the locations that a funeral director may supervise; the requirement of a separate preparation room at each location; the prohibition on food in funeral homes; the name of a funeral home; funeral director ownership and operation of funeral merchandise companies; and the payment of commissions to unlicensed salespersons.

The Court noted "the urgent need for the Board to finally clarify and modernize the FDL, a request Plaintiffs, funeral directors, and cremation service providers have been requesting for some time." (*Id.* at 153.)   The Court further found that the relief sought by Plaintiffs is necessary "to fill[] the vacuum created by the Board's recalcitrance." (*Id.* at 154 n.29.)   Put simply, Plaintiffs' victory will have a profound, and positive, impact on the funeral profession and the public.

## II.   STATEMENT OF QUESTIONS INVOLVED

Whether Plaintiffs, as prevailing parties, should be awarded their reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b)?

Suggested answer:  Yes.

## III.   ARGUMENT

### A.   Plaintiffs Are Entitled to Fees as Prevailing Parties.

Section 1988(b) provides that in civil rights actions, "the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).   The Supreme Court has noted that "[w]hen a plaintiff succeeds in remedying a civil rights violation …, he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority," and "should ordinarily recover an attorney's fee from the defendant – the party whose misconduct created the need for legal action." *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011) (citations omitted).   Thus, although Section 1988 places the award of fees within a court's discretion, the Supreme Court has directed that "a

plaintiff 'should ordinarily recover an attorney's fee unless special circumstances render such an award unjust.'"  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94-1011, p.4 (1976)).

Plaintiffs are "prevailing parties" entitled to fees under § 1988(b) "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433.  The Supreme Court has "made clear that plaintiffs may receive fees under § 1988 even if they are not victorious on every claim.  A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes. That 'result is what matters….'"  *Fox*, 131 S. Ct. at 2214 (quoting *Hensley*, 461 U.S. at 435).  In this case, Plaintiffs succeeded on 19 of the claims they asserted, securing a ruling that provisions of the FDL governing 11 different areas of the deathcare industry are unconstitutional.  There can be no doubt that Plaintiffs are prevailing parties and are therefore entitled to recover their attorneys' fees.

### B.    An Award of Fees Is Appropriate at This Time.

The Supreme Court has found it "evident … that Congress contemplated the award of fees *pendente lite*" in cases where a party "has established his entitlement to some relief on the merits of his claims."  *Hanrahan v. Hampton*, 446 U.S. 754,

757 (1980).  The Court noted Congress's express approval of this interim award

principle in the passage of the Civil Rights Attorney's Fees Awards Act:

> The congressional Committee Reports described what
> were considered to be appropriate circumstances for such
> an award by reference to two cases – *Bradley v.
> Richmond School Board*, 416 U.S. 696 (1974), and *Mills
> v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970).  S. Rep.
> No. 94-1011, p. 5 (1976); H. R. Rep. No. 94-1558, p. 8
> (1976).  In each of those cases the party to whom fees
> were awarded had established the liability of the
> opposing party, although final remedial orders had not
> been entered.  The House Committee Report, moreover,
> approved the standard suggested by this Court in
> *Bradley*, that "'the entry of any order that determines
> substantial rights of the parties may be an appropriate
> occasion upon which to consider the propriety of an
> award of counsel fees….,'" H. R. Rep. No. 94-1558,
> supra, at 8, quoting *Bradley*, 416 U.S. at 723 n.28.
> Similarly, the Senate Committee Report explained that
> the award of counsel fees *pendente lite* would be
> "especially appropriate where a party has prevailed on an
> important matter in the course of litigation, even when he
> ultimately does not prevail on all issues."  S. Rep. No.
> 94-1011, supra, at 5.

*Id.* (emphasis omitted).

Thus, the Third Circuit has noted the "clear availability of interim attorney's

fees under § 1988" and that "[t]he power of the district court to grant interim

attorney's fees as to some significant and relatively discrete portion of a case, such

as the liability phase, is in no way undermined by the fact that a formal, final

judgment in favor of the plaintiff has not yet been rendered." *Yakowicz v.

Pennsylvania*, 683 F.2d 778, 781-82 & n.4 (3d Cir. 1982).  Indeed, that court has

stated that "[a] party who has succeeded on the merits thus is beyond question entitled to fees *pendente lite*." *NAACP v. Wilmington Med. Ctr., Inc.*, 689 F.2d 1161, 1165 (3d Cir. 1982).

In this case, an interim award of fees is appropriate because the Court's Order granting Plaintiffs' summary judgment as to 11 counts establishes Plaintiffs' entitlement to relief on the merits of almost all of their claims. Only the entry of a final judgment remains.[2] That formality poses no barrier to reimbursing Plaintiffs now for the fees that they have incurred over four years of protracted, hard-fought litigation. *Yakowicz*, 683 F.2d at 781-82. Indeed, it is beyond cavil that Plaintiffs have prevailed on many "important matters" in this litigation, and thus, as Congress explicitly recognized, an award of fees at this time is "especially appropriate." *Hanrahan*, 446 U.S. at 757 (quoting S. Rep. No. 94-1011 at 5).

### C.    The Fees Requested By Plaintiffs Are Reasonable.

Section 1988(b) provides that prevailing parties may recover a "reasonable" fee, which the Supreme Court has defined as "a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672 (2010). Courts determine a reasonable fee by calculating the "lodestar," which is "the product of an appropriate hourly

---

[2] The only issue which remains pending before the Court is the amount of Plaintiff Cavanagh's damages under Count XII. Defendants' liability for those damages has already been determined.

rate and a reasonable number of hours expended." *Benjamin v. Dep't of Pub. Welfare*, 807 F. Supp. 2d 201, 210 (M.D. Pa. 2011). "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," and "there is a strong presumption that the lodestar figure is reasonable." *Perdue*, 130 S. Ct. at 1673.

The prevailing party has the prima facie burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *Hensley*, 461 U.S. at 433. However, the Supreme Court has emphasized that "[a] request for attorney's fees should not result in a second major litigation." *Id.* Indeed, that Court has recently noted:

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees … is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.  And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation.

*Fox*, 131 S. Ct. at 2216 (citations omitted).  Once the prevailing party's relatively light burden is met, the opposing party bears the burden of producing sufficient evidence to challenge the amount of fees requested. *Benjamin*, 807 F. Supp. 2d at 210-11.  "If the opposing party does not challenge the amount, or does not provide sufficient evidence to challenge the amount, the district court need not make an

independent lodestar determination, though the calculation of fees nonetheless is within the court's discretion." *Id.* at 211.

### 1.   *Counsels' Rates Are Reasonable.*

"The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive." *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).   A reasonable rate must also be determined "with reference to the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity." *Evans v. Port Auth.*, 273 F.3d 346, 360-61 (3d Cir. 2001).   "When attorney's fees are awarded, the current market rate must be used.   The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed." *Lanni v. New Jersey*, 259 F.3d 146, 149-50 (3d Cir. 2001). *See, e.g., Jimmie v. Dep't of Pub. Welfare*, 2010 U.S. Dist. LEXIS 127805, at *8 (M.D. Pa. Dec. 2, 2010)   ("Plaintiffs' counsel's use of their current hourly rates is appropriate.").

In this case, the rates requested by Plaintiffs are reasonable, especially in light of counsel's skill and experience and the complexity of this litigation.   The current hourly rates of Plaintiffs' counsel are:

| | |
|---|---|
| James J. Kutz | $355 |
| Gary L. James | $350 |
| Barbara A. Zemlock | $295 |
| Jason G. Benion | $245 |

| | |
|---|---|
| Jason L. Reimer | $245 |
| Anne E. Gingrich | $210 |
| Heather White | $145 |
| Karen Tantay | $145 |

(Kutz Decl. ¶¶ 26, 30, 32, 24; James Decl. ¶ 11; Zemlock Decl. ¶ 11; Benion Decl. ¶ 10; Reimer Decl. ¶ 9.)

This complex litigation required substantial knowledge of the deathcare industry and the Byzantine regulation of that industry in Pennsylvania, as well as expertise in a broad array of complex constitutional issues, including claims such as those under the dormant Commerce Clause and Contract Clause, which are rarely litigated in this Court. (Kutz Decl. ¶ 14.) The attorneys who worked on this matter provided the necessary knowledge and expertise to produce the exceptional work product submitted to this Court and to achieve the excellent results attained by Plaintiffs. (*Id.*)

Attorney Kutz is a 37-year practitioner with substantial experience in civil rights litigation, derived through 25 years of private practice in this area and service in Civil Litigation Section of the Pennsylvania Attorney General's Office. (*Id.* ¶¶ 1-9.) In addition, Attorney Kutz possesses considerable knowledge of the regulation of the deathcare industry through his regular representation of clients before the State Board of Funeral Directors and his prior service as Chief Counsel of the Bureau of Professional and Occupational Affairs. (*Id.* ¶¶ 4-5, 10.)

Attorney James is a 34-year practitioner with extensive experience advising funeral homes, cemeteries, and other deathcare industry clients in regulatory, transactional, and business matters, as well as related litigation. (James Decl. ¶¶ 1-5.) Attorney James has regularly appeared before the State Board of Funeral Directors and Pennsylvania courts on behalf of deathcare clients, and has acquired a unique knowledge of the history, application, and interpretation of the FDL and the Board's regulations. (*Id.* ¶ 5.)

Attorney Zemlock is a 22-year practitioner, with demonstrated trial expertise and extensive experience in civil rights cases, including before this Court in *Walker v. Flitton*, No. 01-cv-2252, and other complex civil and criminal litigation. (Zemlock Decl. ¶¶ 1-6.)

The associates and paralegals working at these partners' direction brought similar skill and experience to the case. Attorney Benion is a seven-year practitioner and former federal law clerk, with significant prior experience in complex civil litigation and civil rights matters. (Benion Decl. ¶¶ 1-5.) Attorney Gingrich is an eight-year practitioner with significant trial experience. (Kutz Decl. ¶ 29.) Attorney Reimer is a five-year practitioner, whose antitrust experience was valuable in refuting Defendants' economic arguments. (Reimer Decl. ¶¶ 1-4, 6.) Heather White (née Folmer) has been a practicing paralegal for 12 years; is currently Vice-President of the Central Pennsylvania Paralegal Association, and

was that organization's 2011 Paralegal of the Year.  (Kutz Decl. ¶ 31.)   Karen Tantay has been a practicing paralegal for six years, currently at Post & Schell, and previously in-house at an international corporation.  (*Id.* ¶ 33.)

The rates charged by each of these individuals reflect the skill and experience necessary to produce the excellent results obtained by Plaintiffs in a case of this complexity and magnitude, and these rates are comparable to the rates of attorneys of equivalent skill and experience performing work of similar complexity in this market.  (Kutz Decl. ¶¶ 26, 28, 30, 32, 34; James Decl. ¶ 12; Zemlock Decl. ¶ 12.)

Submitted in support of Plaintiffs' Motion are the Declarations of Thomas G. Collins, Esquire and Charles I. Artz, Esquire, two experienced practitioners in the Harrisburg area, each of whom attests that the rates currently charged by Plaintiffs' counsel are consistent with the prevailing rates charged by practitioners of comparable experience and skill in the Middle District of Pennsylvania, and that these rates are reasonable for a matter of this complexity in this market.  (Collins Decl. ¶¶ 11-13; Artz Decl. ¶¶ 11-12.)

In light of counsel's skill and experience, the exceptional work performed in this complex and important matter, and the excellent results achieved, the current rates of Plaintiffs' counsel are reasonable, and these rates should be applied to Plaintiffs' award of attorneys' fees.

### 2.    *The Hours Expended Are Reasonable.*

The second step in the lodestar calculation is a determination of the hours reasonably expended in conducting the litigation.  *Hensley*, 461 U.S. at 433.  "The district court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'  Hours that would not generally be billed to one's own client are not properly billed to an adversary."  *Windall*, 51 F.3d at 1188 (quoting *Hensley*, 461 U.S. at 434).  Thus, the Supreme Court has cautioned prevailing parties to exercise "billing judgment" with respect to the hours worked.  *Hensley*, 461 U.S. at 437.

The prevailing party must provide evidence supporting the time claimed.  *Id.* However, the Third Circuit has explained that "the documentation requirements for time charged are not exacting:

> a fee petition should include some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, … but it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.

*Tenafly Eruv Ass'n v. Borough of Tenafly*, 195 Fed. Appx. 93, 100 (3d Cir. 2006) (citation omitted) (awarding fees based on time entries such as "Attn to brief" and "Attn to reply").

Although the lodestar calculation is presumptively reasonable, a court may exercise its discretion to increase or decrease the fee amount based on other factors, including the relative success of the prevailing party. *Benjamin*, 807 F. Supp. 2d at 212. Where plaintiffs are successful on some, but not all, of their claims, a court must decide whether the claims are "'distinctly different claims for relief that are based on different facts and legal theories,'" in which case, time spent on unsuccessful claims should not be awarded, or whether the claims "'involve a common core of facts or are based on related legal theories,'" in which case, "it is appropriate to award compensation for work on all claims rather than only those claims that were successful." *Tenafly*, 195 Fed. Appx. at 96, 101 (quoting *Hensley*, 461 U.S. at 434-35). The Supreme Court has suggested that "cases involving … unrelated claims are unlikely to arise with great frequency," and that, in cases involving related facts or legal theories, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. In such cases, the Supreme Court's guidance is that:

> The district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of

> exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. … The result is what matters.

*Id.* (citation omitted).

In this case, Plaintiffs undeniably obtained excellent results. Plaintiffs prevailed on 11 counts encompassing 19 complex, constitutional claims. Plaintiffs secured a ruling that, as a matter of law, provisions of the FDL governing 11 important areas of the funeral industry are unconstitutional. This ruling will have a tremendous, and positive, impact on both the funeral industry and the public. Especially in light of the significance of the overall relief obtained, the hours expended on this litigation by Plaintiffs' counsel are eminently reasonable.

Attached as Exhibit "B" to the Declaration of James J. Kutz and Exhibit "A" to the Declaration of Gary L. James are true and correct copies of the invoices for the services performed on Plaintiffs' behalf in this matter. These invoices indicate the hours devoted by each timekeeper to those services, to the tenth of an hour; a description of the services performed; and the rates then-charged. (Kutz Decl. ¶ 21; James Decl. ¶ 8.) These invoices accurately reflect the time records prepared by each timekeeper contemporaneously with the services performed. (*Id.*)

Plaintiffs' counsel expended a total of 5,953.5 hours on this "massive" and complex litigation, all of which reasonably contributed toward the successful

results achieved.  (Kutz Decl. ¶ 22.)  However, in the exercise of billing judgment, *Hensley*, 461 U.S. at 437, and after a thorough review of counsel's invoices, Plaintiffs have elected to excise 563.8 hours from 374 separate time entries and do not seek the fees associated with this time.[3]  (Kutz Decl. ¶ 23; James Decl. ¶ 9.)

Plaintiffs have cut 337.4 hours from their fee request in order to eliminate any contention that this time was arguably duplicative or unreasonable.  (Kutz Decl. ¶ 23(a).)  In addition, 167.7 hours related to Count XI have been cut in light of the fact that Plaintiffs did not succeed on this count.  (*Id.* ¶ 23(b).)  The Commerce Clause, Due Process, and Contract Clause claims asserted by Plaintiffs in Count XI are based on the same legal theories asserted in the counts for which Plaintiffs were granted summary judgment.  Because the hours expended on these common legal theories "would be 'difficult to divide … on a claim-by-claim basis,' it is appropriate to award compensation for work on all claims rather than only those claims that were successful." *Tenafly*, 195 Fed. Appx. at 101 (quoting *Hensley*, 461 U.S. at 435).  Nonetheless, in recognition of the Supreme Court's admonition that a request for attorney's fees should not result in a second major litigation, *Hensley*, 461 U.S. at 437, Plaintiffs have elected to cut this time from their fee request.  Similarly, 47.7 hours related to Plaintiffs' Motion to Amend

---

[3] These reductions are noted directly on the invoices.  (Kutz Decl. ¶ 23; James Decl. ¶ 9.)  In addition, all reduced time entries are listed in Exhibit "C" to the Kutz Declaration.

have been cut.  (Kutz Decl. ¶ 23(c).)  That motion sought leave to add Commerce Clause claims to Counts VI, VII, and XI.  Although the motion was granted, in order to eliminate any contention over time devoted to Count XI, all time entries related to the Motion to Amend have been reduced by one-third.  Finally, 11.0 hours have been cut in light of Plaintiffs' withdrawal of Count X.  (*Id.* ¶ 23(d).) Any time entry related in whole or in part to Count X was cut in its entirety.

After these reductions, Plaintiffs seek fees for 5,389.7 hours of services performed by the following individuals:

| | |
|---|---:|
| James J. Kutz | 1098.5 |
| Gary L. James | 93.4 |
| Barbara A. Zemlock | 971.6 |
| Jason G. Benion | 1977.8 |
| Anne E. Gingrich | 161.0 |
| Jason L. Reimer | 93.9 |
| Heather White | 976.0 |
| Karen Tantay | 17.5 |

(Kutz Decl. ¶ 24, Ex. A.)

In general, at any given time, this matter – which involved 13 constitutional counts, 33 Plaintiffs, and 10 Defendants – was staffed by four attorneys and one paralegal.  Attorney Kutz served as lead counsel overseeing the matter.  Attorney James provided consultation and strategic advice based on his expertise in the funeral industry.  Attorney Zemlock served as the junior partner on the matter, performing case management, participating in research and the preparation of pleadings and discovery, and conducting depositions.  One associate, initially

Attorney Gingrich, and then Attorney Benion, primarily conducted research; drafted pleadings; and drafted, reviewed, and analyzed discovery.  Another associate, Attorney Reimer, provided additional support for summary judgment submissions.  One paralegal, Ms. White, managed the voluminous case file and assisted in the preparation of pleadings, discovery, and depositions.  An additional paralegal, Ms. Tantay, provided support while Ms. White was on maternity leave. (Kutz Decl. ¶¶ 15, 29, 31, 33; James Decl. ¶ 7; Zemlock Decl. ¶ 8; Benion Decl. ¶ 7; Reimer Decl. ¶ 6.)

This staffing allowed for the efficient allocation of attorney time and the appropriate delegation of work, to ensure all tasks were attended to and duplication avoided, given the breadth and complexity of the case.  (Kutz Decl. ¶ 16.)  This division of labor required periodic conferences to ensure the efficient allocation of responsibilities and a focused and uniform approach to the case.  (*Id.*)  Each individual working on this case was assigned specific tasks.  (*See* Kutz Decl. ¶¶ 15, 29, 31, 33; James Decl. ¶ 7; Zemlock Decl. 8; Benion Decl. ¶ 7; Reimer Decl. ¶ 6.) Any overlap between these tasks reflects the collaboration and coordination necessary to produce the excellent results achieved here. *See Planned Parenthood of Central N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 272 (3d Cir. 2002) (noting "careful preparation often requires collaboration and rehearsal").  Given the multitude of parties and the complexity of the claims at issue, the staffing of this

matter was entirely reasonable. *See, e.g.*, *Tenafly*, 195 Fed. Appx. at 99 (rejecting non-prevailing parties' objection to the involvement of multiple attorneys because "this was a complicated case with multiple appellants raising important constitutional claims, and those cases often mandate the help of numerous attorneys," and rejecting arguments regarding meetings and conferences "given the complexity of this case and the many parties involved").

Similarly, given the importance and complexity of this case, the number of hours expended was reasonable.   This matter presented numerous, complex questions of constitutional law.  Frankly, Plaintiffs' claims could have been broken into at least half-a-dozen separate, significant lawsuits, each addressing its own important constitutional issues.  The questions presented required a nationwide review of federal caselaw and research into the regulatory schemes and precedent of other states.  For example, in summary judgment submissions, Plaintiffs relied upon persuasive precedent from the 8th Circuit and contrasted Pennsylvania's regulation of the deathcare industry with other states.  (Doc. 140 at 39, 49-52, 113). In addition, the protracted nature of this case required the parties to keep abreast of developments in other cases arising in analogous contexts.  For example, on summary judgment, all parties briefed issues relating to the *Brown v. Hovatter* matter from Maryland and the *St. Joseph Abbey v. Castille* matter from Louisiana, which had developed during the pendency of this case.

As this Court has recognized, Defendants "vigorously and tenaciously litigated" this matter.   (Doc. 80 at 9.)   Defendants raised defenses based on standing, ripeness, immunities, and abstention in their Motion to Dismiss, and then reasserted many of these threshold defenses on summary judgment.   Defendants challenged the merits of every one of Plaintiffs' claims in the Motion to Dismiss; argued that Plaintiffs' Commerce Clause claims were futile in opposition to Plaintiffs' Motion to Amend; and filed a Motion for Summary Judgment, asserting that they were entitled to judgment on every remaining claim as a matter of law. The Court's description of Defendants' position as recalcitrant is entirely apt. (*See* Doc. 182 at 153-54.)   While the vast majority of Defendants' positions were ultimately rejected, Plaintiffs were put to the arduous and time-consuming task of refuting these persistent and profuse arguments, in addition to proving their own case.

Further, the significant discovery obligations placed upon Plaintiffs (866 requests for admission; 693 interrogatories; 55 requests for production; 33,520 pages of documents; and 45 depositions) required a substantial expenditure of time.   Moreover, the attempted intervention of the Pennsylvania Funeral Directors Association, as well as the participation of multiple *amici curiae*, further increased the time necessarily expended on this case.

Quite simply, the time devoted this case is more than reasonable given the breadth and the magnitude of this litigation, and Plaintiffs should be awarded the fees incurred for these hours.

## IV.   CONCLUSION

Applying the reasonable hourly rates and hours noted above, the lodestar calculation in this case results in an award of $1,394,713.50.  (Kutz Decl., Ex. A.) Plaintiffs respectfully request that the Court grant this Motion and award this amount of fees to Plaintiffs as prevailing parties under 42 U.S.C. § 1988.

Respectfully submitted,

JAMES, SMITH, DIETTERICK & CONNELLY, LLP

POST & SCHELL, P.C.

*s/ James J. Kutz*

Gary L. James, Esquire
Attorney ID # PA 27752
glj@jsdc.com
134 Sipe Avenue
Hummelstown, PA  17036
(717) 533-3280

James J. Kutz, Esquire
Attorney ID # PA 21589
jkutz@postschell.com
Barbara A. Zemlock, Esquire
Attorney ID # PA 58891
bzemlock@postschell.com
17 North Second Street, 12th Floor
Harrisburg, PA  17101
(717) 731-1970

Dated:  May 22, 2012

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.8(b)(2), I hereby certify that the foregoing brief complies with the word-count limit set forth in that subsection, in that it contains 4,983 words, as determined by the word count feature of the word processing system used to prepare the brief.

<i>s/ James J. Kutz</i><br>
James J. Kutz, Esquire

Dated:  May 22, 2012

## CERTIFICATE OF SERVICE

I, James J. Kutz, Esquire, hereby state that I have this day caused the foregoing *Motion for Interim Award of Attorneys' Fees* to be transmitted to the Court electronically for electronic service upon the following attorneys of record:

Maryanne M. Lewis, Esquire
Senior Deputy Attorney General
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA  17120

Christopher K. McNally, Esquire
Board Counsel
State Board of Funeral Directors
Commonwealth of Pennsylvania, Department of State
Bureau of Professional and Occupational Affairs
Department of State - Legal Office
One Penn Center, Third Floor
2601 North Third Street
P. O. Box 2649
Harrisburg, PA  17105-2649

POST & SCHELL, P.C.

*s/ James J. Kutz*
James J. Kutz, Esquire

Dated:  May 22, 2012