...

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERNEST F. HEFFNER, et. al, | : | No. 08-cv-990 |
| Plaintiffs, | : | |
| v. | : | Hon. John E. Jones III |
| DONALD J. MURPHY, et. al, | : | |
| Defendants. | : | |

**MEMORANDUM**

**August 22, 2012**

**I.     Procedural History and Factual Background**

On May 8, 2012, the Court issued a memorandum and order ruling on the parties' cross motions for summary judgment. (Doc. 182). Through that order, we granted summary judgment in Plaintiffs' favor on eleven (11) out of twelve (12) counts in Plaintiffs' amended complaint. (*Id*. at 155-158). However, we also stayed the effect of our mandate therein for a period of ninety (90) days to allow the parties to reexamine and possibly revise portions of the FDL that we found violated the United States Constitution. (*Id*.).

Thereafter, on June 29, 2012, Defendants filed a Motion to Amend Order of May 8, 2012, (doc. 189), requesting that the Court amend its prior order so that the same could be immediately appealed to the Third Circuit Court of Appeals. On July 12, 2012, the Court issued an order denying Defendants' motion to amend our

May 8, 2012 order. (Doc. 195). On August 8, 2012, the Court conducted an informal status conference with counsel for the parties to determine whether Defendants had attempted to rectify any of the deficiencies identified in our May 8 order. Following the conference call, the Court ordered that the parties each submit a brief outlining their respective positions concerning injunctive relief. (Doc. 197). After reviewing the parties' submissions, the Court is now prepared to finalize our May 8, 2012 summary judgment ruling. Therefore, we shall proceed to analyze whether Plaintiffs are entitled to a permanent injunction.

**II.   Discussion**

As the Supreme Court noted in *eBay Incorporated v. MercExchange*, a plaintiff seeking a permanent injunction must satisfy a four-factor test before obtaining such relief, including: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." 547 U.S. 388, 391 (2006).

Here, concerning the first element, implicit in our previous finding is that Plaintiffs have suffered an irreparable injury, as also demonstrated by the

numerous provisions of the FDL that the Court declared unconstitutional in our May 8, 2012 order.  As to the second element, there are no remedies at law, such as monetary damages, that are adequate to compensation Plaintiffs for the injuries suffered as a result of the unconstitutional provisions of the FDL.

Regarding the third element, the balance of the hardships between the parties, the Court finds Defendants' assertions that enjoining them from enforcing the FDL will essentially yield a completely unregulated death-care industry to wildly overstate the parameters of our ruling.  While it is clear that Defendants will have to propose amendments to the FDL to rectify those provisions struck down by our May 8, 2012 ruling, the order that follows does not open wide the doors to the unlicensed practice of funeral directing as Defendants appear to contend it does.  As Plaintiffs highlight in their brief, Defendants are perpetuating a wholly disingenuous type of hysteria in suggesting that they will experience an extreme hardship simply because funeral directors will hereafter be permitted:  (1) to admit inspectors only when inspections are limited in time, place, and scope, which the Board claims is already its practice; (2) to share a supervisor with another location, which the Board has already conceded through legislative initiative is permissible; (3) to cease the establishment and maintenance of a separate preparation room at each funeral home, which the Board's legislative

initiative acknowledged was already a widespread practice; (4) to serve food, as permitted under the Board's allegedly proposed regulations; (5) to operate under a trade, which essentially occurs when a funeral home operates under a predecessor name; (6) to operate a separate merchandise company, which some Board members conceded was already lawful; or (7) to pay unlicensed employees without fear of prosecution.

In addition, our order in no way sanctioned the unlicensed practice of funeral directing by untrained individuals, but rather held that the Board's ownership restrictions on non-licensees' *ownership* of a funeral home was a violation of the Commerce Clause, (doc. 182 at 51-57), and substantive due process, (*id*. at 57-73), given the Board's issuance of licenses to non-licensees, such as widows of Pennsylvania funeral directors, estates of Pennsylvania funeral directors, spouses of Pennsylvania funeral directors, children of Pennsylvania funeral directors, grandchildren of Pennsylvania funeral directors, trusts established for the spouses, children, and grandchildren of Pennsylvania funeral directors, trusts established for the spouses, children, and grandchildren of Pennsylvania funeral directors, purchasers of pre-1935 corporations, and those

who purchase all the assets of a funeral home and employ a Pennsylvania funeral director to act as the "owner" of the stock of a corporation. (*Id*. at 51-73).[1]

Finally, as to the public interest, we find that enjoining Defendants from enforcing the constitutionally infirm provisions of the FDL will serve to benefit consumers through the potential savings achieved by a more efficient and cost-conscious delivery of death-care services. Throughout the hundreds upon hundreds of pages submitted by Defendants in support of the clearly archaic FDL, they have failed to highlight even one piece of evidence demonstrating how the public interest would be adversely affected by a ruling that declines to uphold the protectionist regime and status quo perpetuated by the FDL concerning funeral regulation in Pennsylvania.

## III. Conclusion

As lamented numerous times by the Court throughout this case, we find much of Defendants' conduct to constitute the very epitome of bad faith and most recently an almost cavalier disregard for our May 8, 2012 ruling, as demonstrated by their failure to at least begin formulating legislative initiatives amending or replacing a Truman-era law that could be submitted to the General Assembly when

---

[1] We again regret the extreme and hyperbolic reaction to our mandate, which was cast in certain quarters as a veritable return to the Dark Ages. We strongly suspect that Defendants know better.

they return to session in the fall. (*See* Pl. R. at 3153-3157, 3236-3246). While the Court is clearly acquainted with the process by which legislation is passed and regulations are amended, and though we recognize that our ruling was entered toward the end of the previous legislative session, it appears that the Board was more content to sit on their hands than to earnestly tackle the constitutional deficiencies explicitly identified in our order.[2]

Our ruling on May 8, 2012 was the culmination of a massive, systemic failure to promote appropriate public policy by the Board. That the Board would cling to a law that is so outdated and patently unconstitutional in so many ways is as embarrassing as it is unconscionable. Frankly, the members of the Board should be ashamed of themselves.[3] The FDL begs for a legislative overhaul and the persistent recalcitrance of the Board to act while instead choosing to litigate every single issue in this case, at substantial cost in Commonwealth funds, has only served to further deplete the Commonwealth's scarce resources. *See Pub.*

---

[2] We note that counsel for Defendants informally advised the Court during our August 8, 2012 status conference that the Board had started crafting an administrative policy responding to the Court's finding that the unannounced and warrantless inspections of funeral homes violated the Fourth Amendment as set forth in Court I of Plaintiffs' amended complaint. (*See* Doc. 101). While we appreciate the Board's efforts to remedy this aspect of the FDL, it is unclear why the Board was unable to at least begin a similar process, or one involving the drafting of legislative initiatives, concerning the remaining counts we found violative of the Constitution.

[3] Candidly, and while this issue was not raised by Plaintiffs, we find the Board's conduct so disturbing that surcharging its members could have been appropriate in lieu of allowing them to burn up taxpayer dollars in their folly.

*Citizen Health Research Grp. v. Brock*, 823 F.2d 626, 627 (D.C. Cir. 1987) ("But we also understand, because we have seen it happen time and time again, that action Congress has ordered for the protection of the public health all too easily becomes hostage to bureaucratic recalcitrance, factional infighting, and special interest politics.  At some point, we must lean forward from the bench to let an agency know, in no uncertain terms, that enough is enough.").  That time has arrived, and an appropriate order shall issue as we place a capstone, and perhaps with it a judicial exclamation point, on this lengthy and difficult matter.